## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

TESSA FARMER,                      )

              Plaintiff,      )

v.                          )  Case No. 2:16-cv-02256-JTM-KGG

KANSAS STATE UNIVERSITY,     )
an agency of the State of Kansas,    )

              Defendant.     )

## BRIEF IN SUPPORT OF DEFENDANT'S
## MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Date:  May 27, 2016

**HUSCH BLACKWELL LLP**

/s/ Derek T. Teeter

ALLAN V. HALLQUIST  D. KAN. NO. 78356
HAYLEY E. HANSON  KS BAR NO. 20087
DEREK T. TEETER  KS BAR NO. 23242
MICHAEL T. RAUPP  KS BAR NO. 25831
HUSCH BLACKWELL LLP
4801 Main, Suite 1000
Kansas City, Missouri 64112
(816) 983-8000
(816) 983-8080 (FAX)
allan.hallquist@huschblackwell.com
hayley.hanson@huschblackwell.com
derek.teeter@huschblackwell.com
michael.raupp@huschblackwell.com

*Attorneys for Defendant Kansas State University*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. iii

I.    INTRODUCTION/NATURE OF THE MATTER ................................................. 1

II.   STATEMENT OF FACTS ...................................................................................... 2

III.  QUESTIONS PRESENTED..................................................................................... 3

IV.   ARGUMENT ........................................................................................................... 4

    A.   Ms. Farmer Fails To State A Claim For A Violation Of Title IX ......................... 5

        1.   Activities off campus and at private parties are not an "education program or activity" of K-State. ................................................................. 7

        2.   Ms. Farmer fails to allege a viable Title IX claim based on K-State's response to prior reports of sexual harassment ............................. 11

            a.   *K-State did not have actual knowledge of the alleged prior harassment* ................................................................................. 12

            b.   *Ms. Farmer does not sufficiently plead that any alleged deliberate indifference by K-State regarding allegations of prior sexual assaults caused her alleged rape* .............................. 16

        3.   Ms. Farmer fails to allege a viable Title IX claim because she does not plead that K-State's alleged deliberate indifference to her report caused further harassment after the alleged rape........................... 16

    B.   Ms. Farmer Fails To State A Claim For Violation Of The KCPA ....................... 18

        1.   Ms. Farmer fails to plead her KCPA claim with particularity................. 18

        2.   Ms. Farmer fails to allege that she was "aggrieved" by a misrepresentation ..................................................................................... 22

    C.   Ms. Farmer Fails To State A Claim For Negligence ........................................... 23

        1.   K-State cannot be liable for negligence because there is no legal duty to protect Ms. Farmer from the alleged criminal acts of third-parties occurring off campus.................................................................... 24

        2.   K-State is immune from liability under several of the KTCA's exceptions to liability.............................................................................. 26

i

   a. *Enforcement or failure to enforce a law* ........................................ 26

   b. *Discretionary functions* ............................................................. 27

V. CONCLUSION ........................................................................................... 29

CERTIFICATE OF SERVICE ............................................................................... 30

## TABLE OF AUTHORITIES

**Page**

### Federal Court Cases

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ........................................................................................................... 5

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544, 570 (2007) ............................................................................................ 4, 15

*Bradshaw v. Rawlings,*
612 F.2d 135 (3d Cir. 1979) ........................................................................................... 25

*Burton v. R.J. Reynolds Tobacco Co.,*
884 F. Supp. 1515 (D. Kan. 1995) .................................................................................. 18

*C.R.K. v. U.S.D. 260,*
176 F. Supp. 2d 1145 (D. Kan. 2001) ............................................................................. 10

*Canadian St. Regis Bank of Mohawk Indians v. New York,*
2013 WL 3992830 (N.D. N.Y. 2013) .............................................................................. 14

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,*
467 U.S. 837 (1984) ......................................................................................................... 11

*Clifford v. Regents of Univ. of California,*
No. 2:11-CV-02935-JAM, 2012 WL 1565702 (E.D. Cal. Apr. 30, 2012) ....................... 8

*Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.,*
526 U.S. 629 (1999) ........................................................... 5, 6, 7, 8, 9, 10, 11, 18

*Denius v. Dunlap,*
330 F.3d 919 (7th Cir. 2003) ........................................................................................... 14

*Doe v. Bibb Cnty. Sch. Dist.,*
126 F. Supp. 3d 1366 (M.D. Ga. 2015) ...................................................................... 17, 18

*Doe v. Bibb Cty. Sch. Dist.,*
83 F. Supp. 3d 1300 (M.D. Ga. 2015) .............................................................................. 14

*Doe v. Blackburn Coll.,*
No. 06-3205, 2012 WL 640046 (C.D. Ill. Feb. 27, 2012) ................................................ 13

*Doe v. Columbia Univ.,*
101 F. Supp. 3d 356 (S.D.N.Y. 2015) ........................................................................ 16, 17

*Escue v. N. Okla. College,*
   450 F.3d 1146 (10th Cir. 2006) ............................................................ 6, 12, 16, 17

*Foster v. Raspberry,*
   652 F. Supp. 2d 1342 (M.D. Ga. 2009) ................................................ 28

*Gomes v. Univ. of Maine Sys.,*
   304 F. Supp. 2d 117 (D. Me. 2004) ...................................................... 28

*Grynberg v. Koch Gateway Pipeline Co.,*
   390 F.3d 1276 (10th Cir. 2004) ............................................................ 14

*In re Univ, Serv. Fund Telephone Billing Practices Lit.,*
   300 F. Supp. 2d 1107 (D. Kan. 2003) .................................................. 18

*Jamieson v. Vatterott Educational Center, Inc.,*
   473 F. Supp. 2d 1153 (D. Kan. 2007) .................................................. 19, 20, 21

*Kenney v. Citimortgage, Inc.,*
   No. 14-2436-JAR, 2015 WL 1957880 (D. Kan. Apr. 29, 2015) .............. 4

*Khalik v. United Air Lines,*
   671 F.3d 1188 (10th Cir. 2012) ............................................................ 5

*Mattos v. Eli Lilly & Co.,*
   No. 12-1014-JWL, 2012 WL 1893551 (D. Kan. May 23, 2012) ........... 21

*Ostrander v. Duggan,*
   341 F.3d 745 (8th Cir. 2003) ................................................................ 8

*Ridge at Red Hawk, L.L.C. v. Schneider,*
   493 F.3d 1174 (10th Cir. 2007) ............................................................ 4

*Rinehart v. Saint Luke's S. Hosp., Inc.,*
   No. 10-2209-SAC, 2011 WL 3348234 (D. Kan. Aug. 3, 2011) ............ 22

*Robbins v. Oklahoma,*
   519 F.3d 1242 (10th Cir. 2008) ............................................................ 5

*Roe v. St. Louis University,*
   746 F.3d 874 (8th Cir. 2014) ................................................................ 8, 9

*Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.,*
   511 F.3d 1114 (10th Cir. 2008) ............................................................ 6, 9, 12, 17

*Rouse v. Duke Univ.,*
   914 F. Supp. 2d 717 (M.D.N.C. 2012) ................................................. 17, 18

*Samuelson v. Oregon State Univ.*,
   No. 6:15-CV-01648-MC, 2016 WL 727162 (D. Or. Feb. 22, 2016).....................................8, 9

*Schaefer v. Las Cruces Pub. Sch. Dist.*,
   716 F. Supp. 2d 1052 (D.N.M. 2010) ......................................................................................13

*Smallwood v. Foos*,
   No. 07-cv-02652-WYD-MEH, 2008 WL 3338374 (D. Colo. 2008) ......................................14

*T.Z. v. City of New York*,
   635 F. Supp. 2d 152 (E.D.N.Y.), *rev'd in part on reconsideration on other grounds*,
   634 F. Supp. 2d 263 (E.D.N.Y. 2009) ...............................................................................13, 14

*Thompson v. Jiffy Lube Int'l, Inc.*,
   505 F. Supp. 2d 907 (D. Kan. 2007) .......................................................................................18

*Townsend v. Swank*,
   404 U.S. 282 (1971) .................................................................................................................11

## State Court Cases

*Adams v. Bd. of Sedgwick Cty. Comm'rs*,
   214 P.3d 1173 (Kan. 2009) ................................................................................................24, 26

*Baldwin v. Zoradi*,
   123 Cal. App. 3d 275, 176 Cal. Rptr. 809 (1981) ...................................................................25

*Barber v. Williams*,
   767 P.2d 1284 (Kan. 1989) ......................................................................................................27

*Beebe v. Fraktman*,
   921 P.2d 216 (Kan. Ct. App. 1996) ...................................................................................27, 28

*Burney v. Kansas Dep't of Soc. & Rehab. Servs.*,
   931 P.2d 26 (Kan. Ct. App. 1997) ...........................................................................................28

*Crow v. State of California*,
   222 Cal. App. 3d 192, 271 Cal. Rptr. 349 (1990) ...................................................................25

*Eiseman v. State of New York*,
   70 N.Y.2d 175, 518 N.Y.S.2d 608, 511 N.E.2d 1128 (1987)..................................................25

*Finstad v. Washburn Univ. of Topeka*,
   845 P.2d 685 (Kan. 1993) ........................................................................................................22

*G. v. State Dept. of SRS*,
   833 P.2d 979 (Kan. 1992) .........................................................................................................27

*Gragg v. Wichita State Univ.*,
   934 P. 2d 121 (Kan. 1997) ............................................................................... 25

*Hesler v. Osawatomie State Hospital*,
   971 P.2d 1169 (Kan. 1999) .............................................................................. 24

*Kansas State Bank & Tr. Co. v. Specialized Transp. Servs., Inc.*,
   819 P.2d 587 (Kan. 1991) ................................................................................ 24

*Nero v. Kansas State Univ.*,
   861 P.2d 768 (Kan. 1993) ........................................................................... 24, 25

*Soto v. City of Bonner Springs*,
   238 P.3d 278 (Kan. 2010) ................................................................................ 27

*Tanja H. v. Regents*,
   228 Cal. App. 3d 434, 278 Cal .Rptr. 918 (1991) ........................................... 25

*Thies v. Cooper*,
   753 P.2d 1280 (Kan. 1988) ........................................................................ 24, 25

*Yeasin v. Univ. of Kan.*,
   360 P.3d 423 (Kan. Ct. App. 2015) ................................................................... 9

## Federal Statutory Authorities

20 U.S.C. § 1092(f)(1)(F) ...................................................................................... 13

20 U.S.C. § 1681(a) ............................................................................................ 5, 7

20 U.S.C. 1687 ........................................................................................................ 7

28 U.S.C. § 2680(a) ............................................................................................... 27

## Statutory Authorities

K.S.A. §§ 50-634 and 636 ............................................................................... 22, 23

K.S.A. 75-6103(a) .................................................................................................. 23

K.S.A. 75-6104(a) .................................................................................................. 26

K.S.A. 75-6104(c) .................................................................................................. 26

**Federal Rules and Regulations**

34 C.F.R. § 106.31(a) ............................................................................................................ 7

Fed. R. Civ. P. 9 ................................................................................ 1, 2, 4, 18, 19, 21, 22

Fed. R. Civ. P. 12 ..................................................................................................... 1, 4, 22

**Legislative Materials**

*Examining the Use of Agency Regulatory Guidance: Hearing Before the Subcomm. On Regulatory Affairs and Fed. Management of the S. Comm. On Homeland Security and Governmental Affairs*, 114th Cong. 18 (2015), *available at* http://www.hsgac.senate.gov/download/rafm-09-23-2015_-final-printed-hearing-record ............................................................................................................... 10, 11

**Additional Authorities**

ED's Revised Sexual Harassment Guidance at 2 (ED, 2001), *available at* http://www2.ed.gov/about/offices/list/ocr/docs/shguide.pdf ..................................... 17

*http://ope.ed.gov/athletics/GetOneInstitutionData.aspx.* ............................................. 14

*See* https://www.k-state.edu/policies/ppm/3000/3010.html ..................... 17, 21, 25, 28

Sofi Sinozich & Lynn Langton, *Rape and Sexual Assault Victimization Among College-Age Females, 1995-2013*, U.S. Dept. of Justice, Bureau of Justice Statistics, at 1 (Dec. 2014), available at http://www.bjs.gov/content/pub/pdf/rsavcaf9513.pdf. ............................ 15

## I.   INTRODUCTION/NATURE OF THE MATTER

Plaintiff Tessa Farmer attempts to hold Kansas State University ("K-State") liable for a rape allegedly committed by a male K-State student, C.M.  This alleged rape occurred in the context of a *private* party, located *off* campus, at a fraternity house that is privately owned.  Yet, rather than suing her rapist or the fraternity where the alleged rape occurred, Ms. Farmer has instead sued K-State, contending it should be civilly liable for failing to prevent or respond to this alleged third-party criminal act.  All of her theories are flawed, and this Court should dismiss them for failure to state a claim under Rule 12(b)(6).

First, Ms. Farmer asserts that K-State violated Title IX of the Higher Education Act. Even if everything Ms. Farmer alleges is true, K-State did not violate Title IX because Ms. Farmer does not plead the existence of sexual harassment occurring in any of K-State's education programs or activities (or, in other words, under its operations) such that K-State had substantial control over C.M., and the context in which the alleged rape occurred.  And even if K-State did violate Title IX, Ms. Farmer fails to plead facts establishing the elements of the narrow *private* right of action under Title IX created by the Supreme Court, which requires, among other things, that K-State have been deliberately indifferent to known sexual harassment. Here, Ms. Farmer fails to sufficiently plead that K-State had actual knowledge of sexual harassment posing a substantial risk to Ms. Farmer that predated the alleged rape or that K-State's alleged deliberate indifference to her report of the rape caused her to suffer further sexual harassment—a strict requirement under Tenth Circuit precedent. Thus, her Title IX claim fails.

Second, Ms. Farmer fails to plead her claims that K-State violated the Kansas Consumer Protection Act ("KCPA") with specificity, as required under Rule 9(b); Ms. Farmer fails to plead the "who, what, when, and where" of the alleged misrepresentations about the "safety" of local

fraternities.  Additionally, and regardless of her failure to meet Rule 9(b), Ms. Farmer does not allege that she was "aggrieved" by any of the alleged misrepresentations, which is a key element of a private claim under the KCPA.  Thus, her KCPA claim fails under controlling Kansas Supreme Court precedent.

Third, and finally, Ms. Farmer's negligence claim fails because K-State does not owe a legal duty to Ms. Farmer to prevent the criminal acts of third-parties occurring off campus.  Ms. Farmer does not plead any facts that support a legal theory that would give rise to such a duty. Moreover, even if she could, her claim is barred by sovereign immunity as it falls under the exceptions to liability enumerated in the Kansas Tort Claims Act ("KTCA").

Thus, as described more fully below, Ms. Farmer fails to state any viable claim for relief against K-State, and the Court should dismiss her Complaint entirely.  This does not mean, however, that Ms. Farmer is without recourse.  She can sue the alleged rapist for, at a minimum, the intentional tort of battery, and she could presumably bring a claim against the owner(s) of the properties where the alleged rape occurred for premises-liability.  She might also sue the local fraternity chapter and national chapter for negligence if she believes fraternity actions or inactions caused her assaults.  But suing K-State on flawed and unsupported legal theories, as she has done here, is simply not the proper vehicle for Ms. Farmer to obtain recourse for her alleged injuries.

## II.    **STATEMENT OF FACTS**

Ms. Farmer alleges that, in the spring of 2015, she attended a fraternity party with a group of friends.  Compl. ¶ 11.  There, they consumed alcohol, and Ms. Farmer states that she "became very intoxicated." *Id.*  Around 2:00 a.m., Ms. Farmer decided to return home, and was taken home by a designated driver. *Id.* ¶ 12.  Shortly after returning home, Ms. Farmer claims

that she received a Facebook message from T.R., a member of the fraternity where Ms. Farmer was partying earlier that night and a high-school friend of Ms. Farmer. *Id.* T.R. allegedly asked Mr. Farmer to return to the party and offered to pick her up. *Id.* Ms. Farmer agreed, and T.R. took her back to the fraternity house, which is located off of K-State's campus. *Id.*

Upon arriving at the fraternity house, Ms. Farmer went to T.R.'s room. *Id.* There, the two had sex. *Id.* Thereafter, T.R. left the room allegedly telling Ms. Farmer that he was going to start his car, "presumably to take her home." *Id.* While he was gone, Ms. Farmer alleges that she discovered C.M. hiding in the closet. *Id.* ¶ 13. She claims that, at that point, being "inebriated and confused," she fell face first onto a bed and blacked out. *Id.* She alleges that C.M. then raped her. *Id.* ¶¶ 13-14. Ms. Farmer states that she reported the alleged rape to the Riley County Police. *Id.* ¶ 16. Nowhere does she allege that law enforcement or prosecutors took any action against C.M.

Ms. Farmer now files the present lawsuit against K-State, effectively alleging that K-State is responsible, and should pay her compensatory damages, because it did not investigate the alleged rape after the fact and K-State was supposedly aware that K-State-recognized fraternities pose a high risk of sexual assault. *Id.* ¶¶ 2, 45-47.

Ms. Farmer seeks compensatory damages, civil penalties, attorneys' fees, a declaratory judgment, and injunctive relief through the following three counts: (1) violation of Title IX for "Deliberate Indifference to Plaintiff's Report of Rape"; (2) violation of the Kansas Consumer Protection Act; and (3) negligence. All three counts fail to state a claim upon which relief can be granted. As such, this Court should dismiss Ms. Farmer's Complaint in its entirety.

## III.   **QUESTIONS PRESENTED**

1.   Whether Ms. Farmer fails to state a claim for a violation of Title IX where the alleged rape did not occur in the context of any education program or activity of

K-State and, thus, where K-State lacked "substantial control" over both the alleged rapist and the context in which the alleged rape occurred?

2.  Whether Ms. Farmer fails to state a claim for a violation of Title IX based on K-State's alleged deliberate indifference to sexual harassment of others predating Ms. Farmer's alleged rape where K-State lacked "actual knowledge" of any substantial risk to Ms. Farmer?

3.  Whether Ms. Farmer fails to state a claim for a violation of Title IX for K-State's alleged deliberate indifference in responding to Ms. Farmer's report of rape where Ms. Farmer does not allege K-State's actions caused her to suffer further sexual harassment in its education programs or activities?

4.  Whether Ms. Farmer fails to plead her KCPA claim with the specificity required by Rule 9(b) and whether she sufficiently alleges that she was "aggrieved" by K-State's alleged misrepresentations about the safety of fraternities?

5.  Whether Ms. Farmer's claim for negligence fails because she does not plead a "special relationship" with K-State such that K-State would have a legal duty to protect her from alleged wrongful and criminal conduct of third-parties occurring off campus on private property?

6.  Whether K-State is immune to Ms. Farmer's negligence claims under the immunity provisions of the KTCA?

## IV.  **ARGUMENT**

"[A] complaint must present factual allegations, assumed to be true, that 'raise a right to relief above the speculative level,' and must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Kenney v. Citimortgage, Inc.*, No. 14-2436-JAR, 2015 WL 1957880, at *1 (D. Kan. Apr. 29, 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "Under this standard, 'the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims.'" *Id.* (quoting *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)).

"While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in

her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id.* (*Robbins v. Oklahoma*, 519 F.3d 1242, 1247-48 (10th Cir. 2008)). "As the Supreme Court explained, '[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### A.   Ms. Farmer Fails To State A Claim For A Violation Of Title IX

Title IX provides: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Thus, the statute only applies to entities that receive federal financial assistance. *Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 641 (1999). And it does not purport to directly regulate conduct between third parties such as students. *Id.* at 640-41. Rather, Title IX simply requires that an institution reasonably respond to discriminatory third-party sexual harassment occurring within its education programs and activities. *Id.* at 645.

Although the statute does not expressly create a private right of action, the Supreme Court has held that one exists in very limited situations if an institution is "deliberately indifferent" to student-on-student sexual harassment. *Id.* Specifically, an institution may be civilly liable in a case of student-on-student sexual harassment *only* if it "(1) has actual knowledge of, and (2) is deliberately indifferent to, (3) harassment that is so severe, pervasive and objectively offensive as to (4) deprive access to the educational benefits or opportunities

provided by the school." *Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1119 (10th Cir. 2008). Further, an institution can be liable only in situations where the sexual harassment occurs within its education programs and activities because these are the only circumstances where the institution "exercises substantial control over both the harasser and the context in which the known harassment occurs." *Davis*, 526 U.S. at 645. "Only then can the recipient be said to 'expose' its students to harassment or 'cause' them to undergo it 'under' the recipient's programs" in such a way as to cause sex discrimination. *Id.*

The Tenth Circuit has required strict enforcement of the causation requirement. *Steamboat Springs*, 511 F.3d at 1123 (imposing strict requirement that institution's deliberate indifference must cause "further sexual harassment"). Thus, the plaintiff must establish that the institution's deliberate indifference *caused* further harassment. *Id.* And that is the case whether the Title IX claim is based on alleged deliberate indifference to sexual harassment of others before an attack that makes a plaintiff more vulnerable to the attack or alleged deliberate indifference after an attack that causes a plaintiff to endure additional harassment. *Id.* at 1123. An institution's mere failure to remediate the effects of sexual harassment, without more, does not give rise to Title IX liability. *Id*; *Escue v. N. Okla. College*, 450 F.3d 1146, 1155 (10th Cir. 2006) (granting summary judgment where plaintiff failed to establish that the institution's response was "ineffective such that she was further harassed").

Here, although Ms. Farmer appears to frame her cause of action as based on K-State's response to *her* allegation of sexual harassment in the form of rape (*e.g.*, by titling her Title IX cause of action "Deliberate Indifference to Plaintiff's Report of Rape"), her Complaint also includes allegations about K-State's response to alleged sexual harassment against others *prior* to Ms. Farmer's alleged rape. Thus, in an abundance of caution, K-State demonstrates below that

both theories fail to state a claim.

1.   Activities off campus and at private parties are not an "education program or activity" of K-State.

As discussed above, Title IX prohibits sex discrimination in K-State's "education programs and activities." 20 U.S.C. § 1681(a). The statute defines "program or activity" to include "all of the *operations* of . . . a college, university, or other postsecondary institution, or a public system of higher education." 20 U.S.C. 1687 (emphasis added). The Department of Education's ("ED") regulation reiterates this requirement. *See* 34 C.F.R. § 106.31(a) (explaining that discrimination is disallowed "in any academic, extracurricular, research, occupational training, or other education program or activity *operated by a recipient* which receives Federal financial assistance.") (emphasis added). Thus, unless the sexual harassment occurs in an "operation" of K-State, no Title IX requirement arises.

In light of Title IX's plain and clear language regarding the "operations" requirement, the Supreme Court has instructed that private damage claims require a showing that the institution "exercise[d] substantial control over *both* the harasser *and* the context" in which the alleged harassment occurred. *Davis*, 526 U.S. at 645 (emphasis added).

Here, Ms. Farmer asserts that sexual harassment (the alleged rape) occurred at a private party at an off-campus fraternity house. Ms. Farmer fails to plead any facts suggesting, directly or indirectly, that K-State had substantial control over the alleged harassment that occurred at the off-campus fraternity house. She does not plead that K-State owns and operates fraternity houses (let alone the one where she alleges she was raped) or the bedrooms located within those private houses. She does not allege facts indicating that K-State knew the party was occurring, that it had a representative present, or that it otherwise had any contemporaneous control over how the party was conducted. The absence of such allegations is fatal to her claim. *See*

*Ostrander v. Duggan*, 341 F.3d 745, 750-51 (8th Cir. 2003) (disposing of Title IX claim that university was deliberately indifferent to harassment that occurred at a house leased by seven fraternity members *immediately adjacent* to campus because "the record is clear that [the university] did not own, possess, or control the [leased house]"); *see also Clifford v. Regents of Univ. of California*, No. 2:11-CV-02935-JAM, 2012 WL 1565702, at *7 (E.D. Cal. Apr. 30, 2012), *aff'd*, 584 F. App'x 431 (9th Cir. 2014) (institution had no control over fraternity party located off campus at Lake Tahoe).

In an effort to avoid this inevitable conclusion, Ms. Farmer asserts—mistakenly—that because C.M. is a K-State student, and K-State recognized the fraternity in question, K-State therefore had "substantial control" for Title IX purposes over C.M., and everything that happened at the party, including in the private bedroom. While the Tenth Circuit has yet to consider a case implicating this precise question, the Eighth Circuit recently rejected nearly identical arguments in *Roe v. St. Louis University*, 746 F.3d 874 (8th Cir. 2014), a case arising from an alleged sexual assault by fraternity members at an off-campus residence:

> Roe argues that the University has control over its students and fraternities; she further alleges that she was potentially exposed to subsequent contact with her rapist and was harassed by the Athletic Department and other students following the rape. The National Women's Law Center argues that the University had disciplinary control over the rapist because he was a student and that universities may control certain off campus behavior due to the nature of the relationship between students and the institution.
>
> The Supreme Court has made it clear, however, that to be liable for deliberate indifference under Title IX, a University must have had control over the situation in which the harassment or rape occurs. *Davis*, 526 U.S. at 645; *see also Ostrander*, 341 F.3d at 750. On the facts of this case there was no evidence that the University had *control over the student conduct at the off campus party.*

*Id.* at 884 (emphasis added); *see also Samuelson v. Oregon State Univ.*, No. 6:15-CV-01648-MC, 2016 WL 727162, at *6 (D. Or. Feb. 22, 2016) ("OSU had no control over an off-campus

party at an apartment that simply happened to be located in the same city as the university.  And Ms. Samuelson's rape occurred not on campus, where the OSU might exert some control over the comings and goings of students or guests, but at another off-campus apartment."); *see also Yeasin v. Univ. of Kan.*, 360 P.3d 423, 430 (Kan. Ct. App. 2015) ("It seems obvious that the only environment the University can control is on campus or at University sponsored or supervised events.  After all, the University is not an agency of law enforcement but is rather an institution of learning.").

As in *Roe*, there is no allegation that K-State had any knowledge of the party to begin with, much less any control of the alleged conduct that occurred there.  "Advance notice and the ability to take corrective action remain prerequisites for recipient liability in Title IX sexual harassment actions." *Samuelson*, 2016 WL 727162, at *6.  Because K-State lacked this requisite control over the off-campus parties, no Title IX liability can attach.

The Tenth Circuit's and this Court's prior cases discussing alleged sexual assaults in primary and secondary schools confirm this result.  For example, in *Steamboat Springs*, a middle-school student was allegedly forced to perform sexual acts by several male students.  511 F.3d at 1117.  The principal believed that the alleged events occurred *off* school grounds, so he turned the matter over to police for investigation.  *Id.* at 1121.  The Tenth Circuit held it was reasonable for the school district to believe it did not have the necessary authority to regulate the alleged conduct itself.  *Id.*  Further, the court also found it reasonable that the school elected to not discipline the students: "Principal Schmidt determined that discipline was not appropriate in this case since most of the incidents did not occur on school grounds, and the district reasonably could believe it did not have responsibility or control over the incidents."  *Id.* at 1123 (citing *Davis*, 526 U.S. at 645).

Similarly, in *C.R.K. v. U.S.D. 260*, a male high-school student sexually assaulted a female student, and he later pled guilty to battery. 176 F. Supp. 2d 1145, 1153 (D. Kan. 2001). The incident occurred when school was not in session, off of school grounds, and outside the context of any school activity. *Id.* at 1164. Thus, this Court found reasonable the school principal's conclusion that the incident "was out of the school's jurisdiction and was up to criminal justice authorities to investigate, to determine what happened, and to impose any appropriate punishment." *Id.* These cases from primary and secondary schools are especially poignant given the Supreme Court's recognition that "[a] university might not, for example, be expected to exercise the same degree of control over its students that a grade school would enjoy." *Davis*, 526 U.S. at 649.

Perhaps recognizing she cannot establish sexual harassment occurred within K-State's education programs and activities, Ms. Farmer ignores the statute's plain language, the regulation adopted by ED pursuant to notice-and-comment rulemaking, and the Supreme Court's "substantial control" requirement. Instead, she seizes on the following language in ED's 2011 Dear Colleague Letter: "If a student files a complaint with the school, regardless of where the conduct occurred, the school must process the complaint in accordance with its established procedures."[1]

To begin, ED itself has stated to Congress that the Dear Colleague Letter "does not hold the force of law." *Examining the Use of Agency Regulatory Guidance: Hearing Before the Subcomm. On Regulatory Affairs and Fed. Management of the S. Comm. On Homeland Security and Governmental Affairs*, 114th Cong. 18 (2015) (statement of Amy McIntosh, Principal Deputy Assistant Secretary Delegated the Duties of the Assistant Secretary, Office of Planning,

---

[1] Notably, not even this guidance indicates an institution must "investigate" every report—rather, it states only that the institution must "process the complaint."

10

Evaluation, and Policy Development, U.S. Department of Education) ("I tried to be very clear in my opening statement that guidance that the Department issues does not have the force of law."), *available at* http://www.hsgac.senate.gov/download/rafm-09-23-2015_-final-printed-hearing-record. Further, the Dear Colleague letter is owed no deference whatsoever, because its interpretation (at least as Ms. Farmer articulates it) is contrary to an unambiguous statute. *See, e.g., Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984); *Townsend v. Swank*, 404 U.S. 282, 286 (1971). Indeed, the Supreme Court already construed the unambiguous language of Title IX in *Davis*, stating: "The statute's plain language confines the scope of prohibited conduct based on the recipient's degree of control over the harasser and the environment in which the harassment occurs." 526 U.S. at 644.

Put simply, when sexual harassment occurs off university property and at a private event, there is no sexual harassment in the university's education programs and activities and thus no "substantial control" sufficient to trigger civil liability under Title IX. Here, Ms. Farmer's Complaint fails to allege facts showing that K-State had any control "over *both* the harasser *and* the context" in which the harassment occurred. Therefore, she fails to state a claim under Title IX.

2.   Ms. Farmer fails to allege a viable Title IX claim based on K-State's response to prior reports of sexual harassment.

Irrespective of whether her allegations implicate an education program or activity of K-State and/or K-State's "substantial control" over the situations in which the alleged rape occurred, Ms. Farmer fails to state a Title IX claim with respect to K-State's alleged deliberate indifference to sexual harassment that predated the alleged rape.

11

     a.     *K-State did not have actual knowledge of the alleged prior harassment.*

     As an element of a Title IX claim, Ms. Farmer must plead (and eventually prove) that K-State had "actual knowledge" of harassment and was deliberately indifferent to it. *Steamboat Springs*, 511 F.3d at 1119. As the Tenth Circuit has acknowledged, some courts permit a plaintiff to establish the knowledge element by showing the institution was aware of sexual harassment against others that predated the sexual harassment on which a plaintiff premises her actual claim.[2] *Id.* (citing *Escue*, 450 F.3d at 1153). To date, the Tenth Circuit has not endorsed this theory. *Id.* Thus, it remains an open question whether Ms. Farmer can rely on *any* prior instances of harassment to establish the "actual knowledge" element of her claim.

     But even assuming Ms. Farmer can rely on K-State's alleged indifference to known prior acts of sexual harassment against others, she cannot merely allege that K-State had actual knowledge of a *general risk* of sexual assault. Instead, she must plead facts establishing K-State had "actual knowledge of a *substantial risk*" to her—either directly or as a member of an at-risk group. *Escue*, 450 F.3d at 1154.

     Here, however, Ms. Farmer does not even assert that C.M. had any prior reports of sexual harassment, or that K-State had any knowledge whatsoever that C.M. might commit an assault such that K-State could have taken action to prevent it. Tellingly, in *Escue*, the Tenth Circuit considered evidence present in the record that the institution had specific reports about prior actions of the *specific individual* who allegedly committed the sexual assault. *Id.* at 1153-54. Nonetheless, the court agreed with the district court that the occurrences were "too dissimilar, too infrequent, and/or too distant in time" to provide actual notice to the school district. *Id.*

---

[2] Plaintiff's Title IX claims relating to the alleged "current harassment" are addressed *infra*, Section IV.A.3.

Here, all Ms. Farmer alleges is that there are police reports containing *allegations*[3] of sexual assault at fraternities in Manhattan, Kansas and that certain national studies (none specific to fraternities in Manhattan, Kansas) purport to show fraternities pose a greater risk of sexual assault than other campus constituencies. Yet, none of this information, if true, addresses whether K-State had knowledge that C.M., or someone else posed a substantial risk to Ms. Farmer. In fact, Ms. Farmer does not even allege that a member of this specific fraternity had previously been accused of sexual assault.

Even worse, Ms. Farmer appears to assert that K-State had actual knowledge of sexual harassment because of generalized research on the topic (not directly pertaining to fraternities in Manhattan, Kansas in any way). Even where plaintiffs have come forward with specific evidence of prior sexual assaults at an institution, courts have refused to find such generalized evidence sufficient to meet the "knowledge" element of a Title IX claim; rather, the prior assaults must be by the same perpetrators who harmed the plaintiff or otherwise bear some clear pattern to the plaintiff's alleged assault to be sufficient. *See, e.g., Schaefer v. Las Cruces Pub. Sch. Dist.*, 716 F. Supp. 2d 1052, 1080-81 (D.N.M. 2010) (refusing to "extend the logic of Supreme Court's and the Tenth Circuit's cases" by imposing liability where a school district had knowledge of "three prior incidents of sexual assault by different assailants against different victims"); *Doe v. Blackburn Coll.*, No. 06-3205, 2012 WL 640046, at *10 (C.D. Ill. Feb. 27, 2012) ("Before Plaintiff was assaulted, [the school official] had notice of two prior sexual assaults against students in 2004, but the attackers in both those assaults had been identified. Not until after Plaintiff's assault did [the school official] learn of the prior assault of another student

---

[3] Ms. Farmer's allegations appear to be based on statistics in K-State's annual security report (which, pursuant to federal law, is published annually and thus available to her at any time), which quantifies *reports* of certain classes of criminal conduct without making any judgment as to whether or not those reports are *substantiated*. |*See* 20 U.S.C. § 1092(f)(1)(F).

by an unknown assailant.  Given these facts, the Court concludes that Blackburn had no actual

knowledge of any substantial risk of sexual assault to Plaintiff."); *T.Z. v. City of New York*, 635

F. Supp. 2d 152, 170 (E.D.N.Y.), *rev'd in part on reconsideration on other grounds*, 634 F.

Supp. 2d 263 (E.D.N.Y. 2009) ("The school cannot be held liable to plaintiff under Title IX for

the assault against C.G. under a theory that it knew of past assaults, given that the school's

knowledge was generalized, and there was no specific threat posed to C.G. or posed by her

assailants.").

Ms. Farmer's generic allegations and "statistics" about sexual assaults at K-State do not

sufficiently plead "actual knowledge" of sexual harassment connected in any way to Ms.

Farmer's alleged rape.  Another district court recently articulated this issue well:

> The theory of liability the Plaintiffs posit is more akin to a constructive notice or
> negligence standard.  Because the Defendant knew of two past instances of sexual
> harassment involving different students, different scenarios, and, in one case,
> different schools within its system, it *should have* anticipated the attack on Jane
> Doe II.  While this may be a good argument in a state law tort case, it has no place
> yet in the Title IX context.

*Doe v. Bibb Cty. Sch. Dist.*, 83 F. Supp. 3d 1300, 1309 (M.D. Ga. 2015).  The same is true here.

Further, even if this Court is willing to consider these irrelevant statistical assertions, Ms.

Farmer's allegation that K-State should have been aware of a high risk of sexual assault in its

fraternities because of them is demonstrably false.  Specifically, Ms. Farmer alleges there were

13 *reports* (not substantiated findings) of off-campus "forcible sex offenses" between 2011 and

2013 and 6 reports (again, not substantiated findings) of off-campus "rape" in 2014.  Compl. ¶ 2.

According to publically available ED statistics, K-State's Manhattan campus has a total

undergraduate enrollment of 17,956, of which 8,569 are women.[4]  Taking 2014 as an example,

---

[4] *http://ope.ed.gov/athletics/GetOneInstitutionData.aspx*.  Facts that are subject to judicial notice can be considered
without converting a motion to dismiss into a motion for summary judgment.  *Grynberg v. Koch Gateway Pipeline
Co.*, 390 F.3d 1276, 1278 (10th Cir. 2004).  Courts widely hold that information contained on government websites

even if all 6 reports of off-campus rape were substantiated, and even if all were committed by fraternity members, and even if all of them were committed against K-State undergraduate women (none of which has been alleged or proven), this would amount to an off-campus sexual assault rate for K-State undergraduate women of approximately 0.07%, or less than 1 woman out of every 1,000.

To be sure, every rape is tragic, but Ms. Farmer's allegation in this lawsuit is that the rate of assault is so high that it provided K-State with "actual knowledge" of sexual harassment such that it should have acted to correct this "culture." That allegation is belied by the facts. According to figures released by the Department of Justice in 2014[5], a rate of 0.07% is substantially lower than the national average for female college students in general (0.61%, or 6.1 per 1,000) and substantially lower than the national average for females who are not college students (0.76%, or 7.6 per 1,000).

Perhaps realizing these statistics are fatal to her claim that K-State was aware fraternities posed a high risk to K-State women, Ms. Farmer claims that, because the statistics show such a low rate, "it is safe to assume the actual number is significantly higher." Compl. ¶ 50. In other words, Ms. Farmer alleges that, because the statistics show K-State women were *not* at heightened risk of rape, K-State should have known that K-State women *were* at heightened risk of rape. This assumption is illogical. The Supreme Court has made clear speculation like this is insufficient to make a claim plausible. *Twombly*, 550 U.S. at 555, 570.

---

is subject to judicial notice. *See, e.g., Canadian St. Regis Bank of Mohawk Indians v. New York*, 2013 WL 3992830, at *12 (N.D. N.Y. 2013); *Smallwood v. Foos*, No. 07-cv-02652-WYD-MEH, 2008 WL 3338374, at *3, n.2 (D. Colo. 2008); *see also Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003) (concluding that a district court may take judicial notice of information on an official government website). Therefore, the Court may consider data from the Department of Education's website and the Department of Justice's website.

[5] Sofi Sinozich & Lynn Langton, *Rape and Sexual Assault Victimization Among College-Age Females, 1995-2013*, U.S. Dept. of Justice, Bureau of Justice Statistics, at 1 (Dec. 2014), available at http://www.bjs.gov/content/pub/pdf/rsavcaf9513.pdf.

     b.     *Ms. Farmer does not sufficiently plead that any alleged deliberate indifference by K-State regarding allegations of prior sexual assaults caused her alleged rape.*

Completely missing from Ms. Farmer's allegations is any assertion that K-State's alleged deliberate indifference to earlier sexual harassment *caused* Ms. Farmer to be raped. Instead, she simply chastises K-State for failing to respond to and remedy the "risk" allegedly posed by fraternities. But, at least for purposes of the narrow private right of action recognized by the Supreme Court, Title IX does not require a university to respond to generalized "risks" or "climates."

There is nothing more than Ms. Farmer's conclusory allegations and speculation that K-State's alleged deliberate indifference to prior sexual harassment caused her to be raped. She does not allege that C.M. was ever previously accused of a sexual assault. She does not allege that a member of his fraternity had been accused of a sexual assault. Ms. Farmer provides *no factual allegations whatsoever* about these prior alleged assaults to plead that they are in any way similar to the allegations in her complaint. Thus, her conclusory allegation that K-State's failure to respond to prior alleged assaults *caused* her assault is nothing but speculation. "Naked assertions of . . . discrimination without any specific factual allegation of a causal link between the defendants' conduct and the plaintiff's protected characteristic are too conclusory to withstand a motion to dismiss." *Doe v. Columbia Univ.*, 101 F. Supp. 3d 356, 366 (S.D.N.Y. 2015) (dismissing a Title IX suit for failure to state a claim).

     3.     Ms. Farmer fails to allege a viable Title IX claim because she does not plead that K-State's alleged deliberate indifference to her report caused further harassment after the alleged rape.

Ms. Farmer fails to plead facts showing that K-State's alleged deliberate indifference caused her to suffer *further* sexual harassment, which is specifically required by the Tenth

Circuit for there to be a viable Title IX claim. *Escue*, 450 F.3d at 1155 ("Significantly, we note that Ms. Escue does not allege that further sexual harassment occurred as a result of NOC's deliberate indifference."). For example, in *Escue*, the plaintiff failed to "allege that [the college's] response to her allegations was ineffective such that she was further harassed." *Id.* at 1156. Despite the fact that the accused assaulter attempted to contact the plaintiff on the day she reported the assault to college administrators, the court found that the plaintiff was unable to show that the college's response "led to further sexual harassment." *Id.*; *see also Steamboat Springs*, 511 F.3d at 1123 (affirming the rejection of a Title IX claim because the plaintiff "does not contend that further sexual harassment occurred as a result of the district's deliberate indifference").

Here, Ms. Farmer does not allege that she suffered additional sexual harassment (i.e., additional unwelcome conduct of a sexual nature[6]) in the months following her rape, by her alleged rapist or by anyone else, "much less that any such harassment was attributable to [K-State's] alleged failure to investigate." *Rouse*, 914 F. Supp. 2d at 725-26. Rather, instead of claiming she suffered additional unwelcome conduct of a sexual nature, Ms. Farmer instead alleges that K-State's deliberate indifference failed to remediate the *effects* of the alleged rape because she disagrees with the manner in which K-State processed her reports of off-campus rape after she made them. Ms. Farmer cannot sustain her Title IX claim simply by alleging K-

---

[6] *See* https://www.k-state.edu/policies/ppm/3000/3010.html (defining "sexual harassment" as "a type of harassment that involves unwelcome sexual advances, requests for sexual favors, disparagement of members of one sex, or other conduct of a sexual nature" that results in *quid pro quo* or hostile environment); *see also* ED's Revised Sexual Harassment Guidance at 2 (ED, 2001) ("Sexual harassment is unwelcome conduct of a *sexual* nature") (emphasis added), *available at* http://www2.ed.gov/about/offices/list/ocr/docs/shguide.pdf. In fact, the 2011 Dear Colleague Letter cited by Ms. Farmer in her Compliant provides an explanatory example that confirms this interpretation: "For example, if a student alleges that he or she was sexually assaulted by another student off school grounds, and that *upon returning to school* he or she was *taunted and harassed* by other students who are the alleged perpetrator's friends, the school should take the earlier sexual assault into account in determining whether there is a sexually hostile environment." This demonstrates both the requirement that further sexual harassment exist and that sexual harassment occur in a context in which the institution exercises substantial control.

State failed to investigate her allege rape and/or that it failed to discipline C.M. because that is not "further harassment." *See Escue*, 450 F.3d at 1156-57; *see also Doe v. Bibb Cnty. Sch. Dist.*, 126 F. Supp. 3d 1366, 1378 (M.D. Ga. 2015) ("Clearly, a funding recipient cannot be held liable simply because it did not conduct an appropriate investigation . . ..").); *Rouse v. Duke Univ.*, 914 F. Supp. 2d 717, 725-26 (M.D.N.C. 2012), *aff'd*, 535 F. App'x 289 (4th Cir. 2013) ("[T]he Supreme Court has stressed that its conclusion that an educational institution may be held liable for its deliberate indifference to known acts of peer sexual harassment does not mean . . . that administrators must engage in particular disciplinary action." (citing *Davis*, 526 U.S. at 644-45) (internal quotations omitted)).  Therefore, even if K-State did fail to remediate the effects of Ms. Farmer's prior rape, a failure to remediate is not the same as *causing* further harassment, which Tenth Circuit precedent requires.  Ms. Farmer cannot recover against K-State under a Title IX private cause of action.

**B.      Ms. Farmer Fails To State A Claim For Violation Of The KCPA**

1.      Ms. Farmer fails to plead her KCPA claim with particularity.

Federal Rule of Civil Procedure 9(b) requires that, when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  "This requirement applies to allegations of deceptive trade practices under the KCPA." *Thompson v. Jiffy Lube Int'l, Inc.*, 505 F. Supp. 2d 907, 930 (D. Kan. 2007) (citing *In re Univ, Serv. Fund Telephone Billing Practices Lit.*, 300 F. Supp. 2d 1107, 1150 (D. Kan. 2003); *Burton v. R.J. Reynolds Tobacco Co.*, 884 F. Supp. 1515, 1524 (D. Kan. 1995)).  "To survive a motion to dismiss, an allegation of fraud must set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Thompson*, 505 F. Supp. 2d at 930 (internal quotation marks and citations omitted).

"In other words, the plaintiff must set out the 'who, what, where, and when' of the alleged fraud." *Id.* (citations omitted).

In this case, Ms. Farmer's general allegations that K-State made misrepresentations about the quality and nature of services that it provides—as well as the safety of local fraternities at K-State—regarding sexual assault come nowhere close to the particularity required by Rule 9(b). *See, e.g.*, Compl. ¶¶ 88, 89. To illustrate this, the Court need not look farther than *Jamieson v. Vatterott Educational Center, Inc.*, 473 F. Supp. 2d 1153 (D. Kan. 2007). There, former students of Vatterott claimed that they received several verbal and written representations prior to their enrollment about the quality of education at Vatterott, including "the qualifications and competence of the faculty," "the accreditations Vatterott had received for the courses of study," and "Vatterott's job placement rates." *Id.* at 1155. "After enrolling and participating in their respective courses of study, Plaintiffs learned that many of the promises and representations made by Vatterott and its representatives were false." *Id.*

The court described the plaintiffs' KCPA allegations in a paragraph that is critical to this case because of the allegations' striking similarity to those in Ms. Farmer's Complaint (¶¶ 88-90):

> To support allegations of KCPA violations and fraud, Plaintiffs claim Defendant and its representatives knowingly made false representations about the qualifications and possession of its sponsorships, accreditations, placement rates, status, affiliations, connections, and affiliations [sic]. Vatterott and its representatives knowingly made false representations without a reasonable basis that its services were of a standard, quality, or grade when its services were materially different from those representations. Vatterott and its representatives, in both oral and written representations, willfully used exaggeration, falsehood, innuendo, and ambiguity regarding material facts relating to its services. Vatterott and its representatives willfully concealed, suppressed, and omitted material facts relating to its services. Vatterott took advantage of the Plaintiffs' respective individual inabilities to protect their interests because of their lack of familiarity with the subject matter of the consumer transaction. The tuition and fees for the respective courses of study grossly exceeded the prices at which

> similar services were readily obtainable from other institutions. Plaintiffs were unable to derive any material benefit from the consumer transaction entered into with Vatterott. Vatterott knew Plaintiffs would be unable to derive any material benefit from the consumer transaction. The false representations induced Plaintiffs into entering into Enrollment Agreements.

*Id.* at 1155-56. Ultimately, the court found that the plaintiffs failed to plead a KCPA claim with particularity. *Id.* at 1158. The outcome here should be the same.

First, the court noted that the "[p]laintiffs only identify the subject of the misrepresentation without specifically identifying what false representation was made about the subject." *Id.* at 1157. Similarly, while Ms. Farmer identifies several alleged statements about fraternities, she does not plead, specifically, what is false about them. These generalized allegations are insufficient. *Id.* ("Defendant has no idea what specific representation was made about job placement rates, accreditations, teacher qualifications, skills necessary to obtain entry level employment, or materials to be provided.").

Second, the court found that the plaintiffs failed to sufficiently plead the "when" aspect of a KCPA violation: "Plaintiffs state the misleading statements occurred before and during their enrollments. This is not a particular statement as it is impossible to tell if misrepresentations occurred days or years before enrollment." *Id.* Similarly here, Ms. Farmer makes no allegations whatsoever as to when the representations were made. Her allegation that the representations were made "in connection with [K-State's] consumer transactions with [Ms. Farmer]," does nothing to put K-State on notice of the specific allegations it will be required to defend. Compl. ¶ 88.

Third, the *Jamieson* court ruled that the plaintiffs failed to sufficiently allege the "place" of the fraud. As to the alleged verbal statements, "[t]here is absolutely no allegation about the location of the verbal misrepresentations." *Jamieson*, 473 F. Supp. 2d at 1157. The same is true

here.  Ms. Farmer does not allege where any verbal representation occurred.  In fact, her admission that she must plead "oral representation" by "information and belief" is all but an admission that she is unable to plead it with particularity.  *See* Compl. ¶ 89.  Further, generic assertions about "written representations" are similarly unavailing: "The Defendant is not on notice if these misrepresentations were made on brochures, personalized letters, bills, e-mails, or any of the other many forms of written communication." *Jamieson*, 473 F. Supp. 2d at 1157; *see also Mattos v. Eli Lilly & Co.*, No. 12-1014-JWL, 2012 WL 1893551, at *7 (D. Kan. May 23, 2012) ("general references to marketing brochures and other materials, in which defendant allegedly made misrepresentations or misleading statements, are insufficient to satisfy Rule 9(b)").

Ms. Farmer does not allege where any of these supposed written representations are located.  While she alleges that K-State hosts a website regarding Greek affairs (*see* Compl. ¶ 53), she fails to allege if that is the location of any of these representations, or if the allegedly misleading materials were provided elsewhere.

Fourth, and finally, the *Jamieson* court ruled that the plaintiffs failed to adequately allege "who" made the misrepresentations:

> The complaint alleges the misrepresentations were made by "Vatterott agents and employees of Vatterott, including but not limited to admissions representatives, financial aid representatives, career services representatives, and course instructors." (Doc. 12 ¶ 25).  This language includes virtually anyone associated with Vatterott.  Words like "including but not limited to" is hardly that which identifies specific individuals.  Furthermore, while Plaintiffs have identified the types of employees who made misrepresentations (ie. personnel working in admissions, career services, and financial aid), they do not identify who, within these broad classes of employees, made misrepresentations.

*Jamieson*, 473 F. Supp. 2d at 1158.  Here, Ms. Farmer identifies only "K-State" as making the representations.  Compl. ¶¶ 88-90.  Ms. Farmer alleges that K-State has an Office of Greek

Affairs, but she does not allege that anyone in that office made any misrepresentations, nor does she specify the person who made the alleged misrepresentations as *Jamieson* requires. *See id.* ¶ 53.

In short, Ms. Farmer comes nowhere close to pleading the "who, what, when, and where" of her KCPA claim, as is required by Rule 9(b). Her cause of action is little more than a formulaic recitation of the elements, which also should not survive scrutiny under Rule 12(b)(6). But certainly under the heightened pleading standard applicable here, Ms. Farmer's KCPA claim cannot survive.

2.  <u>Ms. Farmer fails to allege that she was "aggrieved" by a misrepresentation.</u>

"[A] consumer cannot successfully prosecute any private remedy action under the KCPA unless the violation has been 'aggrieved,' i.e. resulted in an 'injury or loss to' that consumer." *Rinehart v. Saint Luke's S. Hosp., Inc.*, No. 10-2209-SAC, 2011 WL 3348234, at *9 (D. Kan. Aug. 3, 2011). While a "loss or injury resulting from a violation of the Act" is not required for actions filed by the Attorney General, it is required for actions asserted by consumers. *Id.* (quoting *Finstad v. Washburn Univ. of Topeka*, 845 P.2d 685, 691 (Kan. 1993)). Here, Ms. Farmer asserts only one sentence regarding this issue:

> Plaintiff has incurred damages as a direct result of Defendant's unconscionable and/or deceptive acts and practices and she is "aggrieved" as that term is used K.S.A. §§ 50-634 and 636.

Compl. ¶ 92. This is plainly a pure legal conclusion that should be entirely ignored for purposes of evaluating this motion to dismiss. It is also insufficient to state a claim (especially under the heightened pleading standards for KCPA claims).

In *Finstad*, the Kansas Supreme Court analyzed for the first time what is meant by the term "aggrieved" for purposes of the KCPA. Its analysis is particularly relevant to this case,

22

because the misrepresentations at issue were allegedly made by a public university.  Students in Washburn University's paralegal program filed suit claiming that the university's course catalogs improperly advertised the program as accredited when it was not.  *Finstad*, 845 P.2d at 687-88.  After concluding that a causation requirement continued to exist in the KCPA, and after finding that the plaintiff in a private action under the KCPA must prove he was "aggrieved," the court held that, to be aggrieved, a plaintiff must have "suffered loss or injury."  *Id.* at 690.  Then in describing why the students were not aggrieved, the court stated:

> In the present case, the students did not rely on the false statement, and many, if not all, of the students were unaware of the statement.  Many enrolled prior to the publication of the statement in the university catalogue.  Nor is there any showing that any of the students suffered injury or loss as a result of the publication of the statement.  The students enrolled and paid the tuition.  By so doing, they were consumers under the KCPA; however, the Act requires more in that they must also be aggrieved by the violation.

*Id.* at 691.

Similarly, here, Ms. Farmer fails to allege that she saw any of these statements, relied on these statements, or was anyway harmed by the publication of these statements.  Because Ms. Farmer is not "aggrieved *by the publication*" of these allegedly false statements, she "cannot bring this action to recover damages or a civil penalty under 50-634(b)."  *Id.*  Ms. Farmer's conclusory statement about being "aggrieved" is wholly insufficient.  Her claim under the KCPA should be dismissed.

### C.    Ms. Farmer Fails To State A Claim For Negligence

The KTCA states: "Subject to the limitations of this act, each governmental entity shall be liable for damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment under circumstances where the governmental entity, if a private person, would be liable under the laws of this state."  K.S.A. 75-

6103(a).  Therefore, "the analytical matrix established by the legislature in enacting the KTCA dictates that a governmental entity can be found liable for the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment only if (1) a private person could be liable under the same circumstances and (2) no statutory exception to liability applies." *Adams v. Bd. of Sedgwick Cty. Comm'rs*, 214 P.3d 1173, 1179 (Kan. 2009).

Here, K-State addresses these elements in turn.  If the Court finds that K-State cannot be liable under the first element, there is no need to evaluate the specific immunities.  *Id.* at 1190 (citing *Hesler v. Osawatomie State Hospital*, 971 P.2d 1169, 1180 (Kan. 1999); *Kansas State Bank & Tr. Co. v. Specialized Transp. Servs., Inc.*, 819 P.2d 587, 602 (Kan. 1991)).

    1.    <u>K-State cannot be liable for negligence because there is no legal duty to protect Ms. Farmer from the alleged criminal acts of third-parties occurring off campus.</u>

To establish a cause of action for negligence, Ms. Farmer must plead (and eventually prove) that: "(1) The defendant owed a duty to the plaintiff; (2) the duty was breached; (3) the breach was the proximate cause of the plaintiff's injury; and (4) the plaintiff sustained damages." *Adams*, 214 P.3d at 1179.  "Whether a duty exists is a question of law. . . ." *Id.*

"It is the general rule that an actor has no duty to control the conduct of a third person to prevent that person from causing harm to others unless a 'special relationship' exists between the actor and the third party or the actor and the injured party." *Nero v. Kansas State Univ.*, 861 P.2d 768, 772 (Kan. 1993) (quoting *Thies v. Cooper*, 753 P.2d 1280, 1282 (Kan. 1988)).  In *Nero*, the plaintiff was sexually assaulted in a coed residence hall by a fellow student. *Id.* at 771. The plaintiff sued for negligence, asserting that the university owed her a duty to protect from the assault. *Id.* at 772. The trial court ruled that the university-student relationship was not a "special relationship" that imposed a legal duty to protect against the acts of third-parties,

including sexual assault. *Id.* at 773. The trial court refused to apply "the outmoded doctrine of in loco parentis" and ruled that universities today "have no legal duty to shield their students from the dangerous activities of other students." *Id.* The trial court based its ruling on several cases rejecting this theory of liability in the higher-education setting.[7] As the Kansas Supreme Court recognized, "[w]ith regard to the doctrine of in loco parentis, the weight of authority is in agreement with the trial court's ruling." *Id.*

The Kansas Supreme Court affirmed on this issue. Following an extensive discussion of the relevant cases, the Court concluded:

> We hold the university-student relationship does not in and of itself impose a duty upon universities to protect students from the actions of fellow students or third parties. The in loco parentis doctrine is outmoded and inconsistent with the reality of contemporary collegiate life.

*Id.* at 778. The court ultimately allowed the plaintiff's case to continue on a landlord-tenant theory, because the university *owned and operated* the facility where the conduct occurred. *Id.* at 779-80.

Here, it is undisputed that K-State did not own the fraternity where the alleged assault occurred. Thus, a landlord-tenant theory is entirely inapplicable. Ms. Farmer does not plead that she has any special relationship with K-State other than her relationship as a student. *Nero* conclusively establishes that this relationship does not give rise to a duty for K-State to protect against the wrongful actions of a third party. *See also Gragg v. Wichita State Univ.*, 934 P. 2d 121, 135-38 (Kan. 1997) (holding that university owed no duty to protect or warn a woman who was shot and killed—on its own campus—by a third party because there was no "special relationship" and that the university was immune from liability under the KTCA). Moreover,

---

[7] *Bradshaw v. Rawlings*, 612 F.2d 135 (3d Cir. 1979); *Tanja H. v. Regents of the University of California*, 228 Cal. App. 3d 434, 278 Cal. Rptr. 918 (1991); *Crow v. State of California*, 222 Cal. App. 3d 192, 271 Cal. Rptr. 349 (1990); *Baldwin v. Zoradi*, 123 Cal. App. 3d 275, 176 Cal. Rptr. 809 (1981); *Eiseman v. State of New York*, 70 N.Y.2d 175, 518 N.Y.S.2d 608, 511 N.E.2d 1128 (1987).

Ms. Farmer's conclusory allegation that an assault was foreseeable (*see, e.g.* Compl. ¶ 97) is undermined by Ms. Farmer's own allegations and statistics. *See infra* Section IV(A)(2)(a).

K-State does not owe a legal duty to Ms. Farmer to protect against the type of wrongful conduct she alleges in her Complaint. As such, her negligence claim should be dismissed, and this Court does not need to consider the various immunities implicated by the KTCA. *Adams*, 214 P.3d at 1190 (holding that a negligence claim should be disposed for lack of duty and finding it unnecessary to then evaluate the KTCA immunities).

      2.    <u>K-State is immune from liability under several of the KTCA's exceptions to liability.</u>

In the event the Court finds that K-State did owe a legal duty to protect Ms. Farmer from the criminal acts of third parties occurring off campus, the Court must then turn to the immunities outlined by the KTCA. As pertinent here, the act provides:

> A governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from:
> . . .
> (c) enforcement of or failure to enforce a law, whether valid or invalid, including, but not limited to, any statute, rule and regulation, ordinance or resolution;
> . . .
> (e) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee, whether or not the discretion is abused and regardless of the level of discretion involved;

K.S.A. 75-6104(c) & (e).

      *a.*    <u>*Enforcement or failure to enforce a law.*</u>

In this case, Ms. Farmer asserts that K-State acted in violation of its obligations under Title IX and its attendant regulations. In fact, Ms. Farmer's allegations asserting a Title IX violation do not vary in any material respect from those asserting negligence. *Compare* Compl. ¶¶ 76-79, *with* Compl. ¶ 95. As the KCTA describes, K-State cannot be held liable in tort for an

alleged failure to enforce a law or regulation.  K.S.A. 75-6104(c).[8]

Importantly, this immunity is broader than its federal counterpart found at 28 U.S.C. § 2680(a), which provides a similar immunity if the government actor is "exercising due care." The KTCA version omits that language.  As the Kansas Supreme Court has held:  "The exception contained in our law is broader than its federal counterpart and we will apply it as enacted."  *Barber v. Williams*, 767 P.2d 1284, 1289 (Kan. 1989).  Thus, even if Ms. Farmer believes that K-State was negligent in its enforcement of (or its alleged failure to enforce) Title IX, K-State has not waived its sovereign immunity from such liability as set forth in the KTCA.

### b.   *Discretionary functions.*

The alleged wrongful actions here also were discretionary functions.  "The term 'discretionary function or duty' is not defined in the KTCA."  *Soto v. City of Bonner Springs*, 238 P.3d 278, 283 (Kan. 2010).  "To determine whether the function or duty is discretionary, Kansas courts look foremost to the nature and quality of the discretion exercised."  *Id.*  Ms. Farmer alleges that K-State failed to adequately investigate instances of sexual assault and failed to appropriately discipline alleged assailants.  As these are inherently discretionary functions, the KTCA provides immunity to K-State.

Several Kansas cases have discussed the discretionary nature of an investigation and the investigative process.  Specifically, Kansas courts have frequently analyzed the State's investigative role in cases of alleged child abuse.  First, the Kansas Supreme Court held that the ultimate decision of whether to remove a child from the home following the State's investigation was a discretionary function.  *G. v. State Dept. of SRS*, 833 P.2d 979, 985-88 (Kan. 1992).  Next,

---

[8] Similarly, to the extent Ms. Farmer intends to assert liability for the failure of K-State to enact a proper policy (or that the policy enacted gives rise to liability), such a theory is foreclosed by K.S.A. 75-6104(a), which provides immunity for "[l]egislative functions, including, but not limited to, the adoption or failure to adopt any statute, regulation, ordinance or resolution."

the Kansas Court of Appeals extended that reasoning, holding that the initial decision of *whether* to open an initial investigation after allegations of abuse is a discretionary function. *Beebe v. Fraktman*, 921 P.2d 216, 218 (Kan. Ct. App. 1996) ("The decision whether to open a file for further investigation is a discretionary function."). Finally, the court of appeals went even further to hold that the *manner* of investigation is also a discretionary function. *Burney v. Kansas Dep't of Soc. & Rehab. Servs.*, 931 P.2d 26, 32 (Kan. Ct. App. 1997) ("We hold that the manner of conducting an investigation into a charge of child abuse is also a discretionary function.").

Application of these same principles to Ms. Farmer's allegations of a faulty investigation is dispositive of the issue. All of the conduct alleged to be wrongful in Ms. Farmer's Complaint is encompassed by the Kansas courts' rulings on the discretionary nature of the investigative process. Indeed, the decision about whether to initiate an investigation, the manner of the investigation itself, and the outcome of that investigation have all been described as discretionary. So too here, especially when considered in light of substantial case law from other jurisdictions holding that the investigation and discipline of student behavior is discretionary. *See, e.g.*, *Gomes v. Univ. of Maine Sys.*, 304 F. Supp. 2d 117, 135 (D. Me. 2004) ("The nature and scope of a University disciplinary hearing, the conduct of the hearing itself, and the final judgment of the University officials would appear to fit well within discretionary function immunity under the Maine Tort Claims Act."); *Foster v. Raspberry*, 652 F. Supp. 2d 1342, 1355 (M.D. Ga. 2009) ("Georgia courts have repeatedly held that the supervision and discipline of students are discretionary acts.").

Due to the discretionary nature of K-State alleged actions (or inactions) in this case, the KTCA bars liability. This Court should dismiss Ms. Farmer's negligence claim.

## V.    <u>CONCLUSION</u>

This Court should dismiss the entirely of Ms. Farmer's Complaint for failure to state a claim.

Date:   May 27, 2016

HUSCH BLACKWELL LLP

/s/ Derek T. Teeter
ALLAN V. HALLQUIST      D. KAN. NO. 78356
HAYLEY E. HANSON      KS BAR NO. 20087
DEREK T. TEETER      KS BAR NO. 23242
MICHAEL T. RAUPP      KS BAR NO. 25831
HUSCH BLACKWELL LLP
4801 Main, Suite 1000
Kansas City, Missouri 64112
(816) 983-8000
(816) 983-8080 (FAX)
allan.hallquist@huschblackwell.com
hayley.hanson@huschblackwell.com
derek.teeter@huschblackwell.com
michael.raupp@huschblackwell.com

*Attorneys for Defendant Kansas State University*

29

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2016, I filed the foregoing document via the Court's ECF system, which will cause a true and correct copy of the same to be served electronically on all ECF-registered counsel of record.

/s/ Derek T. Teeter
*Attorney for Defendant*