# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| TESSA FARMER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Case No. 2:16-cv-02256-JTM-KGG |
| KANSAS STATE UNIVERSITY, | ) | |
| an agency of the State of Kansas, | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Dated: July 1, 2016

**THE FIERBERG NATIONAL LAW GROUP, PLLC**
Cari Simon
Douglas E. Fierberg
105 E. Philip St.
P.O. Box 121
Lake Leelanau, MI  49653
Phone:  (231) 256-7068
Fax: (231) 256-7069
Counsel for Plaintiff

**PALMER, LEATHERMAN, WHITE, GIRARD & VAN DYK, LLP**
Dustin L. Van Dyk
Gary D. White Jr.
Meaghan M. Girard
2348 SW Topeka Blvd.
Topeka, KS  66611
Phone:  (785) 233-1836
Fax:  (785) 233-3703
Counsel for Plaintiff

**Table of Contents**

I.  **NATURE OF THE MATTER** ...................................................................... 1

II.  **STANDARD OF REVIEW** ..................................................................... 3

III.  **FACTS** ................................................................................................. 4

IV.  **QUESTIONS PRESENTED** ................................................................... 4

V.  **ARGUMENT** ........................................................................................ 5

   A.  **Title IX Provides a Broad Prohibition on Sex Discrimination** ............................... 5

   B.  **A School's Responsibilities Under Title IX Extend to Off-Campus Sexual Harassment When the School Has Substantial Control Over the Harasser and Context in Which Harassment Occurs, Such That There Is a Nexus Between Out-of-School Conduct and the School** .................................. 6

   C.  **The Continued Presence of An Assailant on Campus Constitutes Prohibited Ongoing Sexual Harassment and Discrimination Under Title IX** ......................... 9

   D.  **Tessa Sufficiently Pled Her Title IX Complaint and Defendant's Motion Should Be Denied** .................................................... 11

      1.  **K-State Had A Duty to Respond to Tessa's Complaint Because the University Had Substantial Control Over the Assailant and Context In Which the Sexual Violence and Harassment Occurred, Such That A Nexus Existed Between K-State and the Off-Campus Violence and Harassment** ................. 12

      2.  **Tessa Has Pled Facts Sufficient to Show that K-State Was Obligated to Respond to the Hostile Educational Environment She Suffered at K-State** . 14

**3.      K-State's Argument That It Is Absolved of Title IX Duties or Liability For Failing to Respond to the Rape and Hostile Educational Environment Tessa Suffered Is Unavailing and Should Be Rejected** ............................................. 15

**4.      K-State's Argument That It Had No Title IX Duty to Respond to the On-Campus Hostile Environment Tessa Suffered Due to a Non-Existent Strict Further Harassment Requirement Is Wrong** .................................................... 20

**E.      K-State's Argument Regarding Pre-Assault Title IX Liability Need Not Be Addressed, Tessa Does Not Allege Title IX Liability Against K-State for its Indifference to Prior Assaults** ...................................................................... 24

**F.      Tessa Provided Appropriate Claims for Violation of the KCPA** ......................... 25

**G.      Tessa Sufficiently States Her Claim For Negligence** ............................................. 27

**VI.      CONCLUSION** ............................................................................................................. 29

**Table of Authorities**

Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................ 3

*Babler v. Arizona Board of Regents*, No. 2:10-cv-01459-RRB (D. AZ. 2011)............................ 19

*Bac Home Loan Servicing LP v. Fall Oaks Farm, LLC*, 848 F. Supp.2d 818 (S.D. Ohio 2012). 25

*Bryant v. Indep. Sch. Dist. No. I-38*, 334 F.3d 928 (10th Cir. 2003)............................. 6

*Burgess v. Perdue, II, MD*, 239 Kan. 473 (1986) ................................................ 27

*Burton v. R.J. Reynolds Tobacco Co.*, 884 F.Supp. 1515 (D. Kansas 1995)........................... 27

*C.R.K. v. U.S.D.*, 176 F. Supp. 2d 1145 (D. Kan. 2001)............................................ 16

*Cansler v. State*, 675 P.2d 57 (1984) ........................................................... 28

*Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357 (10th Cir. 1989)........... 3

*Cessna Aircraft Co. v. Metro. Topeka Airport Auth.*, 940 P.2d 84 (1997)........................... 29

*Circle Land & Cattle Corp. v. Amoco Oil Co.*, 232 Kan. 482 (1983) ............................... 27

*Clifford v. Regents of Univ. of California*, 584 Fed. Appx. 431 (9th Cir. 2014).................... 18

*Crandell v. New York College of Osteopathic Med.,* 87 F. Supp. 2d 304 (S.D.N.Y. 2000)........... 9

*Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629 (1999)...................................... passim

*Deines v. Vermeer Manuf. Co.*, 752 F.Supp. 989 (D. Kan. 1990) ................................. 27

*Dias v. City & County of Denver*, 567 F.3d 1169 (10th Cir. 2009)................................. 3

*Doe v. Claiborne Cty.*, 103 F.3d 495 (6th Cir. 1996) ............................................ 19

*Dunn v. USD 367*, 40 P.3d 315 (Kan. App., 2002)................................................. 28

*Escue v . N. Okla. College*, 450 F.3d 1146 (10th Cir. 2006) ..................................... 23

*Fitzgerald v. Barnstable Sch. Comm.*, 504 F.3d 165 (1st Cir. 2007)............................... 21

*G.G. v. Gloucester Cnty. Sch. Bd.,* No. 15-2056, 2016 U.S. App. LEXIS 7026 (4th Cir. 2016) . 19

*Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998) .................................... 20

*Gilmer v. Buena Vista Home Video, Inc.*, 939 F.Supp. 665 (W.D. Ark 1996)........................ 25

*Griffin v. Sec. Pac. Auto. Fin. Services Corp.*, 33 F.Supp.2d 926 (D. Kan. 1998).................. 26

*Jamieson v. Vatterott Educ. Ctr., Inc.*, 473 F. Supp. 2d 1153 (D. Kan. 2007) .................. 25, 26

*Jennings v. Univ. of N.C.*, 444 F.3d 255 (4th Cir. 2006) ....................................... 5

*L-3 Communications Corp. v. Jaxon Eng'g & Maint., Inc.*, 863 F.Supp.2d 1066 (D. Colo. 2012) ..................................................................................................... 26

*Mary M. v. North Lawrence Community Sch. Corp.,* 131 F.3d 1220 (7th Cir. 1997) .................. 1

*McCormick v. Sch. Dist. of Mamaroneck*, 370 F.3d 275 (2d Cir. 2004) ............................ 20

*McGinnis v. Muncie Cmty. Sch. Corp.*, No. 1:11-cv-1125-WTL-TAB, 2013 U.S. Dist. LEXIS 79548 (S.D. Ind. 2013) ........................................................................... 10

*Morse v. Regents of the Univ. of Colo.*, 154 F.3d 1124 (10th Cir. 1998) ....................... 3, 6

*Murrell v. School Dist. No. 1*, 186 F.3d 1238 (10th Cir. 1999)........................... 5, 6, 11, 23

*Nero v. Kansas State Univ.*, 861 P.2d 768 (1993) ............................................... 29

*North Haven Bd. of Educ. v. Bell*, 456 U.S. 512 (1982)............................................ 5

*Opatz v. Boise State Univ.*, No. CV-PI-2014-0004142 (Idaho Dist. Ct. 4th Dist. 2015)...... 7, 9, 10

*Ostrander v. Duggan*, 341 F.3d 745 (8th Cir. 2003) ............................................. 18

*Roe v. St. Louis Univ.*, 746 F.3d 874 (8th Cir. 2014)............................................ 17

*Rost v. Steamboat Springs RE-2 Sch. Dist.,* 511 F.3d 1114 (10th Cir. 2008)................... passim

*Schmech v. City of Shawnee*, 651 P.2d 585 (1982)................................................ 27

*Simpson v. Univ. of Colorado*, 500 F.3d 1170 (10th Cir. 2007).................................... 8

*Spencer v. Univ. of N.M. Bd. of Regents,* No. 1:15-CV-00141-MCA-SCY  (D.N.M. 2016) passim

*U.S. ex rel. Hafter v. Spectrum Emergency Care, Inc.*, 9 F. Supp. 2d 1273 (D. Kan. 1998)........ 26

*Vance v. Spencer County Pub. Sch. Dist.*, 231 F.3d 253 (6th Cir. 2000) ..................................... 21

*Yu v. Vassar Coll.*, 97 F. Supp. 3d 448 (S.D.N.Y. 2015)............................................................. 19

**Statutes**

§ 1681 ................................................................................................................................................ 8

K.S.A. § 75-6104 .......................................................................................................................... 31

K.S.A. § 75-6104(c) .............................................................................................................. 29, 30

K.S.A. § 75-6104(e) ...................................................................................................................... 30

Kansas Tort Claims Act, K.S.A.1992 Supp. 75–6104(e) ........................................................ 30

U.S.C. § 1681(a) ............................................................................................................................ 5

**Other Authorities**

U.S. Dep't of Educ., Office for Civil Rights, Dear Colleague Letter: Sexual Violence (Apr. 4,
2011) ........................................................................................................................................ 11

U.S. Dept. of Ed., Office for Civil Rights, Questions and Answers on Title IX and Sexual
Violence (Apr. 29, 2014) .......................................................................................... 8, 11, 19, 22

U.S. Dept. of Educ., Office for Civil Rights, *Sexual Harassment Guidance* (1997)..................... 8

U.S.C. § 1682 ................................................................................................................................ 20

**Rules**

Fed. R. Civ. P. 15(a)(2) .......................................................................................................... 26, 28

Fed. R. Civ. Proc. 9(b) ............................................................................................................ 26

**Treatises**

Restatement (Second) of Torts § 324A (1965) .................................................................... 29, 30

## I.     NATURE OF THE MATTER

The vital importance of a discrimination-free educational environment cannot be overstated.  As the Seventh Circuit Court of Appeals explains:

> [A] nondiscriminatory environment is essential to maximum intellectual growth and is therefore an integral part of the educational benefits that a student receives.  A sexually abusive environment inhibits, if not prevents, the harassed student from developing her full intellectual potential and receiving the most from the academic program.

*Mary M. v. North Lawrence Community Sch. Corp.,* 131 F.3d 1220, 1226 (7th Cir. 1997).

Contrary to law and its own stated policy, Kansas State University ("K-State") insists it has no responsibility to address sexual violence – a form of prohibited discrimination – committed by students against other students in the K-State fraternity system.  Despite outcry from the student body and student leaders, including the presidents of every K-State fraternity, the University steadfastly stands by its "off-campus, not our problem" position.  Not surprisingly, K-State now faces multiple lawsuits from female students and is under federal investigation by the United States Department of Education ("Department") for its failure to uphold Title IX.

When Tessa was raped at a K-State fraternity house, K-State refused to investigate, telling her explicitly that its policy does not cover fraternity houses.  K-State now moves to dismiss Tessa's claims against K-State, aghast that "it should be civilly liable for failing to . . . respond to this alleged third-party criminal act," ignoring explicit U.S. Supreme Court precedent establishing precisely that type of liability.  Title IX liability attaches when a school is deliberately indifferent to known sexual violence or harassment, as K-State was in its refusal to respond to Tessa's report of rape.

1

K-State further ignores U.S. Supreme Court and Tenth Circuit precedent, and Department guidance, that requires a school to take action in response to reports of sexual violence, *including* off-campus assaults and misconduct in fraternities, when the school has *substantial control* over the harasser and context in which known harassment occurs, such that there is a *nexus* between out-of-school conduct and the school.  There is no "bright line" test that distinguishes a school's duty with respect to on-campus as opposed to off-campus harassment.  Moreover, a school is liable under Title IX for its deliberate indifference to known sexual violence that either (i) causes a student to undergo harassment **or** (ii) makes her liable or *vulnerable to sexual harassment*.

Defendant does not dispute that Tessa has properly pled that K-State had *actual knowledge* of and was *deliberately indifferent* to *harassment that was so severe, pervasive and objectively offensive* that it deprived her of access to the educational benefits or opportunities provided by K-State, the elements of a Title IX claim.[1]  K-State only makes the meritless arguments that even if it acted with deliberate indifference to Tessa's report of horrific rape, it is not liable because of where the rape occurred; and that it did not cause her to suffer additional specific acts of harassment after the rape.  Both arguments fail.

K-State knew of two forms of harassment endured by Tessa that deprived her of educational benefits and opportunities:  (1) violent rape by a K-State student at a K-State fraternity house; and (2) the hostile educational environment resulting from the constant risk that Tessa would encounter the uninvestigated, unpunished, likely emboldened student-assailant on-campus.  ¶¶ 86-91.  Tessa more than sufficiently pled that K-State had substantial control over the context and harassers in both types of discrimination she faced.  K-State extensively

---

[1] As K-State does not dispute these elements in regards to Tessa's complaint of Title IX deliberate indifference to her report of rape, she does not address them.  Tessa *does not* bring a claim for *pre-assault* Title IX liability and, as such, the Court need not address K-State's arguments regarding actual knowledge or deliberate indifference, which they have only raised in that context.

regulates, monitors, disciplines, assists, supports, advises, and dedicates resources to its fraternity system, made up of exclusively K-State students, demonstrating substantial control over it, and per its authority, exhibited significant control over the fraternity house at which she was assaulted, including sanctioning the student-assailant for alcohol use, but not for raping her.  It is self-evident that K-State had sufficient control over the hostile environment Tessa suffered on campus.  Thus, K-State's Title IX duty was triggered by its knowledge of both of these forms of harassment.  In addition, Tessa sufficiently pled with specificity a claim under the Kansas Consumer Protection Act ("KCPA") and pled facts sufficient to state a negligence claim.

For the reasons set forth below, this Court should deny Defendant's motion in its entirety.

## II.    STANDARD OF REVIEW

Granting a motion to dismiss is a "harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & County of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).  The "Federal Rules of Civil Procedure erect a powerful presumption against rejecting pleadings for failure to state a claim." *Cayman Exploration Corp. v. United Gas Pipe Line Co*., 873 F.2d 1357, 1359 (10th Cir. 1989).  To survive a motion to dismiss, a plaintiff's complaint need only state a "claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663.  Pleadings need only give defendants notice of the nature of the claims against them. *See Morse v. Regents of the Univ. of Colo.*, 154 F.3d 1124, 1127 (10th Cir. 1998).  The court must assume as true all well-pleaded facts alleged and "draw all reasonable inferences therefrom in the light most favorable to the plaintiffs." *Dias*, 567 F.3d at 1178.

3

### III.    FACTS

During her spring 2015 semester at K-State, Tessa Farmer was raped by a fellow K-State student and fraternity member, C.M., a stranger to her, at a K-State recognized fraternity.  ¶13. C.M. hid in the closet of the fraternity house bedroom where Tessa was with a high school friend. ¶¶12-13.  The friend had instructed C.M. to hide in the closet.  ¶¶12-13.  The friend left the room, leaving Tessa alone. C.M. then raped Tessa while she was face down on a mattress, pulled her hair, and whispered in her ear while she screamed.  ¶13.

Tessa reported the rape to K-State.  K-State did not even mention Title IX or its sexual misconduct policy, let alone investigate.  ¶18.  Tessa was forced to languish on campus with her rapist, living in a state of constant fear of him.  ¶25.  Her life entered a downward spiral, she missed classes, struggled in school, became severely depressed, lost her sense of self-worth, removed herself from school activities to avoid him, and slit her wrist with a razor. ¶71

Five months later, Tessa learned, on her own, about rights she was owed under Title IX including that universities are required to investigate reports of sexual violence.  But when she tried to file a complaint, she was told K-State's sexual misconduct policy does not cover rape at fraternity houses.  ¶¶26-28.  She repeatedly expressed her ongoing fear and distress about encountering the student-assailant on campus, including the serious detriments to her education, but K-State still refused to investigate. ¶¶30-34.

### IV.    QUESTIONS PRESENTED

A.    Has Tessa sufficiently pled that K-State had "substantial control over both the harasser and the context in which the known harassment occurs," such that there was "some nexus between the out-of-school conduct and the school"?  *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 645 (1999); *Rost v. Steamboat Springs RE-2 Sch. Dist.,* 511 F.3d 1114, 1121 n.1 (10th Cir. 2008).

B.      Has Tessa sufficiently pled that K-State's deliberate indifference in response to her report of sexual violence caused her to undergo harassment *or* made her liable or vulnerable to it?

C.      Has Tessa pled, with specificity per Rule 9(b), sufficient facts stating a claim for violation of the Kansas Consumer Protection Act?

D.      Has Tessa pled facts establishing defendant's legal duty sufficient to state a claim for negligence and that defendant is not immune under the Kansas Tort Claims Act ("KTCA")?

## V.      ARGUMENT

### A.      Title IX Provides a Broad Prohibition on Sex Discrimination

Title IX's broad prohibition on sex-based discrimination provides that "[n]o person in the United States shall, on the basis of sex be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  U.S.C. § 1681(a); *see North Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 521 (1982) (Title IX should receive "a sweep as broad as its language").  In *Davis v. Monroe County Board of Education*, the U.S. Supreme Court held that Title IX liability can arise from student-on-student sexual harassment, a form of sex discrimination.  526 U.S. 629, 646 (1999).

A plaintiff stating a claim under Title IX based on sexual harassment must allege that the school "had actual knowledge of" and "was deliberately indifferent" to "harassment that was so severe, pervasive and objectively offensive" that it "deprived the victim of access to the educational benefits or opportunities provided by the school."  *Murrell v. School Dist. No. 1*, 186 F.3d 1238, 1245 (10th Cir. 1999).  One instance of rape is sufficient to trigger a school's Title IX liability.  *See Jennings v. Univ. of N.C.*, 444 F.3d 255, 268, 274 n.12 (4th Cir. 2006).

The U.S. Supreme Court and Tenth Circuit have long-held a school cannot turn a blind eye to complaints of discrimination.  *See Davis*, 526 U.S. at 641 (Title IX liability attaches where

school "remain[s] idle in the face of known student-on-student harassment"); *Murrell*, 186 F.3d

at 1245.  In *Bryant v. Independent School District No. I-38*, the Tenth Circuit stated:

> [W]hen administrators who have a duty to provide a nondiscriminatory
> educational environment for their charges are made aware of egregious forms of
> intentional discrimination and make the intentional choice to sit by and do nothing
> they can be held liable.

334 F.3d 928, 933 (10th Cir. 2003).  The Tenth Circuit specifically finds a school deliberately

indifferent when, as here, it refuses to investigate reports of student-on-student sexual assault.

*See Murrell*, 186 F.3d at 1248 (school's "complete refusal to investigate" sexual harassment

claims "amounts to deliberate indifference").  Similarly, a school may be deemed deliberately

indifferent when, as here, it fails to take "any remedial action" in response to harassment, fails to

"meaningfully and appropriately discipline the student-harasser," or when inaction means "the

harasser and other students are left to believe the harassing behavior has the 'tacit approval' of

the school."  *Morse*, 154 F.3d at 1128-29 (reversing dismissal of Title IX claim where university

failed to take "any remedial action" in response to harassment); *Spencer v. Univ. of N.M. Bd. of*

*Regents,* No. 1:15-CV-00141-MCA-SCY *22 (D.N.M. 2016).

> **B.     A School's Responsibilities Under Title IX Extend to Off-Campus Sexual**
> **Harassment When the School Has Substantial Control Over the Harasser**
> **and Context in Which Harassment Occurs, Such That There Is a Nexus**
> **Between Out-of-School Conduct and the School**

In *Davis v. Monroe*, the U.S. Supreme Court held a school has a duty to respond to sexual

harassment where the school has "*substantial control over both the harasser and the context in*

*which the known harassment occurs*." 526 U.S. at 645.  In so-holding, the Court recognized that

to establish Title IX liability, "harassment must occur 'under' the 'operations of' a funding

recipient," meaning "the harassment must take place in a context subject to the school district's

control.  *Id.* (citing. § 1681(a); § 1687).  The Court defined "under" as "in or into a condition of

subjection, regulation, or subordination," "subject to the guidance and instruction of," and "subject to the authority, direction, or supervision of." *Id.* (citing Webster's Third New International Dictionary of the English Language 2487 (1961) and Random House Dictionary of the English Language 1543 (1966)). The Court concluded that Title IX liability attaches where a school is "deliberately indifferent to known acts of student-on-student sexual harassment and the harasser is under the school's disciplinary authority." *Id.* at 646-47.

The Tenth Circuit, in examining off-campus sexual harassment under *Davis*, adopted a nexus requirement for Title IX liability: "there must be some *nexus* between the out-of-school conduct and the school." *Rost v. Steamboat Springs RE-2 Sch. Dist.,* 511 F.3d 1114, 1121 n.1, (10th Cir. 2008) (emphasis added). Notably, the Tenth Circuit explicitly *rejects* a bright line rule distinguishing a school's obligations with respect to on-campus sexual harassment as opposed to off-campus harassment, stating "We do not suggest that harassment occurring off school grounds cannot as a matter of law create liability under Title IX." *Id.* This is for good reason, as the court in *Opatz v. Boise State University*, recently explained:

> Drawing a bright line between on-campus and off-campus harassment as a basis for Title IX liability does not fulfill [Congressional] intent. Ultimately, it is the school's response to the harassment, and exacerbation of the harassment, which is placed at issue under Title IX.

No. CV-PI-2014-0004132, *35 (Idaho Dist. Ct. 4th Dist. 2015).

The Tenth Circuit's nexus requirement is reinforced and supported by Department guidance, which for nearly 20 years has recognized Title IX extends to off-campus harassment. The Department's 1997 Sexual Harassment Guidance provides:

> Title IX protects students in connection with all of the academic, educational, extra-curricular, athletic, and other programs of the school, whether they take place in the facilities of the school, on a school bus, at a class or training program sponsored by the school at another location, or elsewhere.

7

U.S. Dept. of Educ., Office for Civil Rights, *Sexual Harassment Guidance* (1997).[2]  The

Department's most recent "significant guidance document" recognizes activities that take place

at houses of fraternities are "clearly covered" as off-campus programs or activities of a school:

> A school must determine whether the alleged off-campus sexual violence
> occurred in the context of an education program or activity of the school; if so, the
> school must treat the complaint in the same manner that it treats complaints
> regarding on-campus conduct.  In other words, if a school determines that the
> alleged misconduct took place in the context of an education program or activity
> of the school, the fact that the alleged misconduct took place off campus does not
> relieve the school of its obligation to investigate the complaint as it would
> investigate a complaint of sexual violence that occurred on campus.
>
> Whether the alleged misconduct occurred in this context may not always be
> apparent from the complaint, so a school may need to gather additional
> information in order to make such a determination.  **Off-campus education
> programs and activities are clearly covered and include, but are not limited
> to: activities that take place at houses of fraternities or sororities recognized
> by the school. . .**

U.S. Dept. of Ed., Office for Civil Rights, Questions and Answers on Title IX and Sexual
Violence, at 29 (Apr. 29, 2014) [hereinafter "Q&A on Sexual Violence"] (emphasis added).[3]

Courts routinely impose Title IX liability and assess a school's deliberate indifference

with respect to off-campus sexual harassment.  For example, in *Simpson v. University of

Colorado*, the Tenth Circuit held that a reasonable jury could find the university liable under

Title IX for the rapes of plaintiffs at one of the victim's private *off-campus* apartment, which

resulted from maintaining policies regarding showing football recruits a "good time."  500 F.3d

1170, 1185 (10th Cir. 2007).  In doing so, the Tenth Circuit reversed the grant of defendant's

motion for summary judgment stating the "sanctioned, supported, even funded, program . . .

---

[2] *Available at* http://www2.ed.gov/about/offices/list/ocr/docs/sexhar01.html.
[3] *Available at* http://www2.ed.gov/about/offices/list/ocr/docs/qa-201404-title-ix.pdf.  Cited portion attached as
Exhibit A for this Court's convenience.  Relatedly, and also significant, Title IX's broad prohibition on
discrimination includes an exemption that it "shall not apply to membership practices," of "a social fraternity or
social sorority," the "active membership of which consists primarily of students in attendance at an institution of
higher education." U.S.C. § 1681 (6)(A).  The exemption for fraternities is only necessary because such fraternities
may be considered an "education program or activity" under the statute.

without proper control, would encourage young men to engage in opprobrious acts." *Id.*; *see also*

*Crandell v. New York College of Osteopathic Med.,* 87 F. Supp. 2d 304, 316 n.126 (S.D.N.Y.

2000) ("Courts frequently have upheld sexual harassment claims under Title IX where some or

all of the alleged misconduct occurred off campus," listing cases).   Title IX student-on-student

sexual assault in the college context is a rapidly developing field of law, and in several recent

lawsuits courts have refused to dismiss cases involving off-campus conduct.[4]   In one such case

against Florida State University ("FSU"), plaintiff Erica Kinsman alleged that "another FSU

student – the football player Jameis Winston – raped her at an *off-campus apartment* in

Tallahassee, Florida."  *Kinsman v. Fla. State Univ. Bd. of Trustees*, No. 4L15cv235-MW/CAS

(N.D. Fla. 2015) (emphasis added).  The court denied FSU's motion to dismiss Kinsman's Title

IX suit for failure to properly investigate or respond to the rape, despite the off-campus, private

location of the assault.  *Id.* at *15.  Similarly, in *Opatz*, the court denied the university's motion

for summary judgment on a Title IX claim when the victim was raped *off-campus at a student's

private home*.  No. CV-PI-2014-0004132, *36.

C.     **The Continued Presence of An Assailant on Campus Constitutes Prohibited
       Ongoing Sexual Harassment and Discrimination Under Title IX**

When a school fails to adequately respond to a report of rape, regardless of where it

occurred, the presence of the perpetrator on campus and constant risk of encounter with the

victim can constitute a hostile environment, triggering a school's Title IX duty to respond.  Such

an on-campus hostile educational environment is under a school's substantial control.  The U.S.

Supreme Court and the Tenth Circuit hold a school is liable under Title IX when its deliberate

---

[4]  For the Court's convenience and pursuant to Local Rule 7.6(c), Plaintiff attaches copies of these decisions to this
brief as Exhibit B:  *Kinsman v. Fla. State Univ. Bd. of Trustees*, No. 4L15cv235-MW/CAS (N.D. Fla. 2015), Exhibit
C:  2016 *Spencer v. Univ. of N.M. Bd. of Regents,* No. 1:15-CV-00141-MCA-SCY *22 (D.N.M. 2016), and Exhibit
D:  *Opatz v. Boise State Univ.*, No. CV-PI-2014-0004132 (Idaho Dist. Ct. 4th Dist. 2015).

indifference to known sexual violence "cause[s] students to undergo harassment **_or make[s] them_**

**_liable or vulnerable to it_**."  *Davis*, 526 U.S. at 644-45 (emphasis added); *Rost*, 511 F.3d at 1123.

In *Rost*, the Tenth Circuit specifically recognized that if the victim of a *pre-enrollment, off*

*school grounds* sexual harassment had sought to remain in the school district and was not

provided a safe educational environment, she "would likely have a Title IX claim."  511 F.3d at

1124.  Similarly, in *Spencer*, plaintiff was raped in a car, outside an off-campus party, by

multiple students.  No. 1:15-CV-00141-MCA-SCY at *16.  The District Court of New Mexico

denied the university's motion to dismiss, concluding:

> A jury may conclude that harassment is severe, pervasive, and objectively
> offensive from evidence that a student who is known to have perpetrated a sexual
> assault upon another student is permitted to continue attending the same school as
> the victim, leaving open the potential for interactions between the two.

*Id.* (citing *Doe ex rel. Doe v. Derby Bd. of Educ.*, 451 F.Supp.2d 438, 444 (D. Conn. 2006)).

Also, as the *Opatz* court recently explained, "Title IX seeks not only to eliminate sexual

harassment of students, but the *discriminatory aftermath that often flows from such harassment*

*at the hands of the school*." No. CV-PI-2014-0004132, *35 (emphasis added).

Similarly*, in *Kinsman*, the court denied FSU's motion to dismiss the plaintiff's Title IX

claim, *because she sufficiently pled the mere presence on campus of the student who raped her,*

Jameis Winston, *created a hostile environment*, even though the rape occurred at an off-campus

apartment. No. 4L15cv235-MW/CAS at *10.  The court explained "[i]t does not require mental

gymnastics to reach th[e] conclusion" that "the possibility of further encounters" between

plaintiff and a student-assailant could create a hostile educational environment on campus.  *Id.*

(citing *Kelly v. Yale Univ.*, No. 3:01-CV-1591, 2003 WL 1563424, at *3 (D. Conn. 2003)); *see*

*also McGinnis v. Muncie Cmty. Sch. Corp.*, No. 1:11-cv-1125-WTL-TAB, 2013 U.S. Dist.

LEXIS 79548, *37 (S.D. Ind. 2013) (stating the principle that "[t]he continued presence of a

rapist in the victim's workplace can render the workplace objectively hostile because the rapist's presence exacerbates and reinforces the severe fear and anxiety suffered by the victim," applies "if not more so, in a school.") (quoting *Lapka v. Chertoff,* 517 F.3d 974, 984 (7th Cir. 2008)).

The Department recognizes the same principle, stating:

> Schools may have an obligation to respond to student-on-student sexual harassment that initially occurred off school grounds, outside a school's education program or activity. . . . Because students often experience the continuing effects of off-campus sexual harassment in the educational setting, schools should consider the effects of the off-campus conduct when evaluating whether there is a hostile environment on campus.

U.S. Dept of Educ., Office for Civil Rights, Dear Colleague Letter: Sexual Violence at 3-4 (Apr. 4, 2011) [hereinafter "DCL"] (emphasis added).[5]  In recent guidance, the Department further explained:  "The mere presence on campus or in an off-campus education program or activity of the alleged perpetrator of off-campus sexual violence can have continuing effects that create a hostile environment."  Q&A on Sexual Violence at 29-30.

### D.     Tessa Sufficiently Pled Her Title IX Complaint and Defendant's Motion Should Be Denied

Tessa has pled each and every element of her Title IX Complaint, including actual knowledge, deliberate indifference, and harassment that was "so severe, pervasive and objectively offensive" that it deprived her "of access to the educational benefits or opportunities provided by the school."  *See Murrell*, 186 F.3d at 1245.  The complaint states K-State was deliberately indifferent to "known harassment" Tessa suffered in two primary forms:  (1) a violent rape by a K-State student at a K-State fraternity house; and (2) the hostile educational environment resulting from the constant risk that Tessa would encounter the uninvestigated, unpunished, likely emboldened student-assailant on-campus. ¶¶ 86-91.  K-State does not *and*

---

[5] *Available at* http://www2.ed.gov/about/ offices/list/ocr/letters/colleague-201104.pdf.  Cited portion attached as Exhibit E for the Court's convenience.

*cannot* contend otherwise.  Instead, K-State's two arguments are: (i) that Title IX supposedly does not apply here because Tessa suffered sexual violence at an off-campus fraternity house; and (ii) the school's deliberate indifference did not *cause* her to suffer additional acts of sexual harassment.   K-State's arguments fail, as detailed below.

> **1.   K-State Had A Duty to Respond to Tessa's Complaint Because the University Had Substantial Control Over the Assailant and Context In Which the Sexual Violence and Harassment Occurred, Such That A Nexus Existed Between K-State and the Off-Campus Violence and Harassment**

As set forth above, a school is obligated under Title IX to address off-campus sexual assault when it has "substantial control" over both the student-assailant and the context in which the assault occurred, such that there is a "nexus between the school and the out of school conduct."  *See Davis*, 526 U.S. at 646-47; *Rost,* 511 F.3d at 1121 n.1.  Tessa's Complaint sets forth overwhelming facts showing the required "control" and "nexus."

Tessa's Complaint specifically states she reported to K-State a violent rape by a K-State student at a K-State recognized fraternity house, which occurred during the 2015 school year. There is no question K-State had control and disciplinary authority over the assailant, a K-State student and member of a K-State recognized fraternity.  As pled in Tessa's Complaint, K-State's student conduct policy provided explicit *disciplinary authority* over the assailant.  ¶¶ 36-40.  K-State has inconsistently used its disciplinary authority over incidents of off-campus rape, including in the case of an assault by a basketball player.  ¶¶ 38, 40.  This inconsistent application of a policy reinforces that K-State had disciplinary authority and simply chose not to use it here.  ¶ 40.

It is clear K-State had substantial control over the context, namely a K-State recognized fraternity event and house within its fraternity system.  After Tessa reported her rape, she was informed that the K-State Intrafraternity Council ("IFC") could investigate the conduct of the

fraternity chapter, but K-State refused to investigate the rape, the student-assailant, or any other individuals involved. ¶¶ 17-28.

Tessa states the K-State fraternity system is a core component of the university's social, academic, and extracurricular life, and is inextricably intertwined with the university.  ¶¶ 51-57. K-State touts its Greek system as a century old "tradition" of K-State, and proudly lays claim, referring to "[o]ur Greek community" and covering every inch of its Greek Life website with K-State's stamp of approval.  *Id.*  K-State heavily promotes and endorses its fraternity system, advertising that the "Greek experience at K-State provides a safe and fun way to maximize the college experience" and has been in existence since 1913.  *Id.*  More than one in five students participate in K-State's Greek system.  ¶ 53.  K-State describes its fraternities as "Kansas State University Organizations."  ¶ 53.  Only K-State students can be members of and live in K-State fraternity houses. ¶ 35.  Considering the size, significance, and integral relationship with K-State, K-State unsurprisingly takes an active role in supporting and regulating the Greek system.  It has "authority and ability to regulate fraternity houses," including making premises safe.  ¶ 57.  K-State has "rules for regulating parties" and other fraternity activities, including through a K-State registration form.  ¶ 57.  K-State's own police officers routinely patrol K-State fraternities.  ¶ 60. The fraternity house director is a K-State instructor.  ¶ 35.  Further, "K-State allows fraternities to reap significant financial benefit by endorsing them with University recognition."  ¶ 63.  K-State provides substantial support and oversight services to its recognized fraternities through its Greek Affairs office, including administrative assistance, advisory responsibilities, education and development, regular meetings with chapters, and chapter assessments.  ¶¶ 51-53.  The K-State Greek Affairs office is located on K-State's campus and is composed of five K-State employees,

and it can be reasonably inferred that K-State pays their salaries. ¶ 53.  K-State hosts the

extensive Greek Affairs website as part of its larger K-State.edu website.[6]  ¶ 53.

      In addition to the numerous factors showing K-State's significant control, regulation,

supervision, authority over, and support of its fraternity system, K-State exhibited substantial

control over the exact fraternity activities where Tessa was raped.  The IFC investigated the

chapter, and Tessa learned that her student-assailant, though not investigated or sanctioned for

raping her, *was* sanctioned for alcohol use. ¶ 23.

### 2. Tessa Has Pled Facts Sufficient to Show that K-State Was Obligated to Respond to the Hostile Educational Environment She Suffered at K-State

      As set forth above, a school is legally obligated under Title IX to respond to a hostile

educational environment.  Here, Tessa sufficiently pled such a hostile educational environment

triggering K-State's duty to respond under Title IX.  Tessa was raped by a K-State student, a

stranger to Tessa, and K-State refused to investigate.  This raised grave safety and security

concerns for Tessa, as the man shared the campus where she was trying to get her education, and

she faced a daily risk of running into him. ¶¶ 23-34, 41-42.  She was left in a state of

hypervigilance, fear, and dread – all made worse fearing that every passing man could be the

unpunished, perhaps emboldened, rapist.  ¶ 42.  Tessa's life entered a downward spiral. ¶ 71.

She missed classes and struggled in school. *Id.*  She became severely depressed and lost her

sense of self-worth. *Id.*  Like many traumatized women, she engaged in self-destructive behavior

including self-medicating with excessive amounts of alcohol. *Id.*  Tessa secluded herself from

friends and withdrew from K-State activities in which she had previously taken campus

leadership roles, like Relay for Life, a group which organizes student events to fundraise for the

---

[6] www.k-state.edu/fsl. ¶53

American Cancer Society. She also decreased her participation in her sorority, refusing to participate in homecoming out of the risk of seeing the assailant. *Id.* She began sleeping very long hours to avoid the feelings she had when she was awake. *Id.* In the months following the rape, Tessa hit rock bottom and slit her wrist with a razor. *Id.* The constant risk of encounter and lack of access to educational opportunities amounted to an "intimidating, hostile, or offensive educational environment" which interfered with her academic performance, participation, and opportunities. ¶ 29.

It "does not require mental gymnastics" to conclude that the constant risk Tessa faced of encountering the assailant on campus created a hostile environment. *Kinsman*, No. 4L15cv235-MW/CAS at *10. Based on the facts alleged, Tessa has demonstrated that K-State acted with deliberate indifference when it ignored that hostile environment, in violation of her rights under Title IX. Accordingly, the court should deny K-State's motion to dismiss.

> **3. K-State's Argument That It Is Absolved of Title IX Duties or Liability For Failing to Respond to the Rape and Hostile Educational Environment Tessa Suffered Is Unavailing and Should Be Rejected**

K-State's arguments fail because they ignore and misrepresent precedent, rely on easily distinguishable and inapplicable case law, and in some instances, are plain wrong. More specifically, K-State's motion to dismiss fails for the following reasons:

<u>First</u>, K-State completely ignores the "nexus" standard set forth by the Tenth Circuit in *Rost*. In its lengthy discussion claiming no liability for rape at its off-campus fraternity, it fails to acknowledge that *Rost* provides that such Title IX liability can attach where there is "some *nexus* between the out-of-school conduct and the school." 511 F.3d 1114, 1121. K-State conveniently ignores that the Tenth Circuit rejected the bright-line rule it wants this Court to adopt. *Rost* explicitly states: "We do not suggest that harassment occurring off school grounds cannot as a

matter of law create liability under Title IX." *Id.* (citing *Davis*, 526 U.S. at 645).

Second, K-State has not provided any precedent or persuasive support for its contention that a school is immune from Title IX liability when its student is sexually assaulted off-campus, and the cases it cites certainly do not foreclose Tessa's Title IX claim.

To illustrate, K-State relies on two K-12 cases, *Rost* and *C.R.K. v. U.S.D.*, 176 F. Supp. 2d 1145 (D. Kan. 2001), in which the harassment occurred *before* the school year began, off-school grounds, and in no relation to anything akin to K-State's Greek system.  Notably, both cases were decided on summary judgment.  K-State asks this Court to take the disposition of a factual question in a particular case and apply it as a matter of law to dismiss portions of Tessa's claims.  Neither case compels this Court to dismiss Tessa's claim.

In *C.R.K.*, the court granted summary judgment for the school where the assault occurred over the summer, when school was not in session, off school grounds, and at a location without any connection to the school.  176 F. Supp. 2d at 1164.  Further, plaintiff did not ask school to investigate.  *Id.*  Where it may be appropriate to determine that a middle school does not have the requisite control over its students' summer vacations away from school, without any nexus to the school, the logic does not translate to this case.  A rape that occurs at a university-recognized fraternity, following a fraternity event, between students, when school is in session and where the university exercised significant authority over the event (i.e. sanctioning assailant for alcohol but not for rape), fulfills the types of factors lacking in *C.R.K.*

Moreover, in *Rost*, the court's conclusion *supports* Tessa's Title IX claim, and the facts relied on by the court to grant the school summary judgment are distinguishable from Tessa's case.  In *Rost*, the middle school principal allowed the school resource officer ("SRO") to "take the lead" on investigating sexual assault that occurred off school grounds and prior to

enrollment. 511 F.3d at 1121.  The Principal had approximately 50 conversations with the SRO, and continuously assisted throughout the investigation.  *Id.*  The victim "refused to communicate" relevant information to the SRO or principal, preventing further investigation.  *Id.* at 1123.  The court determined that under those circumstances it was not deliberately indifferent for the principal to allow the SRO to take the lead on the investigation while continually staying in contact with and assisting the SRO, based on his belief that a pre-enrollment assault in a location with no relationship to the school was not under his control.  *Id.* at 1121-23.  In contrast, Tessa was raped during the school year, at a K-State recognized fraternity house following an event, and where the school in *Rost* took active steps to ensure an investigation occurred and relied on the investigation results, K-State washed its hands of Tessa's report of rape entirely.

Importantly, the court concluded that had the plaintiff "expressed interest in returning to the school and school officials had not provided a safe educational environment, then she *would* likely have a Title IX claim."  *Id.* (emphasis added).  Thus, *Rost* fully acknowledged that even where harassment took place completely outside of the school's control and prior to enrollment, the school could still be liable to a resulting hostile environment at school.  *Id.* at 1124.  Tessa begged to safely stay at K-State, but K-State refused to investigate the assault, leaving her without a safe educational environment, precisely what the *Rost* court viewed as a likely Title IX claim.

Contrary to K-State's suggestion, *Roe v. St. Louis University* (SLU) did not create a bright line rule and, moreover, it is factually distinguishable from the present case.  746 F.3d 874 (8th Cir. 2014).  In *Roe*, plaintiff was assaulted in the stairwell of a private apartment building, not an SLU recognized fraternity house.  *Id.* at 878.  Roe "never told anyone who had assaulted her until after she left the University" and declined to file a report which would have allowed

SLU to investigate. *Id.* at 879.  The court affirmed summary judgment on the plaintiff's Title IX claim, concluding SLU was not deliberately indifferent to Roe's rape, and under the facts of the case, did not have sufficient control over the party hosted at an apartment building.  *Id.* at 880. The court did not make the *location* of the assault a threshold liability question, as K-State asks the court to do here.  Those facts stand in stark contrast to the facts here, including that Tessa was assaulted at a *K-State recognized* fraternity house and immediately reported the rape, begging K-State to investigate and take action.  K-State not only *had control* over the context and harasser, but through the IFC, *exercised control over the fraternity chapter where Tessa was raped* based on her report, and *over the assailant* for alcohol use.

K-State also misrepresents *Ostrander v. Duggan*, in which the plaintiff was raped by a fraternity member at a private house.  341 F.3d 745 (8th Cir. 2003).  K-State incorrectly claims the court's grant of summary judgment on the Title IX claim was "because" the *university* did not own the house.  Def. Br. at 8.  K-State fails to mention that the court, in making its finding, relied on the fact that neither the school *nor the fraternity* owned the premise.  341 F.3d at 750-751.  Significantly, the court went on to explain that "[e]ven if [plaintiff] presented sufficient evidence of DTD's [the fraternity's] ownership, possession, or control" over where plaintiff was assaulted, she failed to establish deliberate indifference and actual notice.  *Id.*  Here, Tessa was raped by a K-State student at the K-State fraternity house, and has sufficiently pled all of the elements of a Title IX claim.

Also, defendant cites *Clifford v. Regents of University of California* but fails to mention the Ninth Circuit affirmed dismissal on *statute of limitations grounds*, did not address or affirm the merits of the Title IX claim, and did not determine the location of the assault was fatal to that plaintiff's complaint.  584 Fed. Appx. 431 (9th Cir. 2014).

Tessa sufficiently pled substantial control and nexus under *Davis* and *Rost* as set forth above in detail.  *See* Q&A on Sexual Violence at 29 ("activities that take place at houses of fraternities or sororities recognized by the school" are "[o]ff-campus education programs and activities [that] are clearly covered" by Title IX); s*ee also Babler v. Arizona Board of Regents*, No. 2:10-cv-01459-RRB at *9 (D. AZ. 2011)[7] (denying university's motion to dismiss plaintiff's Title IX claim recognizing that "subject to the terms of the fraternity's agreements with and recognition by the ASU," ASU had control over fraternity on-campus and its members, where plaintiff was raped).

<u>Third</u>, K-State's claim that the Department's recent guidance is "owed no deference whatsoever,"[8] presumably because its dislikes what the guidance tells it to do, is belied both by the Supreme Court's recognition of the broad language of Title IX as well as regular reliance by courts on the Department's guidance when assessing Title IX actions.  *See Bell*, 456 U.S. at 521 ("There is no doubt that if we are to give [Title IX] the scope that its origins dictate, we must accord it a sweep as broad as its language."); *see also G.G. v. Gloucester Cnty. Sch. Bd.,* No. 15-2056, 2016 U.S. App. LEXIS 7026 at *26-28 (4th Cir. 2016) (relying on 2015 Office of Civil Rights ("OCR") opinion letter); *Doe v. Claiborne Cty*., 103 F.3d 495 (6th Cir. 1996) (relying on OCR pamphlet using question-and-answer format); *Yu v. Vassar Coll.*, 97 F. Supp. 3d 448 (S.D.N.Y. 2015) (relying on Department's 2011 DCL).  By statute, the Department is "authorized and directed to effectuate the provisions" of Title IX "by issuing rules, regulations, or orders of general applicability which shall be consistent with achievement of the objectives of the statute."  U.S.C. § 1682.  Per its authority and notwithstanding certain distinctions between

---

[7]  For the Court's convenience and pursuant to Local Rule 7.6(c), Plaintiff attaches copies of these decision to this brief as Exhibit G.
[8]  Def's Br. at 12.

standards applicable to private litigation for monetary damages and administrative proceedings under Title IX, *see*, *e.g.*, *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998), the Department's guidance should be accorded considerable deference.  *Cf. McCormick v. Sch. Dist. of Mamaroneck*, 370 F.3d 275, 288 (2d Cir. 2004).

Moreover, the Department's recent Title IX guidance related to off-campus sexual assault is squarely in accordance with, not contrary to, the statue, regulations, and other guidance. Likewise, the Department's recent guidance follows from the Supreme Court's requirement that a plaintiff show substantial control over both the harasser and context of the harassment, *Davis*, 526 U.S. at 645, and mirrors the Tenth Circuit's requirement of "some nexus between the out-of-school conduct and the school."  *Rost*, 511 F.3d at 1121 n.1.  Even in the event the Court does not give the guidance any deference, Tessa has more than plausibly stated a claim under *Davis* and *Rost*'s applicable Title IX standards.

Finally, even if the court concludes that Tessa did not sufficiently plead a nexus between the school and the assault such that K-State had substantial control over harassers and context of the rape she suffered at a K-State fraternity, it should not dismiss her claim, as K-State most certainly had control over and an obligation to respond to the hostile environment which the assault created on campus, as discussed below.

### 4.   K-State's Argument That It Had No Title IX Duty to Respond to the On-Campus Hostile Environment Tessa Suffered Due to a Non-Existent Strict Further Harassment Requirement Is Wrong

K-State argues that even if it did act with deliberate indifference to her report of rape, Tessa does not have a Title IX claim because it did not cause her to suffer additional specific acts of harassment after the rape. Def. Br. at 16-18. This argument both misstates the law and fails on the facts.  As set forth above, Title IX liability attaches where a school's deliberate indifference

"subjects its students to harassment.  That is, the deliberate indifference must, at minimum, cause students to undergo harassment *or make them liable or vulnerable to it*."  *Rost*, 511 F.3d at 1123 (emphasis added); *Davis*, 526 U.S. at 645 (defining to "subject" a student to harassment as "to cause to undergo" *or* "to make liable or vulnerable; lay open; expose").  K-State, however, egregiously ignores the second way to satisfy this requirement (that which follows "*or*"), claiming that *Rost* creates a strict requirement and without additional acts of harassment, K-State cannot be held liable.  Def.'s Br. at 6.

Tessa need not show she was assaulted or harassed again – the "strict" causation requirement K-State misleadingly claims.  Rather, she only need show that K-State's response to her rape made her "liable or vulnerable to" further harassment.  *Rost,* 511 F.3d at 1123.  As the First Circuit explained, the *Davis* court "stated that funding recipients may run afoul of Title IX not merely by 'caus[ing]' students to undergo harassment but also by 'mak[ing] them liable or vulnerable' to it."  *Fitzgerald v. Barnstable Sch. Comm.*, 504 F.3d 165, 172 (1st Cir. 2007) (internal citation omitted).  Indeed, courts recognize that a single sexual assault may constitute sufficiently severe sexual harassment for Title IX liability.  *See, e.g.*, *Vance v. Spencer County Pub. Sch. Dist.*, 231 F.3d 253, 259 (6th Cir. 2000); *Fitzgerald*, 504 F.3d at 172.  The District Court of New Mexico, looking at an off-campus sexual assault reaffirmed this point, stating "[a] single act of severe sexual harassment—particularly a rape," can "support a Title IX claim where the claim is premised upon the school's response to the report of the incident of sexual harassment."  *Spencer*, No. 1:15-CV-00141-MCA-SCY at *16 ("In the context of Title IX, 'there is no 'one free rape' rule;'" in other words "a victim does not have to be raped twice before the school is required to respond appropriately."  *Id.* (citing *S.S. v. Alexander*, 177 P.3d 724, 741 (Wash. Ct. App. 2008)).

Moreover, a school's failure to adequately respond to a report of rape can make a victim vulnerable to further harassment due to the hostile environment created by the continued presence of a harasser on campus.  *See, e.g.*, *Id.* at *16; *Kinsman*, No. 4L15cv235-MW/CAS at *10; Q&A on Sexual Violence at 29-30.  As discussed extensively above, "[a] jury may conclude that harassment is severe, pervasive, and objectively offensive from evidence that a student who is known to have perpetrated a sexual assault upon another student is permitted to continue attending the same school as the victim, leaving open the potential for interactions between the two."  *Spencer*, No. 1:15-CV-00141-MCA-SCY at *16.

K-State misconstrues *Rost* to claim the Tenth Circuit imposed a "strict requirement that an institution's deliberate indifference must cause 'further sexual harassment.'"  Def.'s Br. at 6. *Rost* did no such thing.  *Rost* simply acknowledged that sister circuits *rejected* a strict causation analysis, citing the Eleventh Circuit *Williams v. University of Georgia*, 477 F.3d 1282, 1297 (11th Cir. 2007), and First Circuit *Fitzgerald v. Barnstable*, 504 F.3d 165 (1st Cir. 2007).

Far from adopting a strict requirement, *Rost* merely distinguished the facts before the court from those in *Williams* and analogized to *Fitzgerald*.  511 F.3d at 1123 (reasoning that unlike in *Williams*, the defendant "took steps to prevent further harassment" by working to find safe educational alternatives for the victim, and that defendant acted similarly to the school in *Fitzgerald*, "which promptly commenced an extensive investigation" into a sexual harassment report).  The *Rost* court ultimately concluded that, based on the factual circumstances of the case—namely the victim's rejection of the school's proposed alternatives and over-the-top demands that she must instead be accommodated at an out-of-state boarding school—the school district had not caused or made the victim vulnerable to further harassment.  *Id.* at 1124.

Importantly, *Rost* recognized that if the plaintiff "had expressed interest in returning to the school and school officials had not provided a safe educational environment, then she would likely have a Title IX claim." *Id.* In other words, the pre-enrollment, off-school grounds student-on-student assault would have supported a Title IX claim based on a hostile educational environment. This is precisely what Tessa alleged. Tessa desperately wished to remain safely at K-State, but for five months after she first reported, they did nothing. ¶¶ 17-28. When, on her own, she learned of Title IX and begged for an investigation to address her safety concerns at school, K-State refused. ¶¶ 26-35. *See Murrell*, 186 F.3d at 1247 (Title IX liability attaches where school principal "refused to investigate" allegation of harassment).

Defendant's reliance on *Escue v. North Oklahoma College* for the strict causation principle also is flawed. Def. Br. at 17. In *Escue,* the victim reported that a professor touched her inappropriately and made sexual comments. 450 F.3d 1146, 1149 (10th Cir. 2006). In response, the university immediately investigated, removed plaintiff from the harassing environment, did not allow the professor to teach a summer course, and terminated its relationship with the professor. *Id.* at 1150. The court concluded that plaintiff failed to show that the school's deliberate indifference led to further harassment. *Id.* at 1156. In contrast, K-State did nothing in response to Tessa's report of a horrific rape by a K-State student. ¶¶ 17-35. *See Spencer*, No. 1:15-CV-00141-MCA-SCY at *17 (rejecting university's argument that it had not caused victim to be subject to further harassment after she was raped, where plaintiff pled being at school with the assailant was psychologically, and emotionally damaging, left her fearful for her safety at school, and the school's inadequate response "left Plaintiff exposed or vulnerable to a recurrence of harassment by [the assailants] who may have been led to believe that such behavior was 'tacitly' permitted.").

Tessa sufficiently pled that K-State's deliberate indifference made her "liable or vulnerable" to harassment, including that because K-State refused to investigate her report of rape, she was left facing the constant risk of encountering the student who raped her on campus. As no Tenth Circuit imposed strict causation requirement exists, the Court should deny defendant's motion to dismiss.

E.   **K-State's Argument Regarding Pre-Assault Title IX Liability Need Not Be Addressed, Tessa Does Not Allege Title IX Liability Against K-State for its Indifference to Prior Assaults**

As K-State's Motion to Dismiss acknowledges, a university may be found liable under Title IX where a victim shows (1) deliberate indifference in responding to prior reports of sexual assault (sometimes referenced to as "pre-assault claims"), or (2) deliberate indifference in response to a victim's report of sexual assault.[9]  The gravamen of Tessa's Title IX complaint is based on K-State's deliberate indifference in response to her report of sexual violence and the ongoing hostile environment she has suffered at K-State as a result.  While at this point Tessa does not bring a Title IX claim based on K-State's deliberate indifference to prior sexual misconduct alone, she reserves the right to further amend the Complaint if during the course of discovery such a claim is identified.[10]

---

[9] A second theory of Title IX pre-assault liability based on a school's policy may exist for Tessa though is not alleged at this point.  The landmark Tenth Circuit decision, *Simpson v. University of Colorado Boulder*, held that Title IX liability could attach to a university for the rape of students by university football players and recruits where the rape resulted from an official university policy, that policy being to show football recruits a "good time".  500 F.3d 1170 (10th Cir. 2007).  K-State's public position, on one hand, is that Greek life is safe, fun, encouraged, and essential to the K-State experience, yet on the other hand K-State maintains a policy refusing to address rapes at its fraternities, giving fraternity rapists a free pass and endangering female students, especially those like Tessa who belong to sororities and frequent fraternities.  K-State's policy not to investigate rapes at fraternities may be shown through discovery, like in *Simpson,* to support a Title IX claim.  Should discovery indicate a *Simpson*-type claim is appropriate, Tessa reserves the right to amend her Complaint.

[10] It is well documented that there were numerous incidents of rape at K-State fraternities, a known heightened risk of rape at fraternities, and an increased risk of sexual assault for sorority women like Tessa.  K-State's position that it will not investigate or discipline rape at K-State fraternities very well could establish an additional deliberate indifference Title IX claim potentially available to Tessa.

As Tessa's Title IX action is not a pre-assault claim, K-State's second argument is moot and pages 12-17 of its Brief in Support of Motion to Dismiss are superfluous. Tessa therefore does not respond to, nor should the court address K-State's "actual knowledge" and "deliberate indifference" arguments, which defendant argues only in application to any pre-assault claim. Def. Br. 12, 16. Tessa does note that K-State misrepresents the standard for pre-assault liability and misconstrues the facts pled by Tessa in its discussion of them.

F.  <strong>Tessa Provided Appropriate Claims for Violation of the KCPA</strong>

K-State seeks dismissal of the KCPA claim largely based on requirements set forth in *Jamieson v. Vatterott Educ. Ctr., Inc.*, 473 F. Supp. 2d 1153 (D. Kan. 2007). Contrary to K-State's claim, Tessa provides sufficient particularity of the fraudulent misrepresentations. As such, defendant's motion should be denied. Should the Court determine, however, that additional facts need to be pleaded, plaintiff respectfully requests leave to amend be granted pursuant to Fed. R. Civ. P. 15(a)(2), which provides that the court should freely give leave when justice so requires.

Federal Rule of Civil Procedure 9(b) does not require a plaintiff to be omniscient, rather its purpose is to provide notice to a defendant of plaintiff's claim so that the defendant can prepare an informed responsive pleading. *Bac Home Loan Servicing LP v. Fall Oaks Farm, LLC*, 848 F. Supp.2d 818, 827 (S.D. Ohio 2012); *Gilmer v. Buena Vista Home Video, Inc.*, 939 F.Supp. 665, 672 (W.D. Ark 1996) ("The test of pleading under Rule 9(b) is whether the pleading gives fair notice of the claims asserted and the basic transactions upon which the claims are based.") (internal citation omitted).

Tessa identifies the subject of the misrepresentation: defendant's representations that the Greek environment was safe. ¶¶ 51-56, 79. She identifies specific misrepresentations about the

subject: publications stating that Greek life was safe.  ¶¶ 51-53, 57, 79.  Tessa also states that the false representations continued even after she became a K-State student: she identifies who made the statements, what they said, the locations, and the approximate dates thereof.  ¶¶ 17-22. Because Tessa is not in possession of the identity of every party who made the false written representations, she is unable to so pinpoint.

Moreover, K-State controls its websites and printed materials. This court has recognized that the specificity requirements regarding responsibility for defendant's publications are relaxed and can be determined through discovery. *See U.S. ex rel. Hafter v. Spectrum Emergency Care, Inc.*, 9 F. Supp. 2d 1273, 1277 (D. Kan. 1998), *aff'd sub nom. U.S. ex rel. Hafter D.O.v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156 (10th Cir. 1999).  Tessa pled her claim with sufficient particularity, and despite lack of specific dates of pre-rape misrepresentations, the case can proceed and the dates could be determined during discovery. *See L-3 Communications Corp. v. Jaxon Eng'g & Maint., Inc.*, 863 F.Supp.2d 1066, 1088 (D. Colo. 2012).

This case is distinguishable from *Jamieson*, in which plaintiff identified the subject of the misrepresentation but failed to specifically identify the false representations. 473 F.Supp. 2d. at 1157. Unlike *Jamieson*, Tessa identifies both the subject of and the specific misrepresentation. Tessa complied with the spirit of Rule 9(b) and provided defendant with sufficient notice of the claim. *See Bac Home Loan*, 848 F. Supp.2d at 827; *Gilmer*, 939 F.Supp. at 672.

In *Griffin v. Sec. Pac. Auto. Fin. Services Corp.*, the court held that the plaintiff's allegations that he suffered actual damages as a result of defendant's KCPA violations were sufficient to show that he was "aggrieved" as required by K.S.A. § 50-634. 33 F.Supp.2d 926, 931 (D. Kan. 1998).  Similarly, Tessa properly alleged that she was aggrieved as a direct result of defendant's unconscionable and/or deceptive acts and practices. ¶¶ 71-72, 91-92, 25.

Defendant misrepresented the safety of the K-State Greek system. Tessa believed defendant's misrepresentations until she went to a Greek event and fraternity house and was raped.  As a result of her reliance on the false representations of the safety of the Greek environment, Tessa sufficiently pled numerous facts establishing she was aggrieved.[11]

Should this court deem the facts alleged to be insufficient, plaintiff respectfully requests leave to amend her complaint pursuant to Fed. R. Civ. P. 15(a)(2), which allows the court to freely give leave when justice so requires. *See Burton v. R.J. Reynolds Tobacco Co.*, 884 F.Supp. 1515, 1524 (D. Kansas 1995) ("Because this court does not wish to deny the plaintiff his day in court … the plaintiff has leave to amend his complaint on the KCPA claim to allege the violations with particularity.").

### G.   **Tessa Sufficiently States Her Claim For Negligence**

Tessa sufficiently pled facts showing K-State controlled its fraternity system, thereby assuming a legal duty.  Kansas law recognizes liability for undertaking a duty, as defined by the Restatement (Second) of Torts § 324A (1965).  *Schmech v. City of Shawnee*, 651 P.2d 585, 596 (1982).  Section 324A requires defendant *undertook,* gratuitously or for consideration, to render services to another. *Deines v. Vermeer Manuf. Co.*, 752 F.Supp. 989, 994 (D. Kan. 1990) (insurer offering inspection services constituted an "undertaking," thus creating a duty).  When one acts where no duty previously exists and another reasonably relies upon that act, the actor assumes a duty of reasonable care. *Circle Land & Cattle Corp. v. Amoco Oil Co.*, 232 Kan. 482, 489 (1983) (defendant who voluntarily provided oil analyses assumed a duty); *Burgess v. Perdue, II, MD*, 239 Kan. 473, 481 (1986) (seeking consent where none was required creates a duty).

---

[11] Tessa was forced to languish on campus with her rapist, living in a state of constant fear of him.  ¶25.  Her life entered a downward spiral, she missed classes, struggled in school, became severely depressed, lost her sense of self-worth, removed herself from school activities to avoid him, and slit her wrist with a razor. ¶¶71-72, 25.

K-State regulates, monitors, disciplines, assists, supports, advises, dedicates resources to, and exerts control over its fraternity system and members, all of whom are K-State students. ¶¶ 51-54, 57, 65.  K-State advertises and promotes its fraternity system as an integral part of its community experience. ¶¶ 51-53.  By undertaking these functions, K-State voluntarily assumed a duty to act with reasonable care.   Tessa sufficiently states facts alleging the remaining three elements of her negligence claim. ¶¶93-98.  K-State had exclusive, firsthand knowledge of the dangers of its fraternities, yet advertises them as "safe and fun." ¶¶ 2, 44-52, 57-59.  K-State vouched for the quality and safety of its fraternities, thereby assuming a duty to do so with reasonable care, which it failed to do by negligently omitting any information about the true dangers of its Greek system.  Thus, Tessa states sufficient facts establishing that K-State voluntarily assumed a duty to regulate its fraternities, which it subsequently breached.

Defendant K-State seeks dismissal of this action pursuant to K.S.A. § 75-6104(c) & (e), the "enforcement of a law" and "discretionary function" immunities of the KTCA, respectively. Because an independent duty exists, both defenses must fail.

K.S.A. § 75-6104(c) provides governmental actors immunity for the enforcement or failure to enforce a law.  Kansas Courts have long held this immunity inapplicable where a duty exists independent of the entity's obligation to uphold the law.  *See Cansler v. State*, 675 P.2d 57 (1984) (enforcement of a law exception does not provide immunity when claim for breach of duty arises under contract or long term course of conduct); *Dunn v. USD 367,* 40 P.3d 315 (Kan. App., 2002) (holding enforcement of law immunity does not apply when plaintiff alleges and proves torts independent of the exception.  Indeed, Kansas Courts have previously held specifically that this immunity *does not* apply when a state actor has undertaken a duty under Restatement (Second) of Torts § 324A—the precise situations presented in this case. *Cessna*

*Aircraft Co. v. Metro. Topeka Airport Auth.*, 940 P.2d 84 (1997) (holding that city had undertaken duty under Restatement 324A and duty existed outside of the municipal fire code).

The discretionary function exception of K.S.A. § 75-6104(e) is inapplicable for the same reason.  The Kansas Supreme Court held that "[t]he discretionary function exception to the KTCA, K.S.A.1992 Supp. 75–6104(e), is not applicable in those situations in which a legal duty exists, either by case law or by statute, that the governmental agency is required to follow. The governmental agency properly cannot claim that its challenged action falls within the discretionary function exception if the action taken has violated a legal duty." *Nero v. Kansas State Univ.,* 861 P.2d 768 (1993).

K-State purposefully conflates plaintiff's Title IX claims with the state based negligence claims in an effort to apply immunity.  Plaintiff's negligence claims are *not* based, however, solely on K-State's Title IX failures.  Rather, plaintiff's claims are based upon Defendant K-State's negligent performance of a duty it assumed under Restatement (Second) of Torts § 324A.  Since this independent duty exists, K.S.A. § 75-6104 immunities are inapplicable and K-State's request should be denied.

## VI.    CONCLUSION

For the foregoing reasons, Tessa's Complaint properly states claims for relief and defendant's motions should be denied.

Respectfully submitted,


By:   /s/ *Dustin L. Van Dyk*                    .
Dustin L. Van Dyk     KS. S. Ct. #23313
Gary D. White Jr.     KS. S. Ct. #15637
Meaghan M. Girard    KS. S. Ct. #22085
2348 SW Topeka Blvd.
Topeka, KS  66111
Phone:  (785) 233-1836
Fax:     (785) 233-3703
**COUNSEL FOR PLAINTIFF**

**THE FIERBERG NATIONAL LAW
GROUP, PLLC**

By:   /s/ *Cari Simon*                        .
Cari Simon              CA. S. Ct. #284148
Douglas E. Fierberg    DC. S. Ct. #418632
P.O. Box 121
105 East Philip Street
Lake Leelanau, MI  49653
Phone:  (231) 256-7068
Fax:     (231) 256-7069
**COUNSEL FOR PLAINTIFF**
*PRO HAC VICE*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on July 1, 2016, I filed the foregoing document via the Court's ECF system, which will cause a true and correct copy of the same to be served electronically on all ECF-registered counsel of record.

/s/ *Dustin Van Dyk*                     .
**COUNSEL FOR PLAINTIFF**