## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| TESSA FARMER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Case No. 2:16-cv-02256-JAR-GEB |
| | ) |
| KANSAS STATE UNIVERSITY, | ) |
| an agency of the State of Kansas, | ) |
| | ) |
| Defendant. | ) |

## REPLY BRIEF IN SUPPORT OF DEFENDANT'S
## MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Date:   July 25, 2016

**HUSCH BLACKWELL LLP**

/s/ Derek T. Teeter
ALLAN V. HALLQUIST    D. KAN. NO. 78356
HAYLEY E. HANSON     KS BAR NO. 20087
DEREK T. TEETER       KS BAR NO. 23242
MICHAEL T. RAUPP      KS BAR NO. 25831
HUSCH BLACKWELL LLP
4801 Main, Suite 1000
Kansas City, Missouri  64112
(816) 983-8000
(816) 983-8080 (FAX)
allan.hallquist@huschblackwell.com
hayley.hanson@huschblackwell.com
derek.teeter@huschblackwell.com
michael.raupp@huschblackwell.com

*Attorneys for Defendant Kansas State University*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ iii

I.      INTRODUCTION/NATURE OF THE MATTER ............................................. 1

II.     CLARIFICATION OF K-STATE'S POLICY AND MS. FARMER'S
        ALLEGATIONS REGARDING K-STATE'S RESPONSE TO HER REPORTS ........... 3

III.    ARGUMENT ..................................................................................................... 6

        A.      Ms. Farmer Fails To State A Claim For Violation Of Title IX ............................. 6

                1.      Ms. Farmer cannot predicate Title IX liability on K-State's alleged
                        violation of ED's guidance; she must satisfy Davis. ................................ 6

                2.      Ms. Farmer abandoned any claim of alleged deliberate indifference
                        to earlier "rape." .......................................................................................... 9

                3.      Ms. Farmer fails to plead K-State had substantial control .......................... 9

                        a.      The Tenth Circuit has not eliminated or replaced the
                                "substantial control" requirement. .................................................. 12

                        b.      ED's guidance is non-binding and highly unpersuasive .............. 15

                4.      Ms. Farmer fails to plead facts establishing K-State's alleged
                        deliberate indifference caused her to suffer further harassment. .............. 19

                        a.      Ms. Farmer must plead the existence of further harassment. ....... 19

                        b.      Ms. Farmer fails to plead that K-State caused any harassing
                                or discriminatory conduct in K-State's education programs
                                and activities. ................................................................................. 22

        B.      Ms. Farmer Fails To State A Claim under the KCPA .......................................... 23

                1.      Ms. Farmer fails to plead her KCPA claim with particularity. ................. 23

                2.      Ms. Farmer fails to plead she was "aggrieved". ..................................... 25

        C.      Ms. Farmer Fails To State A Claim of Negligence ............................................. 26

                1.      K-State did not have a duty to protect Ms. Farmer from the
                        criminal acts of third parties. ..................................................................... 26

                2.      K-State is immune from Ms. Farmer's negligence claim. ......................... 28

       D.      This Court Should Not Give Ms. Farmer Leave To Amend................................. 29

IV.    CONCLUSION................................................................................................................ 29

CERTIFICATE OF SERVICE ................................................................................................... 31

# TABLE OF AUTHORITIES

**Page**

## Federal Court Cases

*Allentown Mack Sales & Serv., Inc. v. NLRB*,
    522 U.S. 359 (1998) .......................................................................................... 16

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .......................................................................................... 25

*Balfour v. Medicalodges, Inc.*,
    2006 WL 314521 (D. Kan. 2006) ...................................................................... 25

*Benedict v. Altria Group, Inc.*,
    241 F.R.D. 668 (D. Kan. 2007) ......................................................................... 25

*Bryant v. Independent School District*,
    No. I-38, 334 F.3d 928 (10th Cir. 2003) ........................................................... 12

*Camara v. Municipal Court of City and County of San Francisco*,
    387 U.S. 523 (1967) .......................................................................................... 11

*Car Carriers, Inc. v. Ford Motor, Co.*,
    745 F.2d 1101 (7th Cir. 1984) ........................................................................... 27

*Davis v. Monroe County Board of Education*,
    526 U.S. 629 (1999) ................................... 1, 2, 6, 7, 8, 9, 10, 11, 12, 14, 15, 17, 19, 20, 23, 28

*Doe v. Bibb County Sch. Dist.*,
    126 F. Supp. 3d 1366 (M.D. Ga. 2015) ...................................................... 6, 15, 18

*Encino Motorcars, LLC v. Navarro*,
    136 S. Ct. 2117 (2016) ...................................................................................... 18

*Escue v. N. Okla. Coll.*,
    450 F.3d 1146 (10th Cir. 2006) .......................................................... 8, 19, 20, 21

*Fitzgerald v. Barnstable Sch. Committee*,
    504 F.3d 165 (1st Cir. 2007) ............................................................................. 21

*G.G. ex rel. Grimm v. Gloucester County School Board*,
    822 F.3d 709 (4th Cir. 2016) ............................................................................. 17

*Gebser v. Lago Vista Indep. Sch. Dist.*,
    524 U.S. 274 (1998) ....................................................................................... 6, 15

*Griffin v. Security Pacific Automotive Financial Services Corporation*,
    33 F. Supp. 2d 926 (D. Kan. 1998) ................................................................... 25

*Hammer v. Sam's East, Inc.*,
    2013 WL 3756573 (D. Kan. 2013) ....................................................................... 29

*Headrick v. Rockwell Intern.*,
    24 F.3d 1272 (10th Cir. 1994) ........................................................................... 16

*Indep. Training and Apprentiship Program v. Cal. Dep't of Indus. Relations*,
    730 F.3d 1024 (9th Cir. 2013) ........................................................................... 17

*Jamieson v. Vatterott Educ. Ctr., Inc.*,
    473 F. Supp. 2d 1153 (D. Kan. 2007) .......................................................... 23, 24

*Kaufman v. Univ. of Colo. at Boulder*,
    2015 WL 7014440 (D. Colo. 2015) ................................................................... 27

*Kinsman v. Florida State University*,
    No. 15cv235-MW/CAS, Slip Op. (N.D. Fla. Aug. 12, 2015) ............................... 21

*Lamb v. Thompson*,
    265 F.3d 1038 (10th Cir. 2001) ....................................................................... 17

*Linwood Group, LLC v. LP Linwood Village Apartments, LLC*,
    2011 WL 3625000 (D. Kan. 2011) ................................................................... 24

*McCoy v. City of Independence, Kan.*,
    2013 WL 424858 (D. Kan. 2013) ..................................................................... 29

*Medlock v. Tr. of Indiana Univ.*,
    738 F.3d 867 (7th Cir. 2013) ........................................................................... 11

*Mission Group Kan., Inc. v. Riley*,
    146 F.3d 775 (10th Cir. 1998) ......................................................................... 16

*Murrell v. Sch. Dist., No. 1*,
    186 F.3d 1238 (10th Cir. 1999) ....................................................................... 12

*N. Haven Bd. of Educ. v. Bell*,
    456 U.S. 512 (1982) ....................................................................................... 8, 9

*Ostrander v. Duggan*,
    341 F.3d 745 (8th Cir. 2003) ....................................................................... 10, 19

*People for the Ethical Treatment of Animals, Inc. v. U.S. Dep't of Agriculture*,
    2016 WL 2772284 (D. Colo. 2016) ................................................................... 16

*Piper v. Chris-Craft Indus., Inc.*,
    430 U.S. 1 (1977) ........................................................................................... 18

*Reardon v. Wroan*,
    811 F.2d 1025 (7th Cir. 1987) ......................................................................... 11

*Roe v. St. Louis Univ.*,
746 F.3d 874 (8th Cir. 2014) ................................................................ 6, 10, 15, 19

*Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*,
511 F.3d 1114 (10th Cir. 2008) ........................................... 8, 13, 14, 19, 20, 21, 22

*Samuelson v. Oregon State University*,
2016 WL 727162 (D. Or. 2016) ...................................................................... 10

*Simpson v. University of Colorado*,
500 F.3d 1170 (10th Cir. 2007) .................................................................. 8, 20

*Spencer v. University of New Mexico Board of Regents*,
Slip Op., No. 15-CV-141 MCA/SCY (Doc. 27-2) (D.N.M. Jan 11, 2016) ...................... 21, 22

*Thomas v. Meharry Med. Coll.*,
1 F. Supp. 3d 816 (M.D. Tenn. 2014) .............................................................. 20

*United States ex rel. Hafter D.O. v. Spectrum Emergency Care, Inc.*,
9 F. Supp. 2d 1273 (D. Kan. 1998) ................................................................ 24

*Vance v. Spencer Cty. Pub. Sch. Dist.*,
231 F.3d 253 (6th Cir. 2000) ...................................................................... 21

*Williams v. Board of Regents*,
477 F.3d 1282 (11th Cir. 2007) .................................................................... 21

*Yoona Ha v. Nw. Univ.*,
2014 WL 5893292 (N.D. Ill. 2014) .............................................................. 20, 23

## State Court Cases

*Finstad v. Washburn University of Topeka*,
845 P.2d 685 (Kan. 1993) .......................................................................... 25

*Gragg v. Wichita State University*,
934 P.2d 121 (Kan. 1997) .......................................................................... 26

*McGree v. Chalfant*,
806 P.2d 980 (Kan. 1991) .......................................................................... 26

*Nero v. Kansas State University*,
861 P.2d 768 (Kan. 1993) ...................................................................... 26, 28

*Thomas v. County Com'rs of Shawnee County*,
262 P.3d 336, Syllabus ¶ 5 (Kan. 2011) .......................................................... 28

*Yeasin v. Univ. of Kan.*,
360 P.3d 423 (Kan. Ct. App. 2015) ............................................................ 11, 29

### Federal Statutory Authorities

5 U.S.C. § 706 (2)(E) ............................................................................................. 16

20 U.S.C. § 1681(a) ......................................................................................... 13, 17

20 U.S.C. § 1687 .............................................................................................. 13, 17

### Statutory Authorities

K.S.A. § 75-6104(c) ................................................................................................ 28

### Federal Rules and Regulations

34 C.F.R. § 99.10(a) .............................................................................................. 24

34 C.F.R. § 99.12(a) .............................................................................................. 24

34 C.F.R. § 99.3 ..................................................................................................... 24

34 C.F.R. § 99.31(a)(10) ........................................................................................ 24

34 C.F.R. § 106.31(a) ...................................................................................... 13, 17

### Court Rules

Federal Rule of Civil Procedure 9(b) ..................................................................... 25

Local Rule 15.1 ...................................................................................................... 30

### Additional Authorities

2001 Revised Sexual Harassment Guidance, at 3, available at
    http://www2.ed.gov/about/offices/list/ocr/docs/shguide.pdf .................................... 15

2014 Questions and Answers on Title IX and Sexual Violence, *available at*
    http://www2.ed.gov/about/offices/list/ocr/docs/qa-201404-title-ix.pdf ................................... 16

http://www.dartmouth.edu/stulife/greek-soc/cfs/fraternities.html ................................. 19

http://www.k-state.edu/fsl/parents_families/faq.html ................................................. 19

http://www.k-state.edu/policies/ppm/3000/3010.html ................................... 4, 5, 8, 10, 13, 19, 20

https://rde.stanford.edu/studenthousing/greek-houses ................................................. 19

Restatement (Second) of Torts § 324A ......................................................... 27, 28, 29

## I.      INTRODUCTION/NATURE OF THE MATTER

Title IX prohibits colleges and universities that receive federal funds from engaging in sex discrimination in their education programs and activities.   Contrary to Ms. Farmer's arguments, Title IX does not obligate institutions to disregard traditional notions of control and jurisdiction, not to mention constitutional rights, and conduct wide ranging investigations of alleged misconduct committed by students in off-campus, private settings.   To hold otherwise would transform Title IX from an anti-discrimination law into a remedial, quasi-criminal statute and force colleges and universities to become worldwide law enforcement agencies.   To the contrary, under Title IX, an institution is only obliged to respond to sexual harassment where it has "substantial control" over the harasser and the "context" of the harassment, and even then, an institution can only be liable if its deliberate indifference *causes* further harassment.   Ms. Farmer's allegations come nowhere close to meeting these key elements.

Here, Ms. Farmer seeks money damages from K-State by alleging it was deliberately indifferent to her report that C.M. raped her in a private bedroom at a privately owned off-campus fraternity house, which K-State cannot enter without permission or a warrant.[1]   While every report of rape is serious and every rape is a tragedy, universities should not, and cannot, be responsible for guaranteeing their students' safety at off-campus, private functions and in off-campus, private places.   This is the business of police and prosecutors.

The allegations in Ms. Farmesexur's own Complaint make clear K-State did not have substantial control over C.M. *in the context that the alleged rape occurred* and that K-State's response to her report did not cause Ms. Farmer to suffer further harassment.   Thus, her Title IX claim fails under the clear elements of *Davis v. Monroe County Board of Education*, 526 U.S.

---

[1]   Ms. Farmer has abandoned her claim that K-State was deliberately indifferent to alleged sexual assaults that occurred prior to her alleged rape by C.M.   *See* Opposition at 2, n.1.

629 (1999).

In her Opposition, Ms. Farmer argues K-State had substantial control over C.M.'s actions because it could discipline him *ex post* and because it has a process for granting institutional recognition to fraternities as student organizations. But the ability to discipline a student *ex post* is not the same as "substantial control" over harassers and the "context" of the harassment. Further, simply because an institution recognizes fraternities as student organizations does not mean the institution has substantial control over the acts of individual fraternity members off-campus and in private locations. To the contrary, analogous cases hold precisely the opposite. And any statements to the contrary in recent Department of Education ("ED") "Question and Answers" lack the force of law, are inconsistent with Title IX's language, and are entitled to no deference. And the law is clear that violating ED's guidance is *not* equivalent to deliberate indifference. So, while Ms. Farmer wants to make this case turn on whether K-State complied with ED's recent edicts, this is irrelevant.

In addition, Ms. Farmer argues that she does not need to show that K-State caused C.M. to commit further harassment because the mere possibility she feared encountering him on campus was sufficient. But *Davis* itself makes clear that an institution can be liable under Title IX only if its own actions cause further harassment, and fear of a future encounter with a prior harasser is not further harassment. Indeed, numerous cases within and without the Tenth Circuit hold that Title IX does not impose a duty on the part of institutions to remedy the effects of off-campus criminal conduct. This is not to say that institutions should not, for moral or ethical reasons, provide support services to alleged victims and, indeed, K-State provided such services to Ms. Farmer. But an alleged victim cannot recover money damages from a school simply because the school does not provide the particular form of remediation she seeks or because it

does not discipline the alleged perpetrator as she wished.  Yet that is exactly what Ms. Farmer claims the law requires, and her claims necessarily fail as a result.

Although Ms. Farmer attempts to defend the adequacy of her secondary Kansas Consumer Protection Act ("KCPA") claim, the defense is half-hearted and unsupported.  Ms. Farmer concedes her KCPA claim must be pled with particularity.  But her Opposition fails to identify where she has pled the critical who, what, when, where, and how of K-State's alleged false misrepresentations about fraternities.  She also fails to plead the causation necessary to establish she was "aggrieved" by any misrepresentation.  Thus, her KCPA claim fails.

Similarly, Ms. Farmer's cursory attempt to defend her secondary common law negligence claim is unsuccessful.  The claim is barred because a university does not have a general duty to protect its students from third-party criminal acts.  Further, her claim is barred by sovereign immunity under the "discretionary function" exception to liability in the Kansas Tort Claims Act ("KTCA"), and her argument to the contrary is based on her misreading of a dated Kansas case that has been clarified extensively.  Because there is no law mandating how K-State should respond to student-on-student violence, K-State's response is discretionary, and sovereign immunity applies.  Thus, Ms. Farmer's negligence claims fails.

In sum, because each of Ms. Farmer's claims is deficiently pled and fails as a matter of law, the Court should grant K-State's motion in its entirety.

## II.   CLARIFICATION OF K-STATE'S *POLICY* AND MS. FARMER'S ALLEGATIONS REGARDING K-STATE'S RESPONSE TO HER REPORTS

K-State described Ms. Farmer's Complaint and certain operative facts pertinent to its motion in its opening brief.  However, Ms. Farmer's Opposition falsely states that K-State has an "'off-campus, not our problem' position," Opposition at 1, and suggests K-State did nothing to respond to Ms. Farmer's report of rape when, in fact, her own Complaint establishes that K-State

did a great deal.  Accordingly, it is necessary for K-State to clarify the record, both with respect to its *Policy* and Ms. Farmer's allegations regarding its response.

K-State's Policy Prohibiting Discrimination, Harassment, Sexual Violence, and Stalking, and Procedure for Reviewing Complaints (the "*Policy*")[2] prohibits sex discrimination and establishes the process by which K-State currently evaluates and process reports.  Ex. A, *Policy*, http://www.k-state.edu/policies/ppm/3000/3010.html.  Pertinent to this motion, the *Policy* states that K-State "will maintain academic, housing, and work environments that are free of discrimination, harassment (including sexual harassment and sexual violence), retaliation, and stalking."  *Id.*  The *Policy* covers "employees, students, applicants for employment or admission, contractors, vendors, visitors, guests, and participants in University-sponsored programs or activities."  *Id.*  With respect to jurisdiction, the *Policy* recognizes that:

> [I]n some situations, this policy may apply to allegations of discrimination, harassment or retaliation for behavior that occurs off campus or during after-hours functions sponsored by the University.  Off campus occurrences that are not related to University-sponsored programs or activities are investigated under this policy only if those occurrences relate to discrimination, harassment, or retaliation alleged on campus.

*Id.*

Contrary to Ms. Farmer's allegation that K-State ignores reports off-campus rape, K-State evaluates every report of sexual harassment.  The *Policy* provides a multi-step process for doing so.  Among others, the steps include a review and evaluation of the complaint by the Office of Institutional Equity ("OIE") to determine whether the complaint falls within the *Policy*'s jurisdiction; if jurisdiction is found, or if more information is needed to determine jurisdiction, a review and, if necessary, investigation of the complaint by an Administrative Review Team ("ART"), which issues a written determination as to whether or not the evidence

---

[2]  The Court may consider documents, such as the Policy, referred to in the Complaint and central to the plaintiff's claims.  *MacArthur v. San Juan County*, 309 F.3d 1216, 1221 (10th Cir. 2002).

supports the existence of a *Policy* violation using a preponderance standard; and, only in the event a *Policy* violation has been found, a disciplinary process by which the ART recommends sanctions to an administrator who imposes sanctions, subject to appeal.  *See* Ex. A, *Policy*.

As the *Policy* makes clear, persons who come forward with complaints of sexual violence are encouraged to report the conduct to local police.  *Id.*  Further, the *Policy* specifies that the Center for Advocacy, Response and Education ("CARE") office will provide support and advocacy services to a complainant, regardless of whether his or her complaint proceeds to a formal investigation by the ART.  *Id.*  Thus, K-State provides support and assistance to any student who comes forward with a report of sexual violence, even if K-State does not have jurisdiction to discipline the alleged perpetrator.   This is a far cry from Ms. Farmer's characterization that K-State has an "off-campus, not our problem" position.

Ms. Farmer's Opposition repeatedly claims K-State did nothing in response to her own reports of rape.[3]  To the contrary, Ms. Farmer's own Complaint makes clear that K-State responded to her report in numerous ways, including: (1) K-State's investigator met with Ms. Farmer and evaluated her complaint but concluded it was beyond K-State's jurisdiction because Ms. Farmer did not allege the rape occurred in K-State's education programs and activities, and she did not allege any sexual harassment occurred on campus; (2) despite the lack of jurisdiction to conduct a full investigation, K-State inquired of Ms. Farmer as to whether she needed assistance with any accommodations related to her education at K-State as a result of her complaint and whether she felt safe in her daily walk or ride to campus; (3) also despite the lack of jurisdiction to conduct a full investigation, K-State offered to provide Ms. Farmer with

---

[3]  Ms. Farmer states that "K-State does not dispute" that it had actual knowledge and was deliberately indifferent. Opposition at 2.  While K-State has not moved on these elements based on the standard of review that applies at this stage, K-State has never suggested it "does not dispute them."   To the contrary, if necessary, K-State is fully prepared to demonstrate, with evidence, that it responded to Ms. Farmer's report in a reasonable way.

resources such as student escorts on campus and a ride service for weekends.  Complaint ¶¶ 29, 33, 34, 43.[4]

## III.   ARGUMENT

### A.   Ms. Farmer Fails To State A Claim For Violation Of Title IX

Under the *Davis* standard, Ms. Farmer must plead facts that show, among other things, that K-State was deliberately indifferent to severe sexual harassment within its substantial control and that K-State's deliberate indifference caused further harassment.  526 U.S. at 643. Here, Ms. Farmer alleges that she was raped off-campus, by a third-party, in a private setting where K-State had no substantial control over the alleged rapist or the circumstances of the rape. And she fails to plead that she suffered any further unwelcome conduct of a sexual nature *after* the alleged rape.  Therefore, her Complaint fails to plead essential elements of her claim.

1.   Ms. Farmer cannot predicate Title IX liability on K-State's alleged violation of ED's guidance; she must satisfy *Davis.*

Despite Ms. Farmer's claims that K-State's alleged practices are contrary to ED's sub-regulatory "guidance" in "Questions and Answers" and "Dear Colleague Letters," Title IX civil liability cannot be predicated on violation of such guidance.  Indeed, the Supreme Court has held that Title IX civil liability cannot even be predicated on the violation of actual *regulations*, adopted pursuant to notice and comment rulemaking.  *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 291-92 (1998) ("We have never held, however, that the implied private right of action under Title IX allows recovery in damages for violation of those sorts of administrative requirements.").[5]  Instead, Title IX civil liability can only be established within the narrow

---

[4] K-State did a great deal more in response to Ms. Farmer's report but recognizes that the merits of its current motion must be assessed in light of the allegations in the Complaint.

[5] *See also Roe v. St. Louis Univ.*, 746 F.3d 874, 883 (8th Cir. 2014) ("[An] alleged failure to comply with the Title IX regulations does not establish actual notice and deliberate indifference."); *Doe v. Bibb County Sch. Dist.*, 126 F. Supp. 3d 1366, 1378 (M.D. Ga. 2015) ("Clearly, a funding recipient cannot be held liable simply because it did not

framework of *Davis*.  And a careful review of *Davis* makes clear that Ms. Farmer's Complaint fails to plead two necessary elements of her claim—namely, that the alleged rape occurred within K-State's substantial control and that K-State caused *further* harassment.

In *Davis*, a fifth grade student, LaShonda, sued a K-12 school district under Title IX, claiming that she had been the victim of a "prolonged pattern" of sexual harassment committed by fellow student G.F.  526 U.S. at 633.  LaShonda alleged that the sexual harassment—vulgar comments and unwelcome groping—was reported to school officials, along with similar complaints from other female students, but the school declined to take disciplinary action against G.F.  *Id.*  LaShonda alleged that, after the school declined to take disciplinary action, the sexual harassment continued in the form of sexually suggestive gestures and an incident where G.F. rubbed his body against LaShonda without her permission.  *Id.*  Unlike here, where C.M. has not even been arrested for the alleged rape, G.F. was eventually arrested, charged, and pled guilty to sexual battery.  *Id.*  The Supreme Court found that an implied civil cause of action for money damages exists under Title IX only where a school is "deliberate[ly] indifferen[t] to known acts of harassment *in its programs and activities*," and only where the harassment is "so severe, pervasive and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit."  *Id.* (emphasis added).

As the Court explained, Title IX applies only to institutions that accept federal funds and only as a condition of receiving such funds.  *Id.*  This means that an institution can be liable for only its *own* discriminatory conduct.  *Davis*, 526 U.S. at 641.  In other words, the "recipient *itself* must exclude persons from participation in, deny persons the benefits of, or subject persons to discrimination under its programs and activities."  *Id.* (internal quotations and ellipses omitted). Thus, while LaShonda sought a broad ruling that Title IX "bar[s] recipients from *permitting*

conduct an appropriate investigation (even if such conduct could expose it to potential administrative action . . .).").

7

[peer-on-peer] harassment in programs and activities," *id.* at 639 (emphasis added), the Supreme Court rejected this notion, holding instead that an institution is not vicariously liable under Title IX simply because one student commits sexual violence against another.  *Id.* at 672.

Unlike Ms. Farmer, LaShonda claimed that the school district's alleged deliberate indifference to reported sexual harassment *caused* further harassment.  *Id.* at 643.  Specifically, she claimed she was harassed *again* after the district did nothing in response to her and other girls' initial reports.  Only because of this allegation could LaShonda attempt to "hold the Board liable for its *own decision to remain idle* in the face of known student-on-student harassment." *Id.* at 641 (emphasis added).  Indeed, the Tenth Circuit and other courts have interpreted *Davis* to require a plaintiff to prove that a school's deliberate indifference *caused* further harassment. *Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1123 (10th Cir. 2008); *Escue v. N. Okla. Coll.*, 450 F.3d 1146, 1155-56 (10th Cir. 2006).[6]

Moreover, because Title IX only prohibits sex discrimination in "education programs and activities," which the statute defines as the "operations" of the institution, *Davis* stressed that harassment "must take place in a *context* subject to the school district's control"—that is, where the institution exercises "substantial control over both the harasser and the context in which the harassment occurs."  *Davis*, 526 U.S. at 645.  "Only then can the recipient be said to 'expose' its students to harassment or 'cause' them to undergo it 'under' the recipient's programs."  *Id.*

Thus, while some courts have commented that Title IX provides a "broad prohibition on sex discrimination" in a *regulatory* sense, Opposition at 5,[7] the circumstances in which

---

[6]  As Ms. Farmer notes, the "further harassment" requirement may not be required where, as in a case like *Simpson v. University of Colorado*, 500 F.3d 1170 (10th Cir. 2007), an institution has an *affirmative Policy* that encourages sexual harassment.  However, as Ms. Farmer concedes, her Complaint does not state a claim based on *Simpson*-type liability.  *See* Opposition at 24, n.9.

[7]  Notably, the case Ms. Farmer cites for this proposition is one where the Secretary of ED was a party and the claims involved were regulatory in nature—not the implied civil cause of action in *Davis*.  *See N. Haven Bd. of*

institutional *civil* liability can result from failure to respond to student-on-student sexual harassment are decidedly "limited."  *Davis*, 526 U.S. at 643.

        2.      <u>Ms. Farmer abandoned any claim of alleged deliberate indifference to earlier "rape."</u>

Ms. Farmer makes an important concession in footnote 1 of her Opposition, where she states:  "Tessa *does not* bring a claim for *pre-assault* Title IX liability and, as such, the Court need not address K-State's arguments regarding actual knowledge or deliberate indifference, which they have only raised in that context."  Opposition at 2, n.1 (emphasis in original).  This concession is extraordinarily consequential because, as discussed below, Ms. Farmer does not allege that C.M. took any adverse action against her *after* the alleged rape.  In fact, she does not allege she even encountered C.M. after the alleged rape.  Thus, her claim is different than LaShonda's.  Here, Ms. Farmer seeks to hold K-State liable only because K-State failed to *remediate* the later *effects* of the alleged rape.  This theory is clearly unsupported.

        3.      <u>Ms. Farmer fails to plead K-State had substantial control.</u>

Ms. Farmer claims she was raped by C.M. in a private room at an off-campus, privately-owned fraternity house.  She does not allege that K-State owned the fraternity house or had access to the house, let alone the bedroom where C.M. allegedly raped her.

Unable to show that K-State had contemporaneous control over C.M. and the context in which the alleged rape occurred, Ms. Farmer argues that K-State could have disciplined C.M. *ex post*; that K-State has allegedly "used its disciplinary authority" to address "incidents of off-campus rape" by a "basketball player"; that K-State "promotes" fraternities and sororities; and that K-State provides oversight and support to fraternities.  Opposition at 12-13.

---

*Educ. v. Bell*, 456 U.S. 512 (1982).  Moreover, the quote Ms. Farmer uses only supports the notion that Title IX is interpreted to the full extent of its statutory language.  *Id.* at 521.  There is no support for Ms. Farmer's desire to expand Title IX well beyond its plain language.

As the analogous cases *Roe v. St. Louis University*, 746 F.3d 874 (8th Cir. 2014), *Ostrander v. Duggan*, 341 F.3d 745 (8th Cir. 2003), and *Samuelson v. Oregon State University*, 2016 WL 727162 (D. Or. 2016) show, where, as here, a plaintiff alleges deliberate indifference only to an incident of sexual harassment that she reported, a university does not have "substantial control" even if it could discipline the alleged perpetrator *ex post*.  Such a notion would make an institution vicariously liable for sexual harassment unless it *remediated* the effects of harassment; this is inconsistent with *Davis*' teaching that an institution can only be liable for its own acts that *cause* discrimination.  *Davis*, 526 U.S. at 648 ("The dissent consistently mischaracterizes this standard to require funding recipients to "remedy" peer harassment and to "ensure that . . . students conform their conduct to" certain rules.  Title IX imposes no such requirements.").  *Davis*, 526 U.S. at 648 (internal citations omitted).

Even if K-State did investigate and discipline a basketball player for off-campus sexual misconduct, this is immaterial.  K-State has never contended that all off-campus conduct is beyond the reach of an institution's Title IX obligations.  Indeed, K-State's *Policy* specifically addresses when and under what circumstances off-campus conduct is subject to a full investigation and, if necessary, disciplinary proceedings.

Similarly, whether or not K-State promotes fraternities as an integral part of campus life is irrelevant.  Colleges and universities promote a range of student organizations, but that does not mean that an institution has "substantial control" over what the organizations' members do in off-campus, private settings.  "Promotion" is not the test.  "Substantial control" is.

Finally, Ms. Farmer argues that K-State had substantial control over her alleged rape because it has "authority and ability to regulate fraternity houses," and has an office of Greek Affairs that provides "substantial support and oversight services," to fraternities.  Opposition at

10

13.  Even if true, these allegations do not show "substantial control."  Even if an institution has "authority and ability to regulate fraternity *houses*", this is not at all the same as the ability to regulate the conduct *of its individual members* in private bedrooms behind closed doors.

In any event, the supposed "control" that K-State could exercise over the situations at issue in this case would, of course, have to be realistic to be "substantial," which is what *Davis* requires.  *See* www.dictionary.com (July 22, 2016) (defining "substantial" as, among others, "of real worth, value, or effect" and "tangible; real").  It is unreasonable and unrealistic to suggest that K-State can monitor, let alone regulate, unsanctioned activities that occur at private locations in the community.  Universities do not have worldwide jurisdiction for every sexual assault.

Further, K-State cannot simply enter private fraternity houses to monitor activity.  Indeed, while Fourth Amendment standards permit a university considerable leeway in entering into on-campus dorm rooms, *see Medlock v. Tr. of Indiana Univ.*, 738 F.3d 867, 872-73 (7th Cir. 2013), private fraternity houses are entitled to the same Fourth Amendment protections as any private home.  *See Reardon v. Wroan*, 811 F.2d 1025, 1028 & n.2 (7th Cir. 1987) (holding that fraternity houses are afforded the same Fourth Amendment protections as a private residence).  And a public entity cannot conduct criminal or administrative searches of a private home without permission, a warrant, or an exception to the warrant requirement.  *See Camara v. Municipal Court of City and County of San Francisco*, 387 U.S. 523, 534 (1967) (holding warrantless, administrative searches of private residences violate the Fourth Amendment); *see also Yeasin v. Univ. of Kan.*, 360 P.3d 423, 430 (Kan. Ct. App. 2015) ("It seems obvious the only environment the University can control is on campus or at University sponsored or supervised events.").  Put simply, an educational institution cannot have substantial control over a situation if such control is illegal.

a.   The Tenth Circuit has not eliminated or replaced the "substantial control" requirement.

Unable to satisfy the *Davis* "substantial control" requirement, Ms. Farmer attempts to discard *Davis* entirely by claiming an institution must investigate all reported sexual assaults or it necessarily violates Title IX.  Specifically, Ms. Farmer claims the Tenth Circuit "specifically finds a school deliberately indifferent when, as here, it refuses to investigate reports of student-on-student sexual assault."  Opposition at 6.  But the primary case she cites, *Murrell v. School District No. 1*, 186 F.3d 1238 (10th Cir. 1999), says nothing of the sort.  In *Murrell*, the plaintiff, a student with learning disabilities, alleged that she received sexually harassing phone calls from another student, that her mother reported the calls to the school, that the school did nothing, and that the plaintiff was *then* sexually assaulted by the perpetrator in the *physical school building* while a janitor watched.  *Id.* at 1243-44.  Clearly there could be no dispute that sexual harassment occurred within the school's control.  *Id.*  The case does not stand for the notion that an institution must investigate every reported sexual assault, regardless of its location.[8]

Ms. Farmer next attacks a strawman by mischaracterizing K-State's argument as that it has *no* duty to investigate *any* sexual assaults that occur off campus.  Opposition at 6-9.  But this is not what K-State has argued at any point in this case, nor is this position reflected in K-State's *Policy*, which specifically notes K-State may investigate "allegations of discrimination, harassment or retaliation for behavior that occurs off campus and during after-hours functions sponsored by the University," or off-campus misconduct that is "relate[d] to discrimination, harassment, or retaliation alleged on campus."  Ex. A, *Policy*.  Instead, K-State's position,

---

[8]  Ms. Farmer also relies on *Bryant v. Independent School District No. I-38*, 334 F.3d 928 (10th Cir. 2003).  Yet, *Bryant* involved allegations that African Americans were subject to racial harassment *at school* in the form of racial slurs, epithets, swastikas, and the letters "KKK" inscribed in "school furniture" and racially harassing notes placed in lockers.  *Id.* at 931.  Thus, once again, there was no question the harassment occurred within the school's substantial control.

consistent with the language in Title IX, is that its obligation is to respond to sexual misconduct that occurs within its education programs and activities.  Some of those activities clearly may extend off campus—such as when a sports team travels for a game or when a department hosts a BBQ at a local park.  But conduct that simply occurs between two students, off-campus, at a private event is not part of K-State's "operations" and, therefore, not part of its "education programs and activities."  *See* 20 U.S.C. §§ 1681(a) & 1687; 34 C.F.R. § 106.31(a).

K-State agrees that, in *Rost*, the Tenth Circuit used the term "nexus" to identify that sort of off-campus activity that is nonetheless part of an institution's education programs and activities.  *See Rost*, 511 F.3d at 1121, n.1.  But as *Rost* itself demonstrates, that "nexus" requires something far more than the occurrence of sexual harassment between current students.

Indeed, *Rost* involved allegations that a female middle school student with learning disabilities was "coerced" by four middle school boys, "in a variety of private locations and social settings," including on the "school bus," to perform sex acts  *Id.* at 1117.  The plaintiff alleged she shared classes with the boys and was afraid to attend a particular math class with one of the perpetrators because of the off-campus sexual misconduct.  *Id.* at 1118.  She also alleged the boys had threatened to show classmates "naked pictures of her and spread rumors about her." *Id.* at 1117.  After reporting the matter to a counselor, the plaintiff suffered an "acute psychotic episode," was hospitalized, and received private tutoring for the remainder of the school year. *Id.*  When it learned of the allegations, the school referred the matter to police for a criminal investigation, but it did not conduct its own, internal investigation.  *Id.* at 1118.

Just like Ms. Farmer, the *Rost* plaintiff brought a Title IX claim premised on the school district's alleged deliberate indifference to *her* reported sexual harassment.  *Id.* at 1119.  The Tenth Circuit found the school was *not* deliberately indifferent, and in so doing stated:

> The district reasonably could believe it did not have responsibility or control over the incidents, and merely because the principal thought the school could discipline students for conduct occurring outside the school grounds says nothing about whether it was appropriate given what occurred here.[1]  This is not a situation where a school district learned of a problem and did nothing. . . .  Rather, given a complicated situation involving the rights of many parties, including the alleged perpetrators, the school district deferred to law enforcement.

*Id.* at 1121 (internal citations omitted).  Footnote one of this block quote, which contains the "nexus" language Ms. Farmer refers to, states, in pertinent part:

> *Davis* suggests there must be some nexus between out-of-school conduct and the school.  We did not find a sufficient nexus here, where the only link to the school was an oblique and general reference to harassment or teasing on the school bus or in the halls of the school.  Moreover the fact that the boys threatened to post pictures of K.C. at school does not cause the harassment to 'take place in a context subject to the school district's control' either.

*Id.* at 1121, n.1.  Thus, whatever the Tenth Circuit meant by the term "nexus," the facts and holding of *Rost* demonstrate clearly that the nexus test is not implicated by Ms. Farmer's allegations, which allege *no* adverse action by C.M. on campus and state only that she *feared* encountering him.  In short, *Rost* is fatal to Ms. Farmer's claims.

Ms. Farmer argues that *Rost*'s "nexus" standard is "reinforced and supported" by ED's "guidance," which "for nearly 20 years has recognized Title IX extends to off-campus harassment."  Opposition at 7.  But this statement just begs the question of whether sexual harassment occurring between students, at a *private* location off-campus, is an "education programs and activit[y]."  *Rost* and the authorities discussed above hold it is not.  And ED's guidance has not, and cannot, dispense with the operative language of Title IX.  Because this is a private cause of action for money damages, the standards set forth in *Davis* govern the analysis.

But even if this Court were to consider ED's guidance, the same conclusion follows.  Indeed, ED's most recent guidance issued pursuant to notice and comment rulemaking states only that "Title IX protects students in connection with all of the academic, education, extra-

curricular, athletic, and other *programs* of the school, whether they take place in facilities of the school, on a school bus, at a class or training program sponsored by the school at another location, or elsewhere."   2001 Revised Sexual Harassment Guidance, at 3, available at http://www2.ed.gov/about/offices/list/ocr/docs/shguide.pdf (emphasis added).

After that guidance was issued in 2004, ED investigated Oklahoma State University based on a complaint from a female student that the university was deliberately indifferent to her report that she was sexually assaulted by football players at one of the players' off-campus apartment.   *See* Ex. B, Oklahoma State Findings Letter.   In rejecting the complainant's allegations, ED stated, in pertinent part:

> A university does not have a duty under Title IX to address an incident of alleged harassment where the incident occurs off-campus and does not involve a program or activity of the recipient.  OCR's investigation . . . substantiated that the alleged assault . . . took place off-campus in a private residence.  Therefore, OSU did not have an obligation to take *any* action under Title IX.

*Id.* at 2 (emphasis added).  Thus, as ED's own analysis of a Big XII peer institution shows, a university has no duty to investigate off-campus sexual assaults that occur outside its education programs and activities.  Yet, that is precisely the duty Ms. Farmer seeks to impose here.

### b.    ED's guidance is non-binding and highly unpersuasive.

As noted throughout K-State's briefing, this is a civil case governed by *Davis*.  Thus, whether K-State complied with the *regulatory* framework of Title IX is irrelevant to this case, and it is unnecessary for this Court to even consider ED's guidance on Title IX regulations. *Gebser*, 524 U.S. at 291-92; *Roe*, 746 F.3d at 883; *Doe*, 126 F. Supp. 3d at 1378.  But to the extent the Court finds any guidance documents to be relevant, ED's guidance should be rejected.

While, as Ms. Farmer notes, ED has recently claimed in sub-regulatory "Questions and Answers on Title IX and Sexual Violence," that "activities that take place at houses of fraternities or sororities recognized by the school," are "education programs and activities," the

"Questions and Answers" do not cite a single statute, regulation, or case supporting the proposition that activities at *private* fraternity houses are part of an institution's "education programs and activities."  2014 Questions and Answers on Title IX and Sexual Violence, at 29, *available at* http://www2.ed.gov/about/offices/list/ocr/docs/qa-201404-title-ix.pdf

In any event, this Court can and should reject ED's overbroad conclusion for at least six reasons.  *First*, the Questions and Answers were not promulgated pursuant to notice and comment rulemaking and thus are merely "guidance documents," that have no legal force in and of themselves—a fact that ED's own Assistant Secretary for Civil Rights has openly admitted. Ex. C, Lhamon Letter, at 2 ("The Department does not view such guidance to have the force and effect of law.").  As a result, they are not entitled to *Chevron* deference under Tenth Circuit precedent.  *See Mission Group Kan., Inc. v. Riley*, 146 F.3d 775, 781 (10th Cir. 1998); *Headrick v. Rockwell Intern.*, 24 F.3d 1272, 1282 (10th Cir. 1994).

*Second*, ED's recent proclamation is not even an interpretation of Title IX or its implementing regulations, but instead an *application* of Title IX's definition of "operations" to the factual scenario of activities at fraternity houses; thus no deference is owed.  *See Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 376 (1998) (no deference to agency determinations of fact made in light of regulatory interpretation); *see also People for the Ethical Treatment of Animals, Inc. v. U.S. Dep't of Agriculture*, 2016 WL 2772284, at *6 (D. Colo. 2016) ("The *Chevron* test applies to legal interpretations, not factual determinations.").[9]

*Third*, deference of any kind is inappropriate where the underlying statute or regulation is unambiguous or has already been definitively construed.  Title IX unambiguously defines

---

[9]  If ED had made an *adjudicatory* decision that K-State has "substantial control" over its fraternities, such a finding could enjoy "substantial evidence" review in a subsequent action under the Administrative Procedures Act.  *See* 5 U.S.C. § 706 (2)(E).  Here, however, ED has made no such finding.

"education programs and activities," to include all the "operations," of the institution.  20 U.S.C. §§ 1681(a) & 1687; 34 C.F.R. § 106.31(a).  *Davis* definitively construed the plain language of the term "operations" to include only those activities where the institution has "substantial control over both the harasser and the context in which the harassment occurs."  *Davis*, 526 U.S. at 645; *see Lamb v. Thompson*, 265 F.3d 1038, 1052 (10th Cir. 2001) (holding that *Chevron* deference is unavailable when the plain language of the statute is unambiguous).   ED's interpretation, which would classify all activities at fraternities as part of an institution's "operations," irrespective of a "substantial control" analysis, is clearly foreclosed.[10]

*Fourth*, the Questions and Answers are inconsistent with ED's previous determinations in like situations.  *See Indep. Training and Apprentiship Program v. Cal. Dep't of Indus. Relations*, 730 F.3d 1024, 1035 (9th Cir. 2013) ("We decline to afford controlling deference where an agency pulls the rug out from under litigants that have relied on a long-established, prior interpretation of a regulation . . . .").  Specifically, in 2008, ED investigated a complaint that the University of Wisconsin violated Title IX by failing to adequately investigate an alleged sexual assault.  *See* Ex. D, University of Wisconsin Findings Letter.  The complainant stated she went to a fraternity party where she became intoxicated and met two members of the men's crew team.  *Id.* at 1-2.  She alleged the males took her to another off-campus apartment where she alleged the males had sex with her while she was incapacitated.  *Id.* at 2.  The off-campus apartment was owned by a university employee—the boatmaster—and leased exclusively to crew team members.  *Id.*  ED concluded "the alleged assault did not occur in the context of an educational program or activity operated by the University."  *Id.* at 13.  ED's analysis in the University of

---

[10]  Ms. Farmer notes that a divided panel of the Fourth Circuit in *G.G. ex rel. Grimm v. Gloucester County School Board*, 822 F.3d 709 (4th Cir. 2016), deferred to one of ED's "Dear Colleague Letters."  But *Gloucester* concerned whether Title IX prohibition on "sex" discrimination includes gender identity discrimination—a question the Supreme Court has never addressed.  *Id.* at 720.  The *Gloucester* majority determined the term "sex" in Title IX's implementing regulations was ambiguous.  *Id.* at 720-21.  The case has no relevance to the question presented here.

Wisconsin case simply cannot be squared with its position in the "Questions and Answers." *Cf. Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2125 (2016) (holding that when an agency changes its position without providing any justification for doing so, the regulation is arbitrary and capricious, and is not entitled to *Chevron* deference).

*Fifth*, even if ED's claim that activities at private fraternity residences are "operations" is an interpretation that would otherwise be accorded deference in a lawsuit premised on regulatory enforcement, agency interpretations are not afforded deference in private lawsuits premised on an implied private right of action. *See Piper v. Chris-Craft Indus., Inc.*, 430 U.S. 1, 42 n.27 (1977) ("Indeed, in our prior cases relating to implied causes of action [under the securities laws], the Court has understandably not invoked the 'administrative deference' rule, even when the SEC supported the result reached in a particular case."); *see also Doe*, 126 F. Supp. 3d at 1377 ("[I]t is obvious the guidance in the [Dear Colleague Letter] is broader than the scope of liability for private causes of action for money damages."). Given that Ms. Farmer's claim here is based on an implied cause of action, the Court should give ED no deference.

*Sixth*, ED's proclamation is facially unpersuasive because it carelessly rests on the unsupported assumption that a college or university's mere "recognition" of a fraternity gives it "substantial control" over what happens at a fraternity "house." Whether or not this is true necessarily depends on factors specific to the institution. For example, some institutions—often private ones like Stanford and Dartmouth[11]—allow fraternities to reside in institution-owned buildings and thus have a degree of control over what occurs in the fraternity residence. Other institutions, like K-State, simply recognize fraternities as student organizations, but fraternity members, to the extent they choose to live communally, do so of their own accord and live at an

---

[11]   *See*   https://rde.stanford.edu/studenthousing/greek-houses   and   http://www.dartmouth.edu/stulife/greek-soc/cfs/fraternities.html.

off-campus house that the institution does not own, does not have access to, and does not control.[12]  Where an institution's relationship with fraternities is like K-State's, the Eighth Circuit's closely analogous decisions in *Roe* and *Ostrander* correctly explain why there is no "substantial control."  *See Roe*, 746 F.3d at 883; *Ostrander*, 341 F.3d at 750-51.

In the end, Ms. Farmer's Complaint simply pleads no facts demonstrating K-State "exercise[d] substantial control over both the harasser and the context" in which the harassment occurred.  *Davis*, 526 U.S. at 645.  She cannot cure this deficiency by mischaracterizing the *Policy*, attacking strawmen, and relying on flawed proclamations from ED that lack the force of law and that are contrary to the plain language of Title IX itself.

### 4.    Ms. Farmer fails to plead facts establishing K-State's alleged deliberate indifference caused her to suffer further harassment.

In light of *Davis*' explicit holding that an institution can only be liable under Title IX when its own conduct causes discrimination, the Tenth Circuit has held that a plaintiff alleging deliberate indifference to reports of harassment must show that an institution's deliberate indifference in failing to respond caused *further* harassment.  *Rost*, 511 F.3d at 1124-25; *Escue v.* 450 F.3d at 1155.  Despite Ms. Farmer's protestations to the contrary, this is the law, and her allegations fail to show she suffered further harassment.

### a.    Ms. Farmer must plead the existence of further harassment.

Essentially ignoring the actual holding of *Rost*, Ms. Farmer hones in on a single clause from the opinion where the court stated "deliberate indifference must, at minimum, cause students to undergo harassment or make them liable or vulnerable to it."  Opposition at 21.  From this single clause, taken out of context, Ms. Farmer divines a new rule that *Davis* liability can be predicated on an institution's failure to respond to sexual harassment if the failure causes a

---

[12] *See* http://www.k-state.edu/fsl/parents_families/faq.html ("Chapter houses are all privately owned and are not owned or controlled by the University.").

student to be *vulnerable* to further harassment that never, in fact, actually occurs.

Such a rule cannot be squared with *Davis*' requirement that an institution's action actually cause discrimination. Indeed, the language from *Rost* merely acknowledges that an institution's deliberate indifference can "cause" further harassment in two ways—directly, such as in *Simpson v. University of Colorado*, 500 F.3d 1170 (10th Cir. 2007), where a university's policy of having football players show recruits a "good time" "natural[ly]" resulted in sexual harassment, or indirectly, as where the school district's failure to respond to LaShonda's reports of harassment emboldened G.F. and permitted him to commit additional harassment.

To be sure, *Davis* insists that a plaintiff show that actual sexual harassment occurred within the institution's "substantial control" and that the institution's deliberate indifference cause discrimination—not there possibility of discrimination. 526 U.S. at 645. This requirement is reflected in *Rost*'s rejection of the plaintiff's claim: even though she was sexually coerced by fellow students multiple times, the institution elected not to engage in an internal investigation or discipline, the plaintiff could not perform academically and had to leave school, the court still concluded the institution was not liable. *Id.* at 1124. Indeed, Judge McConnell's dissent in *Rost* specifically criticizes the majority's holding on this basis. *See Rost*, 511 F.3d at 1131 (McConnell, J., dissenting). But of course, the majority decision in *Rost* controls, not the dissent.

*Rost* and *Escue*, controlling in the Tenth Circuit, are not aberrations. There are multiple examples of federal courts dismissing plaintiffs' Title IX claims for the failure to plead facts supporting "further harassment." *See, e.g.*, *Yoona Ha v. Nw. Univ.*, 2014 WL 5893292, at *2 (N.D. Ill. 2014) ("The complainant does not allege any subsequent *acts* of harassment on [the assailant's] part so there was no further action required to be taken by [the school] to avoid Title IX liability,") (emphasis added); *Thomas v. Meharry Med. Coll.*, 1 F. Supp. 816, 827 (M.D.

Tenn. 2014) ("[B]ecause plaintiff did not continue to experience sexual harassment once he put defendant on notice of [his harasser's] conduct, there is no basis" for liability).

While Ms. Farmer cites several cases for the supposed proposition a "single sexual assault may constitute sufficiently severe sexual harassment for Title IX liability," Opposition at 21, the question of whether a discrete act of sexual harassment is sufficiently severe to create a hostile environment is an entirely separate question from whether an institution's deliberate indifference *caused* the hostile environment.  In most of the cases Ms. Farmer cites, the plaintiff alleged she suffered *further* harassment after reporting to school officials.  *Vance v. Spencer Cty. Pub. Sch. Dist.*, 231 F.3d 253, 257 (6th Cir. 2000) (detailing plaintiff's allegations that she suffered repeated sexual harassment starting in 6th grade and continuing into high school despite her repeated reports to school officials); *Fitzgerald v. Barnstable Sch. Committee*, 504 F.3d 165, 169-70 (1st Cir. 2007) (elementary student who suffered sexual harassment on bus alleged further harassment occurred after she first reported to officials, including a forced "unsettling" interaction between her the perpetrator in gym class).

While *Kinsman v. Florida State University*, No. 15cv235-MW/CAS, Slip Op. (N.D. Fla. Aug. 12, 2015) (Doc. 27-2), did not allege further harassment, the district court there was bound by the Eleventh Circuit's decision in *Williams v. Board of Regents of the University System of Georgia*, 477 F.3d 1282 (11th Cir. 2007), which specifically rejected the causation requirement fundamental to *Rost* and *Escue*.  *See Rost*, 511 F.3d at 1123 (distinguishing *Williams*).  Thus, Tenth Circuit precedent is contrary to *Kinsman*'s holding.[13]  Moreover, in *Kinsman*, the plaintiff alleged she actually encountered her alleged rapist, after the rape, by sharing a class with him—something Ms. Farmer does not allege.  *Kinsman*, Slip. Op. at 10.

Ms. Farmer also cites an unpublished decision in *Spencer v. University of New Mexico*

---

[13] *Kinsman* was also decided before ED admitted its "guidance" is not binding.  *See* Ex. C, Lhamon Letter at 2.

*Board of Regents*, Slip Op., No. 15-CV-141 MCA/SCY (Doc. 27-2) (D.N.M. Jan 11, 2016) (unpublished).  But in *Spencer*, the plaintiff alleged she was subject to a "gang rape" by football players "on and near campus," after she was drugged by them in a dorm room on campus.  Slip Op. at 1-3.   She alleged the school then conducted a sham investigation that purposefully exonerated the football players, despite that they lied during the investigation, a video showed her in a drugged state shortly before the rape, the players' DNA was found on her, and a SANE examination found injuries consistent with rape.  *Id.* at 12-13.  The court held an inference could be drawn from these facts that the school's own actions contributed to the plaintiff's exclusion from its programs and activities.  *Id.*  Here, Ms. Farmer does not make any similar allegations. Her description of *Spencer* as a comparable case strains credulity.

>    b.   <u>Ms. Farmer fails to plead that K-State caused any harassing or discriminatory conduct in K-State's education programs and activities.</u>

Failing to overcome the Tenth Circuit's and the majority view that a plaintiff must show the institution's alleged deliberate indifference caused further harassment, Ms. Farmer argues the further harassment requirement can be met "due to the hostile environment created by the continued presence of the harasser on campus."  Opposition at 22.  In *Rost*, there was evidence the plaintiff could not participate in a math class because she shared it with one of the boys who sexually coerced her and that she eventually had to transfer schools.  *Rost*, 511 F.3d at 1117. Yet the majority held the school did not "cause K.C. to undergo harassment or make her liable or vulnerable to it" because there was no "further harassment."  *Rost*, 511 F.3d at 1123.

Indeed, if a plaintiff is raped off campus and fears encountering her assailants on campus, that environment of subjective fear arises solely from the effect of the rape itself and thus from

the acts of the rapists—not from any intentional conduct on the part of the institution.[14]  As to her hostile environment claim, Ms. Farmer alleges only that she feared she "would encounter" C.M. on campus.  Complaint ¶ 37, 75.  These allegations fail to establish an objectively hostile environment in any anti-discrimination sense, and certainly not one that was *caused* by K-State's conduct, as opposed to C.M.'s.  In sum, her argument boils down to a claim that K-State violated Title IX simply because it did not discipline C.M. as she would have wished.  Complaint at ¶ 78 (alleging K-State was deliberately indifferent because it failed to "investigate or take any disciplinary measures").  As one court observed, this "flies in the face of the Supreme Court precedent established in *Davis*."  *Ha*, 2014 WL 5893292, at *2.

B.      **Ms. Farmer Fails To State A Claim under the KCPA**

1.      Ms. Farmer fails to plead her KCPA claim with particularity.

Ms. Farmer does not dispute that she is required to plead her KCPA claim with particularity.  *See*  Opposition at 25.  She argues her Complaint "identifies specific misrepresentations about the subject: publications stating that Greek life was safe," Opposition at 25-26, but her Complaint merely quotes statements that Ms. Farmer attributes to K-State, without identifying what is false about them.  *See, e.g.*, Complaint ¶¶ 51-53.  Indeed, Paragraph 90 of her Complaint appears to state that the information K-State "post[ed]" about fraternities was technically accurate, albeit only "positive," and that Ms. Farmer thinks K-State should *also* have posted information "regarding risks."  *Id.* ¶ 79.  Ms. Farmer must plead *particular* statements that are alleged to be false and explain what specifically about those statements is false.  *See Jamieson v. Vatterott Educ. Ctr., Inc.*, 473 F. Supp. 2d 1153, 1157 (D. Kan. 2007) ("Plaintiffs only identify the subject of the misrepresentation without specifically identifying what false

---

[14]   There are circumstances where deliberate indifference to prior rapes could be potentially causally related to subsequent rapes, but Ms. Farmer has abandoned this theory of deliberate indifference.  Opposition at 2, n.1.

representation was made about the subject.").  She fails to do so.

In addition, Ms. Farmer fails to plead the timing of the statements.  While she claims she pled the "approximate dates" of the statements, the paragraphs she cites refer to approximate dates that she had private conversations with K-State officials *after* the alleged rape.  *See* Complaint ¶¶ 17-21.  These paragraphs do not plead that false representations were made to Ms. Farmer on these dates.  *Id.*  And it is not enough for Ms. Farmer to claim that the "false representations continued even after she became a K-State student," Opposition at 26, because she has been a K-State student since 2014, leaving a potential two year period when the statements could have been made.  *See Linwood Group, LLC v. LP Linwood Village Apartments, LLC*, 2011 WL 3625000, at *2 (D. Kan. 2011) (finding plaintiff failed to comply with Rule 9(b) where plaintiff alleged fraud occurred over an 18 month period and stating "[f]ailing to identity a specific time period will not suffice under Rule 9(b)").

Ms. Farmer's failure to plead "who" made the alleged false statements also cannot be excused by the assertion that K-State "controls its websites and printed materials."  Opposition at 26.  *United States ex rel. Hafter D.O. v. Spectrum Emergency Care, Inc.* 9 F. Supp. 2d 1273 (D. Kan. 1998), is a False Claims Act case where the court held a relator was not required to plead the particular contents of allegedly false payment claims a medical provider submitted to Medicare because the documents were in the provider's control.  *Id.* at 1273.  But here, Ms. Farmer claims K-State—a *public* entity whose records are subject to open-records requests— made *public* false statements.  Indeed, in cases since *Hafter*, this Court has repeatedly refused to excuse a plaintiff's failure to plead what specific persons employed by a corporate entity made allegedly false statements.  *See, e.g.*, *Jamieson*, 473 F. Supp. 2d at 1158 (rejecting as insufficient pleading that attributed a college's alleged false statements merely to "Vatterott agents and

employees of Vatterott"); *Balfour v. Medicalodges, Inc.*, 2006 WL 314521, at *5 (D. Kan. 2006) (dismissing claim where plaintiff failed to identify the "specific individual" at the defendant who "made false statements when defendant hired him").

        2.      <u>Ms. Farmer fails to plead she was "aggrieved".</u>

Separate and apart from her failure to satisfy Rule 9(b) in reference to the false misrepresentations, Ms. Farmer has failed to plead facts establishing she was "aggrieved."

Ms. Farmer cites *Griffin v. Security Pacific Automotive Financial Services Corporation*, 33 F. Supp. 2d 926 (D. Kan. 1998), for the notion she need only allege that she was "aggrieved" in conclusory fashion.  Opposition at 26-27.  Yet, *Griffin* did not consider the adequacy of the plaintiff's pleading at all.  Instead, *Griffin* resolved a motion for summary judgment, where the adequacy of pleading had necessarily already been conceded.  *Id.* at 927.  In any event, the Supreme Court has since held a party cannot satisfy the lesser notice pleading standard by offering "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Ms. Farmer also suggests that, because she has pled specific damages she claims to have suffered, she has necessarily pled that she was "aggrieved."  Opposition at 27.  But Ms. Farmer must plead *causation* as between alleged misrepresentation and damages to show she was aggrieved.  *Finstad v. Washburn University of Topeka*, 845 P.2d 685, 691 (Kan. 1993); *see also Benedict v. Altria Group, Inc.*, 241 F.R.D. 668, 678 (D. Kan. 2007) (citing *Finstad* for the proposition that the KCPA requires a plaintiff to show a "causal connection").  Ms. Farmer does not plead causation at all; therefore, her claim fails.

C.    **Ms. Farmer Fails To State A Claim of Negligence**

1.    K-State did not have a duty to protect Ms. Farmer from the criminal acts of third parties.

*Nero v. Kansas State University*, 861 P.2d 768 (Kan. 1993), and *Gragg v. Wichita State University*, 934 P.2d 121 (Kan. 1997), foreclose the notion that an institution has a "special relationship" with students and guests requiring it to protect them from third-party criminal acts. Faced with these holdings, Ms. Farmer attempts to salvage her negligence claim based solely on the argument that K-State "assumed" a "legal duty" under § 324A of the Restatement (Second) of Torts to protect her from fraternity members because she allegedly pled facts "showing K-State controlled its fraternity system." Opposition at 27.

Notably, Ms. Farmer cites no case holding that a university can be sued in negligence under § 324A based on its alleged control over fraternities. Indeed, the various § 324A cases Ms. Farmer cites involve claims arising from undertakings to provide professional services. Opposition at 27-28. That Kansas courts would recognize such a novel theory after rejecting the more straightforward "special relationship" theory flies in the face of *Nero* and *Gragg*.

In any event, under § 324A, "[o]ne who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person for his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care . . . ." Restatement (Second) of Torts, § 324A. Kansas courts have construed this language to mean that "the extent of the undertaking should define the scope of the duty." *See McGree v. Chalfant*, 806 P.2d 980, 986 (Kan. 1991). Thus, for example, if an individual undertakes to escort a drunk person to his car, but does not undertake to see him safely home, the individual cannot be liable in negligence if the drunk person decides to drive home drunk, causes a crash, and injures a third party. *Id.* at 986.

26

In this respect, Ms. Farmer's own Complaint alleges that K-State "delegates management of these exceptionally dangerous entities to untrained students," that K-State's event registration form "explicitly leaves the chapter with 'full responsibility' for the enforcement of [laws]," that K-State's police "do not have the same access to the fraternity houses as to other student housing," that K-State "allows fraternities free reign," and that K-State "refuse[s] to respond to fraternity sexual violence." Complaint ¶¶ 58, 60, 64, 68 and pp. 13-14.

Far from pleading that K-State has assumed an undertaking to regulate the off-campus conduct of individual fraternity members (let alone their alleged criminal, sexual conduct), Ms. Farmer's Complaint pleads that K-State has *disclaimed* such an undertaking, and, in that respect, pleads her out of court. *See Kaufman v. Univ. of Colo. at Boulder*, 2015 WL 7014440, at *6 (D. Colo. 2015) ("In brief, [plaintiff] has pleaded himself out of court by alleging facts which show he has no claim.") (internal quotations omitted).

Ms. Farmer also appears to argue that K-State assumed a duty to speak truthfully about fraternities by "advertis[ing] and promoting its fraternity system," and therefore undertook to do so with "reasonable care." Opposition at 28. This is an entirely new theory, not pled in the Complaint. *See, e.g.*, *Car Carriers, Inc. v. Ford Motor, Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984) ("However, it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."). Moreover, § 324A speaks to a duty that a party assumes when it "undertakes, gratuitously or for consideration, to render *services* to another." Restatement (Second) of Torts § 324A. Ms. Farmer cites no case holding that promotion constitutes the rendering of a "service[] to another." Restatement (Second) of Torts § 324A.

Finally, to the extent Ms. Farmer alleges the duty is one to exercise reasonable care in speaking about fraternities, then Ms. Farmer must plead facts supporting that she *relied* on the

27

alleged misrepresentations and suffered injury.  *Id.* ("the harm is suffered because of reliance of the other or the third person upon the undertaking").  As discussed *supra*, Ms. Farmer does not plead that she read any statements about the safety of fraternities prior to her alleged injuries, let alone that she relied on them.  Thus, her claim for negligent misrepresentation fails.

2.  <u>K-State is immune from Ms. Farmer's negligence claim.</u>

Ms. Farmer appears to concede the KTCA's "enforcement of the law" exception at K.S.A. § 75-6104(c) bars her negligence claim to the extent it is predicated on K-State's alleged failure to enforce Title IX obligations.

Ms. Farmer argues the "discretionary function" exception of the KTCA does not apply to bar her § 324A claim because K-State had a "common law" duty under § 324A to protect Ms. Farmer from C.M.  Opposition at 29 (citing *Nero*).  But post-*Nero* cases have clarified that discretionary function immunity remains available unless there is a *mandatory* duty to act in a specific way—a general common law duty to exercise reasonable care does not defeat immunity. *See Thomas v. County Com'rs of Shawnee County*, 262 P.3d 336, 339, Syllabus ¶ 5 (Kan. 2011) ("The existence of a general duty of care is distinct from a mandatory duty or guideline that eliminates the possibility of immunity under the exception.").

A "mandatory" duty is one that "leaves little to no room for individual decision making, exercise of judgment, or use of skill, and qualifies a defendant's actions as ministerial rather than discretionary."  *Id.* at 354.  Put simply, there is no Kansas law, statutory or otherwise, that governs how institutions like K-State should regulate, or not regulate, fraternities, much less how a public university should respond to alleged acts of criminal misconduct committed against students outside of K-State's substantial control.[15]  To the contrary, many cases hold that an

---

[15]  To the extent Ms. Farmer claims Title IX and its regulations provide such mandatory guidelines, she is wrong. *See Davis*, 526 U.S. at 647 ("Likewise, the dissent erroneously imagines that victims of peer harassment now have a

institution's decisions regarding student conduct and student discipline are inherently *discretionary*, not mandatory.   *See* Opening Brief (Doc. 15) at 27-28.   Therefore, the discretionary function exception applies to bar Ms. Farmer's negligence claim.

### D.      This Court Should Not Give Ms. Farmer Leave To Amend

Hedging her bets, Ms. Farmer asks that this Court give her leave to amend in the event the Court finds her Complaint fails to state a claim.   *See* Opposition at 25, 27.   Of course, she could have sought leave to amend after she reviewed K-State's motion pointing out the deficiencies, but she elected not to.   Local Rule 15.1 is clear: a party wishing to amend her complaint must file a motion setting forth a "concise statement of the amendment or leave sought," and attaching the "proposed pleading or other document."   *See* Local Rule 15.1(a).   By circumventing the rule and making a cursory request in a brief, Ms. Farmer leaves the Court and K-State without any ability to evaluate, or respond to, the request.   This Court has typically denied cursory requests for leave to amend made in briefs, and it should deny Ms. Farmer's similar request here.   *See, e.g.*, *McCoy v. City of Independence, Kan.*, 2013 WL 424858, at *1 n.3 (D. Kan. 2013); *Hammer v. Sam's East, Inc.*, 2013 WL 3756573, at *3 (D. Kan. 2013).

## IV.      CONCLUSION

Ms. Farmer inappropriately seeks to hold K-State liable for events that occurred off campus, in a private setting over which K-State lacked substantial control and based on alleged misrepresentations about safety that she apparently did not even read until after the alleged rape. As such, her Complaint fails to state viable claims and this Court should dismiss all counts.

---

Title IX right to make particular remedial demands.  In fact, as we have previously noted, courts should refrain from second-guessing the disciplinary decisions made by school administrators.") (internal citations omitted).  Indeed, *Yeasin*, rejected the notion Title IX creates a mandatory duty that has legal effect regardless of what an institution's policies actual say.  360 P.3d at 430.

Date:   July 25, 2016

**HUSCH BLACKWELL LLP**


/s/ Derek T. Teeter
ALLAN V. HALLQUIST    D. KAN. NO. 78356
HAYLEY E. HANSON      KS BAR NO. 20087
DEREK T. TEETER       KS BAR NO. 23242
MICHAEL T. RAUPP      KS BAR NO. 25831
HUSCH BLACKWELL LLP
4801 Main, Suite 1000
Kansas City, Missouri  64112
(816) 983-8000
(816) 983-8080 (FAX)
allan.hallquist@huschblackwell.com
hayley.hanson@huschblackwell.com
derek.teeter@huschblackwell.com
michael.raupp@huschblackwell.com

***Attorneys for Defendant Kansas State University***

## CERTIFICATE OF SERVICE

I hereby certify that on July 25, 2016, I filed the foregoing document via the Court's ECF system, which will cause a true and correct copy of the same to be served electronically on all ECF-registered counsel of record.

/s/ Derek T. Teeter
**Attorney for Defendant**