# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| TESSA FARMER, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:16-cv-02256-JAR-GEB |
| | ) |
| KANSAS STATE UNIVERSITY, | ) |
| an agency of the State of Kansas, | ) |
| | ) |
|     Defendant. | ) |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION
## TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL AND STAY CASE

Date:   March 22, 2017

**HUSCH BLACKWELL LLP**

/s/ Derek T. Teeter
ALLAN V. HALLQUIST   D. KAN. NO. 78356
HAYLEY E. HANSON   KS BAR NO. 20087
DEREK T. TEETER   KS BAR NO. 23242
MICHAEL T. RAUPP   KS BAR NO. 25831
HUSCH BLACKWELL LLP
4801 Main, Suite 1000
Kansas City, Missouri  64112
(816) 983-8000
(816) 983-8080 (FAX)
allan.hallquist@huschblackwell.com
hayley.hanson@huschblackwell.com
derek.teeter@huschblackwell.com
michael.raupp@huschblackwell.com

*Attorneys for Defendant Kansas State University*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................................... ii

I.    INTRODUCTION/SUMMARY OF THE ARGUMENT ...................................................... 1

II.   FACTUAL BACKGROUND ................................................................................................ 2

III.  QUESTION PRESENTED ..................................................................................................... 2

IV.  ARGUMENT AND AUTHORITIES ..................................................................................... 2

    A.   Standard ...................................................................................................................... 2

    B.   This Court's Order Addresses A Controlling Question Of Law Regarding Whether Plaintiff Is Required To Plead Facts Demonstrating She Suffered "Further Harassment." ................................................................................................ 3

    C.   There Is Substantial Ground For Difference Of Opinion On The "Further Harassment" Requirement. ........................................................................................ 4

    D.   Resolving The "Further Harassment" Question May Advance The Ultimate Termination Of The Litigation. .................................................................................. 4

    E.   This Court Should Stay The Case Pending The Interlocutory Appeal. ...................... 11

V.   CONCLUSION .................................................................................................................... 12

CERTIFICATE OF SERVICE ................................................................................................... 14

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Beltronics USA, Inc. v. Midwest Inventory Distribution LLC*,
   545 F. Supp. 2d 1188 (D. Kan. 2008) ...................................................................................... 11

*Clapper v. Amnesty Int'l USA*,
   133 S. Ct. 1138 (2013) .............................................................................................................. 10

*Davis v. Next Friend LaShonda D. v. Monroe County Bd. of Educ.*,
   526 U.S. 629 (1999) ......................................................................................................... 3, 5, 6, 9

*Doe v. Bibb County School District*,
   83 F. Supp.3d 1300 (M.D. Ga. 2015) ....................................................................................... 9

*Elgamil v. Syracuse Univ.*,
   2000 WL 1264112 (N.D. N.Y. 2000) ....................................................................................... 7

*Escue v. N. Okla. Coll.*,
   450 F.3d 1146 (10th Cir. 2006) ............................................................................................ 4, 5

*Fox v. TransAm Leasing, Inc.*,
   2015 WL 4243464 (D. Kan. 2015) .............................................................................. 2, 3, 4, 10

*Frazer v. Temple Univ.*,
   25 F. Supp. 3d 598 (E.D. Pa. 2014) ......................................................................................... 8

*Gebser v. Lago Vista Indep. Sch. Dist*,
   524 U.S. 274 (1998) .................................................................................................................... 5

*Homeland Stores, Inc. v. Resolution Tr. Corp.*,
   1993 WL 21069 (1993) ............................................................................................................. 11

*In re Indep. Serv. Orgs. Antitrust Litig.*,
   No. 94-2102-EEO, 1997 WL 450028 (D. Kan. July 17, 1997) ............................................ 4

*Karasek v. Regents of Univ. of Cal.*,
   2015 WL 8527338 (N.D. Cal. 2015) ............................................................................... 6, 8, 9

*Kelly v. Yale Univ.*,
   2003 WL 1563424 (D. Conn. 2003) ......................................................................................... 6

*Lopez v. Regents*,
   5 F. Supp. 3d 1106 (N.D. Cal. 2013) ....................................................................................... 6

*Los Angeles v. Lyons*,
    461 U.S. 95 (1983) .............................................................................................................. 10

*M.D. v. Bowling Green Indep. Sch. Dist.*,
    2017 WL 390280 (W.D. Ky. 2017) ....................................................................................... 8

*Moore v. Murray State University*,
    2013 WL 960320 (W.D. Ky. 2013) ................................................................................ 6, 7, 8

*Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*,
    511 F.3d 1114 (10th Cir. 2008) ......................................................................................... 4, 5

*Rural Water Dist. No. 4 v. City of Eudora, Kan.*,
    875 F. Supp. 2d 1260 (D. Kan. 2012) ..................................................................................... 4

*Rural Water Dist. No. 4, Douglas Cty., Kan. v. City of Eudora, Kan.*,
    720 F.3d 1269 (10th Cir. 2013) ............................................................................................. 4

*Snethen v. Bd. of Public Educ. For City of Savannah*,
    2008 WL 766569 (S.D. Ga. 2008) ......................................................................................... 9

*State of Utah By & Through Utah State Dep't of Health and Kennecott Corp.*
    14 F.3d 1489 (10th Cir. 1994) ............................................................................................... 3

*Tally v. Morris*,
    1989 WL 134567 (D. Kan. 1989) ........................................................................................ 11

*Thomas v. Meharry Med. Coll.*,
    1 F. Supp. 3d 816 (M.D. Tenn. 2014) ................................................................................ 7, 8

*Yoona Ha v. Nw. Univ.*,
    2014 WL 5893292 (N.D. Ill. 2014) .................................................................................... 7, 8

## Statutory Authorities

28 U.S.C. § 1292(b) ...................................................................................... 1, 2, 3, 10, 11, 12

## Rules and Regulations

Fed. R. App. P. 5(a)(3) ............................................................................................................ 3

**I.     INTRODUCTION/SUMMARY OF THE ARGUMENT**

As part of its recent Order (Doc. 46) granting in part and denying in part K-State's Motion To Dismiss For Failure To State A Claim (Doc. 14), this Court resolved the "purely legal question" of whether a Title IX plaintiff must plead facts demonstrating that an institution's alleged deliberate indifference caused further harassment; this Court held that further harassment need not be pled and that Ms. Farmer's sole remaining Title IX claim may survive based on her allegations that K-State's alleged deliberate indifference caused her to be "liable or vulnerable" to further harassment.

While K-State recognizes that the Court has made its determination, there are substantial grounds for difference of opinion concerning whether pleading "further harassment" is an essential element of Ms. Farmer's claim. This Court concluded there is no definitive Tenth Circuit case on point. And while this Court cited various district court cases rejecting the "further harassment" requirement, those very decisions expressly recognize the deep split of federal authority on the issue and acknowledge the cases K-State cited in support of its position.

In light of these factors, K-State respectfully moves the Court to certify the "further harassment" question as one meriting interlocutory appeal under 28 U.S.C. § 1292(b). Given that Ms. Farmer does not dispute her failure to plead further harassment, were the Tenth Circuit to rule in K-State's favor, this case would be over. It is most efficient for the Tenth Circuit to resolve this legal question now, before the parties engage in costly discovery and further proceedings. This is especially true in this case, where the defendant is a public institution funded by the taxpayers. For similar reasons, if the Court agrees with K-State and certifies its Order for interlocutory appeal, it should also stay all further proceedings until the conclusion of appellate proceedings.

## II. FACTUAL BACKGROUND

The factual background of this case, taking all of Ms. Farmer's factual allegations as true at this procedural stage, is recited in the Court's Order. Doc. 46 at 3-10. That factual background serves as the basis for Ms. Farmer's Title IX claim, which is the claim at issue in this motion and the sole claim remaining in the case.

## III. QUESTION PRESENTED

Should this Court certify its Order for interlocutory appeal so the Tenth Circuit can determine the purely legal question of whether Ms. Farmer is required to plead facts demonstrating that K-State's alleged deliberate indifference caused "further harassment"?

## IV. ARGUMENT AND AUTHORITIES

### A. Standard

Pursuant to 28 U.S.C. § 1292(b)[1], a district court may certify an order for interlocutory appeal where the order: (i) involves a controlling question of law; (ii) as to which there is a substantial ground for difference of opinion; and (iii) where an immediate appeal of the order may materially advance the ultimate termination of the litigation. *Id.*; *see also Fox v. TransAm Leasing, Inc.*, 2015 WL 4243464, at *2-4 (D. Kan. 2015) (articulating the "three prongs" of the § 1292(b) analysis). In the event the district court grants such a certification, the matter is referred to the Tenth Circuit which "may thereupon, in its discretion, permit an appeal to be taken from such order." 28 U.S.C. § 1292(b).

The Tenth Circuit has noted that the procedure in § 1292(b) may be utilized in "extraordinary cases in which extended and expensive proceedings can be avoided by immediate

---

[1] "When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order." 28 U.S.C. § 1292(b).

2

final decision of controlling questions encountered early in the action." *State of Utah By & Through Utah State Dep't of Health v. Kennecott Corp.*, 14 F.3d 1489, 1495 (10th Cir. 1994).

Section 1292(b) technically requires the certification to be contained in the order from which the appeal is taken. However, because the content of an order is not known until its issuance, it is typical practice for a party to file a motion requesting the certification; if the Court then grants the motion, it issues an amended order including the certification. *See* Fed. R. App. P. 5(a)(3) ("If a party cannot petition for appeal unless the district court first enters an order granting permission to do so or stating that the necessary conditions are met, the district court may amend its order, either on its own or in response to a party's motion, to include the required permission or statement."); *see also Fox*, 2015 WL 4243464, at *4.

**B.    This Court's Order Addresses A Controlling Question Of Law Regarding Whether Plaintiff Is Required To Plead Facts Demonstrating She Suffered "Further Harassment."**

On pages 21 to 27, this Court's Order discusses and resolves the question of whether Ms. Farmer is required to allege that K-State's deliberate indifference caused her to suffer "further harassment." K-State argued in its briefing on the Motion To Dismiss that the Supreme Court's decision in *Davis* requires this element and, without it, Ms. Farmer could not establish that K-State's own actions resulted in a violation of Title IX. *See* Memorandum In Support (Doc. 15) at 16-18; Reply (Doc. 38) at 19-23. However, the Court held that Ms. Farmer needed only to plead facts showing that K-State's alleged deliberate indifference caused her to be "liable or vulnerable" to further harassment. *See* Doc. 46 at 27.

As the Court noted in its Order, whether or not Ms. Farmer is required to plead "further harassment" is a "purely legal question." *Id.* at 21-22. As the Court also noted, Ms. Farmer "does not contest that she has not alleged further harassment, in the strictest sense, at the hands of the alleged assailant after her report of sexual assault." *Id.* at 21. Thus, this "purely legal

3

question" is also a "controlling" one because, had the Court accepted K-State's arguments, Ms. Farmer's sole remaining Title IX claim would have failed to state a claim, and this litigation would have terminated. *Fox*, 2015 WL 4243463, at *3 ("An issue is controlling if interlocutory reversal would terminate the action or substantially affect the course of litigation.") (citing *In re Indep. Serv. Orgs. Antitrust Litig.*, No. 94-2102-EEO, 1997 WL 450028, at *4 (D. Kan. July 17, 1997)). An appellate ruling in K-State's favor would, in a similar fashion, compel dismissal of Ms. Farmer's claim and the termination of this case.

### C. There Is Substantial Ground For Difference Of Opinion On The "Further Harassment" Requirement.

Through its briefing on the motion to dismiss, K-State demonstrated colorable arguments in support of its position that a plaintiff must plead "further harassment." This Court has previously described that "colorable arguments" in support of an alternative position (that could then be accepted by the court of appeals) illustrate the existence of a "substantial ground for difference of opinion." *Rural Water Dist. No. 4 v. City of Eudora, Kan.*, 875 F. Supp. 2d 1260, 1274 (D. Kan. 2012), *aff'd in part, rev'd in part sub nom. Rural Water Dist. No. 4, Douglas Cty., Kan. v. City of Eudora, Kan.*, 720 F.3d 1269 (10th Cir. 2013); *see also Fox*, 2015 WL 4243463, at *3. Indeed, there is a split of authority among federal district courts, with several opinions holding that "further harassment" is an essential element, further demonstrating there is substantial ground for difference of opinion.

As this Court correctly described, K-State relied primarily on language from two Tenth Circuit cases to support its argument that "further harassment" is essential to the viability of Ms. Farmer's claim. *See Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1123-25 (10th Cir. 2008) (noting that the plaintiff "does not contend that further sexual harassment occurred as a result of the district's deliberate indifference"); *Escue v. N. Okla. Coll.*,

4

450 F.3d 1146, 1155 (10th Cir. 2006) ("Significantly, we note that Ms. Escue does not allege that further sexual harassment occurred as a result of NOC's deliberate indifference").

This Court engaged in a detailed analysis of these cases and ruled that they did not go so far as to create an independent requirement for Ms. Farmer to plead that K-State's alleged deliberate indifference caused further harassment. Doc. 46 at 22-23. But neither did this Court hold that *Rost* and *Escue* explicitly reject the "further harassment" requirement. Rather, this Court noted that the discussions of "further harassment" in *Rost* and *Escue* arose in a discussion of whether the institution was "deliberately indifferent" to the initial sexual misconduct. Accordingly, this Court ruled that, as opposed to creating a separate "further harassment" requirement, the lack of further harassment is a "significant" factor to weigh in evaluating the alleged existence of deliberate indifference. *Id.*

K-State fully agrees that Ms. Farmer's inability to identify any further harassment will be a significant factor in determining whether K-State was deliberately indifferent to her reported sexual assaults. But K-State respectfully submits that the question of whether K-State's alleged deliberate indifference *caused* further harassment is a separate and distinct element that is essential to satisfy Justice Kennedy's admonition in *Davis* that Title IX liability arising from student-on-student sexual misconduct is triggered only when a funding recipient's "*own misconduct*" "excludes persons from participation" in its education programs and activities. *Davis v. Next Friend LaShonda D. v. Monroe County Bd. of Educ.*, 526 U.S. 629, 640-41 (1999); *see also id.* at 642-43 ("[W]e concluded in *Gebser* that recipients could be liable in damages only where their own deliberate indifference effectively 'cause[d]' the discrimination.").

This Court applied, in literal terms, *Davis*'*s* statement that an institution can be liable if its deliberate indifference "causes students to undergo harassment or makes them liable or

5

vulnerable to it," *Davis*, 526 U.S. at 630, in finding that Ms. Farmer needed only to allege vulnerability. And some district courts, which the Court's Order cites, have arguably reached this same broad conclusion. *See, e.g.*, *Karasek v. Regents of Univ. of Cal.*, 2015 WL 8527338, at *12 (N.D. Cal. 2015); *Kelly v. Yale Univ.*, 2003 WL 1563424, at *4 (D. Conn. 2003).[2]

Yet, *Davis* itself involved allegations of further harassment (the plaintiff was groped *after* reporting the initial harassment to school officials), and therefore other courts have held that *Davis* does in fact require a showing of *actual* further harassment. For example, *Lopez v. Regents of the University of California*, 5 Supp. 3d 1106, (N.D. Cal. 2013) specifically considered this same language from *Davis* ("causes students to undergo harassment or makes them liable or vulnerable to it") and noted that, in cases where a plaintiff alleges deliberate indifference to her own report of harassment "[c]ourts have construed this language as requiring Title IX plaintiffs to demonstrate that a federal funding recipient's deliberate indifference caused them to be subjected to further discrimination or deprivation." *Id.* at 1125-26 (citing *Doe v. Blackburn College*, 2012 WL 640046 (C.D. Cal. 2012)). *Lopez* went on to dismiss a plaintiff's Title IX claim both because "Plaintiffs fail to allege sufficient facts to demonstrate deliberate indifference . . . or that any such deliberate indifference *caused* [plaintiff] to be subject to further harassment or deprivation of rights." *Id.* (emphasis in original).

Similarly, in *Moore v. Murray State University*, 2013 WL 960320 (W.D. Ky. 2013), the plaintiff alleged—as Ms. Farmer does here—that the university inadequately responded to her report of a student-on-student rape. Dismissing the case for failure to state a claim despite the plaintiff's assertion that the rape occurred in a dorm on campus and she was "not able to return

---

[2] K-State attempted to distinguish several other cases in its reply, noting that several of them *did* allege further harassment, and also noted that "the question of whether a discrete act of sexual harassment is sufficiently severe to create a hostile environment is an entirely separate question from whether an institution's deliberate indifference *caused* the hostile environment." Doc. 38 at 21-22.

and participate in [the school's] women's track and field team and ultimately [lost] her scholarship," the court stated:

> Moore has not alleged that MSU had actual knowledge of sexual harassment *prior* to the assault and there are no allegations that the University was deliberately indifferent to additional incidents of harassment *after* the assault. In fact, the complaint contains no allegations that any further harassment occurred after the assault…. The critical piece missing from Moore's complaint is any allegation that she was 'subjected' to or experienced sexual harassment *after* notifying [the school] about the assault . . . .

*Id.* at *4 (emphasis in original).

The same is true here. Ms. Farmer abandoned any claim that K-State had any knowledge of harassment prior to her alleged assault, and there is no allegation of any conduct of a sexual nature that could constitute harassment after the assault. Concluding its analysis after surveying additional case law, the *Murray State* court clearly articulated a "further harassment" element *distinct* from the "deliberate indifference" element:

> Accordingly, even if MSU was deliberately indifferent to Moore, there are no allegations that the indifference caused her to experience further or additional harassment. As a result, her cause of action under Title IX fails as a matter of law.

*Id.* at *5.

Numerous district cases follow this rule. K-State cited several in its briefing. *See, e.g.*, *Yoona Ha v. Nw. Univ.*, 2014 WL 5893292, at *2 (N.D. Ill. 2014) ("The complainant does not allege any subsequent *acts* of harassment on [the assailant's] part so there was no further action required to be taken by [the school] to avoid Title IX liability.") (emphasis added); *Thomas v. Meharry Med. Coll.*, 1 F. Supp. 3d 816, 827 (M.D. Tenn. 2014) ("[B]ecause plaintiff did not continue to experience sexual harassment once he put defendant on notice of [his harasser's] conduct, there is no basis" for liability.); *see also Elgamil v. Syracuse Univ.*, 2000 WL 1264112, at *8 (N.D. N.Y. 2000) ("As discussed above, the Supreme Court now requires some harm to

7

have befallen plaintiff *after* the school learned of the harassment.  As there have been no credible allegations of subsequent harassment, no liability can be attributed to the University.") (emphasis in original).

Indeed, *Karasek*, one of the cases this Court cited in support of its conclusion that a showing of "further harassment" is not required, recognized the split of authority, acknowledging several of the cases K-State cited in its briefing on the motion to dismiss:

> As the University points out, there are a number of Title IX decisions that appear to endorse this view of a "further harassment" requirement. *See, e.g.*, *Yoona Ha v. Nw. Univ.*, No. 14-cv-00895, 2014 WL 5893292, at *2 (N.D. Ill. Nov. 13, 2014) (on appeal) (plaintiff's allegations that she had "an occasional glimpse" of her assailant at her school and that "knowledge of [his] presence on the campus caused her considerable grief" were not sufficient to support a Title IX claim; "[t]he complaint does not allege any subsequent acts of harassment on [the assailant's] part so there was no further action required to be taken by [the school] to avoid Title IX liability"); *Frazer v. Temple Univ.*, 25 F. Supp. 3d 598, 613-14 (E.D. Pa. 2014) (dismissing Title IX claim where plaintiff's only allegations of subsequent harassment were that her harasser "followed her, sat outside her dormitory, and...stood directly beside her [in the cafeteria] and stared at her while she was having a conversation with a fellow student"); *Thomas v. Meharry Med. Coll.*, 1 F. Supp. 3d 816, 827 (M.D. Tenn. 2014) ("[B]ecause plaintiff did not continue to experience sexual harassment once he put defendant on notice of [his harasser's] conduct, there is no basis to find defendant's response to plaintiff's sexual harassment report amounted to deliberate indifference."). I do not agree with the reasoning in those cases.

*Karasek*, 2015 WL 8527338, at *10-11.

Moreover, the line of authority supporting K-State's position continues to grow.  For example, less than two months ago, and after briefing on K-State's Motions To Dismiss was complete, another decision expressly recognized the existence of cases adopting K-State's argument, stating "[c]ourts have held that a plaintiff must experience further harassment after a defendant acquires knowledge of the initial harassment for his or her claim to be viable."  *M.D. v. Bowling Green Indep. Sch. Dist.*, 2017 WL 390280, at *6, n.4 (W.D. Ky. 2017) (citing *Ha*, *Meharry*, and *Murray State*).

8

K-State respectfully submits that the language in *Davis* referencing "vulnerable to" further harassment applies only in the situation where an institution is alleged to have been deliberately indifferent to *prior* reports of sexual misconduct and where that prior deliberate indifference made the plaintiff more vulnerable to a subsequent attack that the plaintiff experienced. As this Court recognized, that is the Title IX theory that Ms. Farmer already abandoned. *See* Doc. 46 at 12 *n.28. The "vulnerable to" theory has no application where an institution is alleged to have been deliberately indifferent only in its response to the plaintiff's own report. This distinction was explained in the K-12 context by *Doe v. Bibb County School District*, 83 F. Supp.3d 1300 (M.D. Ga. 2015): "A Title IX violation can be based on deliberate indifference *before* an attack that makes a plaintiff *more vulnerable to the attack* or deliberate indifference *after* an attack that *causes* a plaintiff to endure *additional harassment.*" *Id.* at 1306 (emphasis added); *see also Snethen v. Bd. of Public Educ. For City of Savannah*, 2008 WL 766569, at *2 (S.D. Ga. 2008) (articulating the same "two" theories). The line of authority illustrated by *Karasek* misapplies the "vulnerable to" theory by extending it to cases, such as that now at issue here, where the plaintiff alleges only that the school was deliberately indifferent to her own report of sexual misconduct.

K-State's purpose is not to convince this Court to change its ruling, but rather to illustrate that K-State's argument has considerable support. The authorities cited above illustrate that there is indeed a significant divergence of authority across the nation with respect to the "further harassment" element. Especially given this Court's determination that there is not a controlling Tenth Circuit decision, these facts illustrate a "substantial ground for difference of opinion" that justifies certification for interlocutory appeal.

9

### D. Resolving The "Further Harassment" Question May Advance The Ultimate Termination Of The Litigation.

There is little doubt that having the "further harassment" question resolved by the Tenth Circuit will materially advance the ultimate termination of this litigation. First, because Ms. Farmer does not contest that she fails to adequately plead "further harassment," an appellate decision in K-State's favor will mean Ms. Farmer's sole remaining Title IX claim fails. This will bring the case to a close and avoid a year or more of costly litigation and further expenditure of scarce judicial resources. *See Fox*, 2015 WL 4243463, at *3 (noting that interlocutory appeals under § 1292(b) are typically limited to cases in which "extended and expensive proceedings probably can be avoided by immediate and final decision of controlling questions encountered early in the action").

Second, even if the Tenth Circuit affirms this Court and concludes that Ms. Farmer's claim may survive on an allegation that K-State's alleged deliberate indifference made her "liable or vulnerable to harassment," a decision would likely provide important guidance to this Court and the parties as to what sort of factual showing is actually necessary to establish that one is "liable or vulnerable to harassment."[3] Indeed, it appears clear under Article III's "case and controversy" requirement that Ms. Farmer's *subjective belief* that she is more vulnerable to harassment is not enough. *See Los Angeles v. Lyons*, 461 U.S. 95, 107 n.8 (1983) ("It is the *reality* of the threat of repeated injury that is relevant to the standing inquiry, not the plaintiff's subjective apprehensions.") (emphasis added); *see also Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1151 (2013) ("[T]hreatened injury must be *certainly impending* to constitute injury in fact,

---

[3] For example, while Ms. Farmer pled she was fearful (e.g., Doc. 1, ¶¶ 4, 34, 42, 72, 80), she did not plead any alleged facts to demonstrate she was more vulnerable to sexual harassment. Specifically, although Ms. Farmer pled she had a "fear of encountering the student-assailant on campus" (Doc. 1, ¶ 37), she does not plead that she ever saw him on campus, much less any facts to show an objective basis for concluding she had increased vulnerability to further sexual harassment.

and . . . [a]llegations of *possible* future injury are not sufficient."). Thus, guidance from the Tenth Circuit regarding the parameters of the theory would inform the parties about what allegations are necessary, and if those are met, then what evidence is required to demonstrate a sustainable case at summary judgment and any later stages of the case.

### E.     This Court Should Stay The Case Pending The Interlocutory Appeal.

K-State also requests that the Court exercise its discretion to stay the district court proceedings pending any interlocutory appeal. Doing so could avoid extensive and costly discovery, motion practice, and expenditure of further judicial resources if the Tenth Circuit accepts the interlocutory appeal, and even more so if the Tenth Circuit agrees with K-State. And even if it does not, an appeal will likely define the contours of the "liable or vulnerable to harassment" theory, which will allow the parties and the Court to appropriately focus and structure the balance of the case.

Under § 1292(b), this Court is empowered to stay the underlying district court proceeding while an interlocutory appeal is pending. *See* 28 U.S.C.§ 1292(b) ("application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order"). And, in at least two cases, this Court has previously done just that. *See, e.g.*, *Homeland Stores, Inc. v. Resolution Tr. Corp.*, 1993 WL 21069, at *1 (1993) (staying case pending § 1292(b) appeal); *Tally v. Morris*, 1989 WL 134567, at *6 (D. Kan. 1989) (same). Further, this Court has used its inherent authority to stay cases pending an interlocutory appeal when the underlying lawsuit was at an early stage and the disposition on appeal could avoid costly litigation and expenditure of judicial resources. *See, e.g.*, *Beltronics USA, Inc. v. Midwest Inventory Distribution LLC*, 545 F. Supp. 2d 1188, 1190 (D. Kan. 2008) (staying district court trademark proceeding where appeal of early injunction ruling "would

11

significantly advance the course of this litigation" and the "time and effort of the parties and the court would be best served by [a stay]").

Here, the case is at an early procedural stage. The Court issued its ruling on K-State's Motion To Dismiss, but an answer has yet to be filed and discovery has not commenced. If an interlocutory appeal takes place without a stay, K-State and Ms. Farmer may well engage in months of costly discovery and potential additional motion practice, only to have an opinion from the Tenth Circuit effectively terminate the case or define the boundaries of the remaining claim. That opinion would likely render discovery and motion practice that has already taken place irrelevant or excessive. Thus, principles of judicial economy weigh heavily in favor of a stay.

## V. CONCLUSION

The "purely legal question" of

> whether it is enough for a Title IX plaintiff to allege a deprivation of her educational access and that the funding recipient's deliberate indifference left her liable or vulnerable to further harassment, or whether she must also allege further harassment actually occurred after the funding recipient was on notice of the initial harassment

(Doc. 46 at 21-22) is potentially dispositive of this case and is one where there is substantial ground for difference of opinion. Thus, the Court should amend its Order to include a certification for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) and stay all proceedings in this case pending resolution of any appeal granted by the Tenth Circuit.

Date:   March 22, 2017                          **HUSCH BLACKWELL LLP**


/s/ Derek T. Teeter
ALLAN V. HALLQUIST    D. KAN. NO. 78356
HAYLEY E. HANSON     KS BAR NO. 20087
DEREK T. TEETER       KS BAR NO. 23242
MICHAEL T. RAUPP      KS BAR NO. 25831
HUSCH BLACKWELL LLP
4801 Main, Suite 1000
Kansas City, Missouri  64112
(816) 983-8000
(816) 983-8080 (FAX)
allan.hallquist@huschblackwell.com
hayley.hanson@huschblackwell.com
derek.teeter@huschblackwell.com
michael.raupp@huschblackwell.com

*Attorneys for Defendant Kansas State University*

13

**CERTIFICATE OF SERVICE**

I hereby certify that on March 22, 2017, I filed the foregoing document via the Court's ECF system, which will cause a true and correct copy of the same to be served electronically on all ECF-registered counsel of record.

/s/ Derek T. Teeter
*Attorney for Defendant*
