# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

TESSA FARMER,

    Plaintiff,

v.

KANSAS STATE UNIVERSITY,

    Defendant.

Case No. 16-CV-2256-JAR-GEB

## MEMORANDUM AND ORDER

    Plaintiff Tessa Farmer filed this action against Defendant Kansas State University ("KSU"), alleging Title IX, negligence, and Kansas Consumer Protection Act claims based on KSU's deliberate indifference in response to her report that she was sexually assaulted by a KSU student at a KSU fraternity house. KSU moved to dismiss Plaintiff's claims. Relevant to her Title IX claim, KSU argued that Plaintiff had not alleged sexual harassment in a KSU "program or activity," and that she had not alleged she suffered "further harassment" after her report of sexual assault to KSU officials. The Court denied KSU's motion on the Title IX claim, because it found Plaintiff had alleged sexual harassment in a KSU "program or activity," and because Plaintiff was not required to allege that she actually suffered further harassment at the hands of the assailant after her report of assault to support her Title IX claim.

    This matter comes before the Court on KSU's Motion to Certify Order for Interlocutory Appeal and Stay Case (Doc. 48). KSU requests leave, pursuant to 28 U.S.C.§ 1292(b), to appeal the question whether Plaintiff is required to plead facts demonstrating that she suffered further harassment at the hands of the alleged assailant after her report of sexual assault. Plaintiff has responded to KSU's motion, arguing that certification of appeal and stay are not warranted. The

motion is fully briefed and the Court is prepared to rule. For the reasons explained below, the Court grants KSU's motion to certify appeal and for stay.

I. **Procedural Background**

In support of its motion to dismiss Plaintiff's Title IX claim, KSU argued that the "further harassment" requirement arose from the Supreme Court's statement, in *Davis ex rel. LaShonda D. v. Monroe County Board of Education*, that "deliberate indifference must, at a minimum, 'cause [students] to undergo' harassment or 'make them liable or vulnerable' to it."[1] Plaintiff responded that she "need not show she was assaulted or harassed again," so long as she showed KSU's deliberate indifference made her more "liable or vulnerable" to harassment and deprived her of educational access.[2]

In its Memorandum and Order denying KSU's motion to dismiss, the Court analyzed two Tenth Circuit cases that upheld summary judgment rulings in favor of Title IX funding recipients.[3] Both cases noted the absence of further harassment after the plaintiffs made reports of sexual assault or harassment.[4] The Court found that although these cases noted the absence of further harassment, they did not stand for the proposition that the actual occurrence of further harassment is a necessary requirement of a Title IX claim because (1) the cases discussed the lack of further harassment to emphasize the lack of deliberate indifference, rather than as a stand-alone element; (2) the cases described the lack of further harassment as "significant," but did not state that it was an express element of a Title IX claim; (3) the Circuit simply distinguished an Eleventh Circuit case that allowed a Title IX claim to go forward without allegations of further

---

[1] 526 U.S. 629, 644–45 (1999).

[2] Doc. 33 at 26.

[3] *Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114 (10th Cir. 2008); *Escue v. N. Okla. Coll.*, 450 F.3d 1146 (10th Cir. 2006).

[4] *Rost*, 511 F.3d at 1124; *Escue*, 450 F.3d at 1156.

harassment, rather than rejecting its approach; and (4) courts that have directly addressed the issue have held that *Davis* requires that the funding recipient's deliberate indifference leave the student "liable or vulnerable to" further harassment, not that further harassment actually occur.[5] Accordingly, the Court denied KSU's motion to dismiss Plaintiff's Title IX claim, finding that it was enough that Plaintiff alleged KSU's deliberate indifference made her "liable or vulnerable to" further harassment and deprived her of access to educational opportunities, rather than alleging the assailant actually harassed her further following her report.

## II. Legal Standards

The court of appeals may hear appeals from all final decisions of the district courts of the United States and certain interlocutory orders involving injunctions, appointing receivers and determining rights in admiralty cases.[6] With regard to other interlocutory orders, a district judge may certify an interlocutory order when she is of the opinion that (1) such order involves a controlling question of law; (2) a substantial ground for difference of opinion exists with respect to the question of law; and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation.[7] The Court retains discretion to certify an interlocutory order for appeal under section 1292(b).[8] Such certification is "limited to extraordinary cases in which extended and expensive proceedings probably can be avoided by immediate and final decision of controlling questions encountered early in the action."[9]

---

[5] Doc. 46 at 22–26.

[6] *See* 28 U.S.C. §§ 1291, 1292(a).

[7] *See id.* § 1292(b).

[8] *See Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 47 (1995).

[9] *Menefee v. Werholtz*, No. 08-2214-SAC, 2009 WL 949134, at *1 (D. Kan. Apr. 7, 2009) (quoting *Utah v. Kennecott Corp.*, 14 F.3d 1489, 1495 (10th Cir. 1994)).

Certification of appeal under section 1292(b) does not automatically stay proceedings in the district court.[10] District courts, however, have discretion to determine whether to stay proceedings pending disposition of an interlocutory appeal.[11]

## III. Discussion

### A. Interlocutory Appeal

KSU argues that interlocutory appeal of the Court's Memorandum and Order denying KSU's motion to dismiss is justified under § 1292(b) because the further harassment issue is a controlling question of law, there is a substantial ground for difference of opinion, and appeal of the Order may materially advance the ultimate termination of the litigation. Plaintiff, by contrast, argues each of these elements weighs in favor of denying interlocutory appeal. The Court addresses each element in turn.

#### 1. Controlling Question of Law

KSU requests certification for appeal of the "purely legal question of whether Ms. Farmer is required to plead facts demonstrating that K-State's alleged deliberate indifference caused 'further harassment[.]'"[12] As the Court explained in its Memorandum and Order, the parties did not dispute that Plaintiff alleged a deprivation of her educational access and that the funding recipient's deliberate indifference left her liable or vulnerable to further harassment.[13] The parties also did not dispute that Plaintiff did not allege "further harassment, in the strictest sense, at the hands of the alleged assailant after her report of sexual harassment."[14] The Court was

---

[10]28 U.S.C. § 1292(b); *Smith v. Argent Mortg. Co.*, No. 05-CV-02364-REB-BNB, 2007 WL 3232078, at *3 (D. Colo. Oct. 30, 2007).

[11]28 U.S.C. § 1292(b); *Smith*, 2007 WL 3232078, at *3.

[12]Doc. 49 at 2.

[13]Doc. 46 at 21.

[14]*Id.* As explained below, in responding to the instant motion, Plaintiff now argues that she in fact alleged further harassment.

therefore "left with the purely legal question" whether Plaintiff must allege that further harassment actually occurred after the funding recipient was on notice of the initial harassment, or whether it was enough that she alleged KSU's deliberate indifference made her liable or vulnerable to further harassment and deprived her of educational access.[15] The Court found that Plaintiff presented a plausible Title IX claim by alleging KSU's deliberate indifference made her liable or vulnerable to further harassment and deprived her of educational access, and the Court rejected KSU's contention that Plaintiff needed to allege that she indeed suffered further harassment after her report.

The Court finds that the issue of whether Plaintiff must plead that she suffered actual further harassment after she reported her sexual assault to KSU is a controlling question of law. If Plaintiff must indeed allege actual further harassment as a discrete element, her Title IX claim fails because Plaintiff did not allege actual further harassment, but instead alleged and argued that KSU's lack of response made her "liable or vulnerable" to harassment and deprived her of access to educational opportunities.[16]

Plaintiff argues in response to KSU's motion for certificate of appeal that she in fact did allege further harassment after her report of assault, including allegations concerning "the fear she experienced sharing a campus with the assailant, living in a state of hypervigilance," and her encounter with "T.R., the student who left her in his room, with the assailant hiding in his closet, for her to be raped, which caused her to experience intense panic and hysterical crying."[17] Plaintiff did not make this argument in responding to KSU's motion to dismiss, but instead

---

[15] *Id.* at 21–22.

[16] Doc. 33 at 21 ("Tessa need not show she was assaulted or harassed again—the 'strict' causation requirement K-State misleadingly claims. Rather, she only need show that K-State's response to her rape made her 'liable or vulnerable to' further harassment.").

[17] Doc. 51 at 10.

argued that she need only allege KSU's deliberate indifference made her liable or vulnerable to harassment. The Court therefore did not address whether these allegations met the definition of further harassment in ruling on the motion to dismiss.

In any event, the Court is not convinced that the allegations Plaintiff points to would satisfy pleading requirements if indeed Plaintiff is required to allege that KSU's deliberate indifference caused actual further harassment. Plaintiff's allegations reflect the trauma a sexual assault survivor inevitably experiences in encountering an assailant and being at risk of further assault or harassment, but they do not reflect that Plaintiff was actually further sexually assaulted or affirmatively harassed.[18] Certainly, Plaintiff's allegations bolster her claim that KSU's deliberate indifference made her "liable or vulnerable to" harassment and caused a deprivation of educational access. But if the rule of law is that Title IX requires Plaintiff to allege that KSU's lack of response caused her to be sexually assaulted or harassed again after her report of assault, as KSU contends, then her allegations do not satisfy this rule. Accordingly, the Court finds that the issue of whether Plaintiff must allege she suffered further harassment after her report of sexual assault as a result of KSU's deliberate indifference is a controlling question of law.

### 2. Substantial Ground for Difference of Opinion

For a substantial ground for difference of opinion to exist, it is not enough that the issue is one of first impression, or that the only other case on point reached an opposite conclusion.[19] Rather, this standard implies that the question "is difficult, novel, and either a question on which

---

[18]*See Doe ex rel. Doe v. Derby Bd. of Educ.*, 451 F. Supp. 2d 438, 444 (D. Conn. 2006) ("even absent *actual* post-assault harassment . . . the fact that [the alleged assailant] and plaintiff attended school together could be found to constitute pervasive, severe, and objectively offensive harassment.") (emphasis added).

[19]*Max Daetwyler Corp. v. Meyer*, 575 F. Supp. 280, 283 (E.D. Pa. 1983) (citing 16 C. Wright, A. Miller, E. Cooper & E. Gressman, *Federal Practice & Procedure*, § 3930 n.6 (1977 & Supp. 1983)) ("the mere fact that the appeal would present a question of first impression is not, of itself, sufficient to show that the question is one on which there is a substantial ground for difference of opinion."); *Singh v. Daimler-Benz, AG*, 800 F. Supp. 260 (E.D. Pa. 1992) (declining to certify ruling for appeal where only other reported decision had reached opposite conclusion, but there was no substantial ground for difference of opinion).

there is little precedent or one whose correct resolution is not substantially guided by previous decisions."[20] This Court has previously found that a substantial ground for difference of opinion existed where a party presented "colorable arguments" in support of its alternative position.[21]

The Court is confident that its analysis of the further harassment issue is accurate. As the Supreme Court explained in *Davis*, to give rise to a Title IX claim a funding recipient's "deliberate indifference must, at a minimum, 'cause [students] to undergo' harassment or 'make them liable or vulnerable' to it."[22] Here, Plaintiff presented multiple allegations that KSU's deliberate indifference following her report of sexual assault made her liable or vulnerable to harassment and deprived her of educational access. For example, Plaintiff alleged that because of KSU's deliberate indifference and her ongoing fear of encounters with the assailant on campus, she missed classes, withdrew from campus leadership roles, and engaged in self-destructive behaviors including self-medicating with excessive amounts of alcohol and cutting her wrists.

As the Tenth Circuit stated in *Rost*, a plaintiff who alleges that a school is deliberately indifferent in response to a report of sexual harassment or assault likely has a Title IX claim if the student "expresse[s] interest in returning to the school [following the harassment or assault] and school officials [do not] provide a safe educational environment."[23] Plaintiff has alleged here that KSU's deliberate indifference compromised her safety on campus.[24] The Court is thus

---

[20]*Amer. Fidelity Assur. Co. v. Bank of N.Y. Mellon*, No. CIV-11-1284-D, 2014 WL 8187951, at *4 (W.D. Okla. Dec. 12, 2014) (quoting *In re Grand Jury Proceedings June 1991*, 767 F. Supp. 222, 225–26 (D. Colo. 1991)).

[21]*Rural Water Dist. No. 4. v. City of Eudora, Kan.*, 875 F. Supp. 2d 1260, 1274 (D. Kan. 2012), *rev'd in part on other grounds* 720 F.3d 1269 (10th Cir. 2013).

[22]*Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 644–45 (1999).

[23]*Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1124 (10th Cir. 2008).

[24]Doc. 1 at ¶¶ 25, 32, 33, 34 (alleging that in response to KSU asking her if she felt safe in her route to campus each day, Plaintiff responded that "I feel safe in my car, but everyday I have to drive right by the building

satisfied that Plaintiff has stated a plausible Title IX claim by alleging that KSU's deliberate indifference made her liable or vulnerable to further harassment and denied her access to educational benefits. The Court is not convinced that Plaintiff's claim fails simply because she did not allege she in fact suffered further harassment or another assault following her report to KSU.[25]

KSU, however, points to several cases that it argues stand for the proposition that a Title IX plaintiff must allege further harassment actually occurred following a report of harassment.[26] As Plaintiff argues, rather than adopting a distinct further harassment requirement, several of these cases can be read as simply (1) acknowledging a requirement of either "further harassment *or* deprivation of rights;"[27] or (2) addressing further harassment as a factor in determining

---

where I was raped, which is scary and make[s] me anxious and reminds me that, unless K-State takes action against the rapists on campus, campus is not truly safe for me or anyone else."), 80.

[25]*See, e.g., Kinsman v. Fla. State Univ. Bd. of Trs.*, No. 4:15CV235-MW/CAS, 2015 WL 11110848, at *4 (N.D. Fla. Aug. 12, 2015) (quoting *Kelly v. Yale Univ.*, No. 3:01-CV-1591, 2003 WL 1563424, at *4 (D. Conn. Mar. 26, 2003)) (holding that "[i]t does not require mental gymnastics" to conclude that further encounters "between a rape victim and her attacker could create an environment sufficiently hostile to deprive the victim of access to educational opportunities provided by a university."); *Karasek v. Regents of the Univ. of Cal.*, No. 15-CV-03717-WHO, 2015 WL 8527338, at *12 (N.D. Cal. Dec. 11, 2015) (citing cases that "all recognize that it is possible for a plaintiff to bring a Title IX claim against an educational institution even in the absence of any further affirmative acts of harassment by the alleged harasser or other students or faculty."); *Doe ex rel. Doe v. Derby Bd. of Educ.*, 451 F. Supp. 2d 438, 444 (D. Conn. 2006) ("even absent actual post-assault harassment . . . the fact that [the alleged assailant] and plaintiff attended school together could be found to constitute pervasive, severe, and objectively offensive harassment.").

[26]*E.g., K.T. v. Culver-Stockton Coll.*, -- F.3d --, No. 16-3617, 2017 WL 3254396, at *2 (8th Cir. Aug. 1, 2017); *Lopez v. Regents of Univ. of Cal.*, 5 F. Supp. 3d 1106, 1125–26 (N.D. Cal. 2013); *Moore v. Murray State Univ.*, No. 5:12-CV-178, 2013 WL 960320, at *5 (W.D. Ky. Mar. 12, 2013) ("even if MSU was deliberately indifferent to Moore, there are no allegations that the indifference caused her to experience further or additional harassment. As a result, her cause of action under Title IX fails as a matter of law."); *Ha v. Nw. Univ.*, No. 14 C 895, 2014 WL 5893292, at *2 (N.D. Ill. Nov. 13, 2014) (noting lack of allegations regarding "any subsequent acts of harassment"); *Thomas v. Meharry Med. Coll.*, 1 F. Supp. 3d 816, 826–27 (M.D. Tenn. 2014); *Elgamil v. Syracuse Univ.*, No. 99-CV-611 NPMGLS, 2000 WL 1264122, at *9 (N.D.N.Y. Aug. 22, 2000).

[27]*See Lopez*, 5 F. Supp. 3d at 1125–26 ("Courts have construed [language in *Davis*] as requiring Title IX plaintiffs to demonstrate that a federal funding recipient's deliberate indifference caused them to be subjected to further discrimination *or* deprivation.") (emphasis added); *Elgamil*, 2000 WL 1264122, at *9 ("the Supreme Court now requires some harm to have befallen plaintiff *after* the school learned of the harassment") (emphasis in original).

8

whether the defendant was deliberately indifferent.[28] Furthermore, as the Court explained in its Memorandum and Order, several courts have held that *Davis* requires that the funding recipient's deliberate indifference leave the student "liable or vulnerable to" further harassment, not that further harassment actually occur.[29]

KSU also argues that the "language in *Davis* referencing 'vulnerable to' further harassment applies only in the situation where an institution is alleged to have been deliberately indifferent to *prior* reports of sexual misconduct and where that prior deliberate indifference made the plaintiff more vulnerable to a subsequent attack that the plaintiff experienced."[30] But the Tenth Circuit has suggested, without explicitly stating, that the "vulnerable to" theory applies to *post*-assault deliberate indifference claims under Title IX.[31]

Although the Court is not persuaded by KSU's argument that Title IX requires Plaintiff to allege she was actually sexually assaulted or harassed again after her report of assault, KSU's argument is at least "colorable."[32] As the Court's discussion above reveals, courts have reached varying conclusions on this issue. Some courts have held that a Title IX plaintiff need only plead that the funding recipient's deliberate indifference made her "liable or vulnerable to" further harassment, and that the term "further harassment" includes "deprivation of access" to

---

[28]*See Culver-Stockton Coll.*, 2017 WL 3254396, at *2; *Thomas*, 1 F. Supp. 3d at 827 ("because Plaintiff did not continue to experience sexual harassment once he put Defendant on notice of [the harasser's] conduct, there is no basis to find Defendant's response to Plaintiff[']s sexual harassment report amounted to deliberate indifference).

[29]Doc. 46 at 26 (citing, *e.g.*, *Kinsman*, 2015 WL 11110848, at *4).

[30]Doc. 49 at 13 (quoting *Doe v. Bibb Cty. Sch. Dist.*, 83 F. Supp. 3d 1300 (M.D. Ga. 2015)). Plaintiff argues that this is a new theory that KSU did not present in briefing its motion to dismiss. The Court agrees that KSU, in briefing its motion to dismiss, did not assert that the "vulnerable to" theory applied only to pre-assault deliberate indifference claims. But KSU did address the "vulnerable to" theory generally, and thus the Court will briefly address this argument.

[31]*Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1123 (10th Cir. 2008) (holding that school district's response to plaintiff's report of sexual assault and harassment "did not cause [plaintiff] to undergo harassment or make her liable or vulnerable to it").

[32]*Rural Water Dist. No. 4. v. City of Eudora, Kan.*, 875 F. Supp. 2d 1260, 1274 (D. Kan. 2012), *rev'd in part on other grounds* 720 F.3d 1269 (10th Cir. 2013).

education.[33]  Other courts have taken a more strict view, holding that actual "further harassment" after an initial report of harassment is a required element of a Title IX claim, separate from the "deliberate indifference" and "deprivation of access" elements.[34]

While the Tenth Circuit has discussed further harassment in the context of cases in which "deliberate indifference" was at issue,[35] it has not expressly determined (1) whether further harassment is a distinct element of a Title IX claim, (2) whether a plaintiff may satisfy this element by pleading that the funding recipient's deliberate indifference made her "liable or vulnerable to" further harassment, or (3) whether a plaintiff may satisfy this element by alleging deprivation of access to educational opportunities.  This Court found that Plaintiff presented a plausible Title IX claim by alleging that KSU's deliberate indifference made her "liable or vulnerable to" harassment and deprived her of educational access.[36]  Whether Title IX requires her to allege more with regard to further harassment is a difficult and novel question, and the Court finds that a substantial ground for difference of opinion exists as to this issue.

### 3. Advancement of Ultimate Determination of Litigation

KSU argues that interlocutory appeal of the further harassment issue will materially advance the ultimate determination of this litigation because a ruling in its favor on appeal would terminate this matter.  The Court agrees.  As explained above, the Court has found that the

---

[33]*E.g.*, *Lopez v. Regents of Univ. of Cal.*, 5 F. Supp. 3d 1106, 1125–26 (N.D. Cal. 2013) ("Courts have construed [language in *Davis*] as requiring Title IX plaintiffs to demonstrate that a federal funding recipient's deliberate indifference caused them to be subjected to further discrimination *or* deprivation.") (emphasis added).

[34]*E.g.*, *Moore v. Murray State Univ.*, No. 5:12-CV-00178, 2013 WL 960320, at *5 (W.D. Ky. Mar. 12, 2013) ("even if MSU was deliberately indifferent to Moore, there are no allegations that the indifference caused her to experience further or additional harassment. As a result, her cause of action under Title IX fails as a matter of law.").

[35]*Rost*, 511 F.3d  at 1123–24; *Escue v. N. Okla. Coll.*, 450 F.3d 1146, 1155–56 (10th Cir. 2006).

[36]Doc. 46 at 26–27.

further harassment issue is a controlling question of law.[37] Thus, if the Tenth Circuit were to disagree with this Court's further harassment analysis, such a determination would terminate this litigation and prevent potentially costly proceedings.[38] The Court therefore finds that granting KSU leave to appeal at this stage may materially advance the litigation. Accordingly, the Court grants certification for appeal under § 1292(b).

### B. Stay Pending Appeal

Section 1292(b) provides that an interlocutory appeal does not stay proceedings in the district court "unless the district judge or the Court of Appeals or a judge thereof shall order." The Court has discretion to determine whether to stay proceedings pending disposition of an interlocutory appeal.[39] Because the Court has found that interlocutory appeal may materially advance the termination of this litigation, the Court stays this matter pending appeal.

## IV. Conclusion

The Court finds that the further harassment issue is a controlling question of law, about which there is substantial ground for difference of opinion, and that interlocutory appeal of this issue may materially advance the ultimate termination of this case. Accordingly, the Court grants KSU's motion for certification of appeal pursuant to 28 U.S.C. § 1292(b). Furthermore, the Court exercises its discretion in staying this litigation pending appeal.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Kansas State University's Motion to Certify Order for Interlocutory Appeal and Stay Case (Doc. 48) is

---

[37] *See supra* Part III.A.1.

[38] *See Fox v. TransAm Leasing, Inc.*, No. 12-2706-CM, 2015 WL 4243464, at *4 (D. Kan. July 13, 2015) (quoting *Utah v. Kennecott Corp.*, 14 F.3d 1489, 1495 (10th Cir. 1994)) ("Section 1292(b) interlocutory appeals are 'limited to extraordinary cases in which extended and expensive proceedings probably can be avoided by immediate and final decision of controlling questions encountered early in the action.'").

[39] *Kerr v. Hickenlooper*, No. 11-CV-01350-WJM-BNB, 2012 WL 4359076, at *4 (D. Colo. Sept. 21, 2012) (citations omitted).

**granted**. The Court certifies its previous Memorandum and Order (Doc. 46) for interlocutory appeal for determination of the following controlling questions of law: (1) whether Plaintiff was required to allege, as a distinct element of her Title IX claim, that KSU's deliberate indifference caused her to suffer actual further harassment, rather than alleging that Defendant's post-assault deliberate indifference made her "liable or vulnerable to" harassment; and (2) if Plaintiff is required to plead actual further harassment, whether her allegations of deprivation of access to educational opportunities satisfy this pleading requirement.

**IT IS FURTHER ORDERED BY THE COURT** that this case is **stayed** until either the time for KSU to file an interlocutory appeal under 28 U.S.C. § 1292(b) expires or until the Tenth Circuit finally disposes of any such appeal, whichever is later.

**IT IS SO ORDERED.**

Dated: August 23, 2017

                                                              S/ Julie A. Robinson
                                                              JULIE A. ROBINSON
                                                              UNITED STATES DISTRICT JUDGE